ADRIANO L. MARTINEZ (SBN 237152)
CANDICE L. YOUNGBLOOD (SBN 328843)
Earthjustice
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
amartinez@earthjustice.org
cyoungblood@earthjustice.org
Tel: (415) 217-2000 / Fax: (415) 217-2040

*Counsel for Proposed Defendant-Intervenors
People's Collective for Environmental Justice,
Sierra Club, and Industrious Labs*

(List of Counsel continued on next page)

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RINNAI AMERICA CORP., et al., <br> Plaintiff, <br><br> v. <br><br> SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, <br> Defendants, <br><br> and <br><br> PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, et al., <br> Proposed Defendant-Intervenors. | Civ. No. 2:24-cv-10482 PA (PDx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs] UNOPPOSED MOTION TO INTERVENE** |

NIHAL SHRINATH (SBN 327921)
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
nihal.shrinath@sierraclub.org
Tel: (415) 977-5566

JAMES A. DENNISON *(Pro Hac Vice forthcoming)*
Sierra Club
1650 38th St., Suite 103W
Boulder, CO 80301
jim.dennison@sierraclub.org
Tel: (435) 232-5784

*Counsel for Proposed Defendant-Intervenor
Sierra Club*

SEAN H. DONAHUE (SBN 264284)
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, DC 20003
sean@donahuegoldberg.com
Tel: (202) 277-7085

*Counsel for Proposed Defendant-Intervenor
Industrious Labs*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**.................................................................5

**INTRODUCTION** ........................................................................9

**BACKGROUND** .........................................................................10

I.    AIR POLLUTION IN THE SOUTH COAST ..............................10

II.   AIR POLLUTION CONTROL MEASURES AND THE BOILER RULE  12

III.  PROPOSED INTERVENORS AND THEIR INTEREST IN THIS LITIGATION ......................................................................15

**LEGAL STANDARDS** ...............................................................16

**ARGUMENT** .............................................................................17

I.    PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT IN THIS LITIGATION. .............................................17

    A.    The unopposed motion is timely. ......................................17

    B.    Proposed Intervenors have significant protectable interests in the Boiler Rule.................................................................18

        1.    Proposed Intervenors' environmental and health concerns constitute a legally protectable interest.....................19

        2.    Proposed Intervenors' participation in the administrative process was critical to the District's development and ultimate adoption of the Boiler Rule, and demonstrates Proposed Intervenor's protectable interest. .............21

    C.    The disposition of this case may impair Proposed Intervenors' ability to protect their interests.........................................23

    D.    Proposed Intervenors' interests are not adequately represented by existing parties...................................................................24

        1.    Proposed Intervenors' interests are narrower and more focused than interests of the District. ......................25

        2.    Proposed Intervenors' interests relate directly to their own health, and are therefore more personal than the interests of the District. .......................................................27

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

3.    Because of their uniquely situated position, Proposed
Intervenors will provide necessary elements the existing
parties cannot. .................................................................30

II.    ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE
INTERVENTION. ...................................................................31

**CONCLUSION** .............................................................................32

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003)..........................................................24, 25, 26, 30

*Californians for Safe and Competitive Dump Truck Transportation v. Mendonca,*
    152 F.3d 1184 (9th Cir. 1998)..........................................................................28

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011)..................................................... 18, 20, 24, 25, 31

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998).............................................................................19

*Forest Conservation Council v. U.S. Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y,* 630 F.3d 1173 ..........................................................26

*Fresno Cnty. v. Andrus,*
    622 F.2d 436 (9th Cir. 1980).............................................................................17

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995).......................................................................18, 21

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y,* 630 F.3d..........................................................31, 32

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006).......................................................................19, 23

*Martin v. La Luz Del Mundo,*
    No. 2:20-cv-01437-ODW-(ASx), 2020 WL 6743591 (C.D. Cal. Sept. 29, 2020)................................................................................................18

*Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Control Dist.,*
    627 F.3d 730 (9th Cir. 2010).............................................................................12

*National Association of Home Builders v. San Joaquin Valley Unified Air*
    *Pollution District*,
    No. 1:07-cv-0820-LJO-DLB, 2007 WL 2757995, at *5 (E.D. Cal.
    Sept. 21, 2007)............................................................................................26, 27

*Orange Cnty. v. Air Cal.*,
    799 F.2d 535 (9th Cir. 1986)...................................................................17, 31

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006)...................................................................21, 24

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)...........................................................21, 22, 30

*Smith v. L.A. Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016).........................................................................17

*Spangler v. Pasadena City Bd. of Educ.*,
    552 F.2d 1326 (9th Cir. 1977).......................................................................31

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001)....................................... 17, 23, 26, 27

*Syngenta Seeds, Inc. v. County of Kauai*,
    No. Civ. 14-00014BMK, 2014 WL 1631830 (D. Haw. Apr. 23, 2014)............29

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004).........................................................................19

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008).......................................................................20

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002).........................................................................16

*Vivid Ent., LLC v. Fielding*,
    774 F.3d 566 (9th Cir. 2014).........................................................................16

*WildEarth Guardians v. Nat'l Park Serv.*,
    604 F.3d 1192 (10th Cir. 2010).....................................................................20

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011)........................................................ 16, 18, 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991)..................................................................16

**Statutes**

42 U.S.C. § 7401(b)(1) ...........................................................................19

42 U.S.C. § 7502(c)(1)............................................................................12

Cal. Health & Safety Code § 39002 ......................................................13

Cal. Health & Safety Code § 40000 ......................................................13

Cal. Health & Safety Code § 40406 ......................................................13

Cal. Health & Safety Code § 40440(d)..................................................13

Cal. Health & Safety Code § 40460 ......................................................13

Cal. Health & Safety Code § 40461 ......................................................13

Cal. Health & Safety Code § 40462 ......................................................13

Cal. Health & Safety Code § 40913 ......................................................11

**Rules**

Fed. R. Civ. P. 24.....................................................................................9

Fed. R. Civ. P. 24(a) ....................................................... 16, 17, 23, 32

Fed. R. Civ. P. 24(a)(2).......................................................... 16, 23, 31

Fed. R. Civ. P. 24(b) .................................................................. 17, 31, 32

Fed. R. Civ. P. 24(b)(1)..........................................................................31

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................17

Fed. R. Civ. P. 24(b)(3)....................................................................17, 31

**Regulations**

40 C.F.R. § 81.305..........................................................................11, 12

62 Fed. Reg. 38,652 (July 18, 1997) ....................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

69 Fed. Reg. 23,858 (April 30, 2004).................................................................11

70 Fed. Reg. 65,984 (Nov. 1, 2005) .................................................................12

71 Fed. Reg. 61,144 (Oct. 17, 2006) ................................................................12

85 Fed. Reg. 57,733 (Sep. 16, 2020) ...............................................................12

89 Fed. Reg. 92,873 (Nov. 25, 2024) ...............................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

## INTRODUCTION

People's Collective for Environmental Justice, Sierra Club, and Industrious Labs (collectively, "Proposed Intervenors") respectfully move to intervene as defendants in the above-listed action pursuant to Federal Rule of Civil Procedure 24. Proposed Intervenors are environmental justice and environmental groups whose missions include protecting the health of their members and reducing air pollution in California. They represent the public interest and members who reside near facilities that operate gas-fired boilers and water heaters covered by the South Coast Air Quality Management District's (hereinafter "District") Rule 1146.2 ("Boiler Rule"). As a result, they face the harmful air pollution associated with operation of the covered equipment.

In their Complaint, Plaintiffs Rinnai American Corporation *et al.* (hereinafter "Plaintiffs") challenge the District's amendments to the Boiler Rule adopted on June 7, 2024. ECF No. 12 at 7; *see also* ECF No. 1-1. The District adopted the Boiler Rule to reduce nitrogen oxide ("NOx") emissions from gas-fired water heaters, small boilers, and process heaters. This was necessary because, despite decades of progress toward meeting federally mandated clean air standards for ground-level ozone ("smog") and fine particulate ("soot") pollution, pollution levels remain well above the health-based limits reflected in federal air quality standards. Thus, the District needed further reduction of NOx emissions—which are precursors to both ozone and fine particle formation—to meet its obligations under federal law. Proposed Intervenors support the efforts of the District to reduce emissions through lawfully enacted regulations covering equipment within the agency's jurisdiction.

Subject to this Court's approval, Proposed Intervenors respectfully request this Court grant this unopposed motion to intervene with the following conditions agreed to by all parties:

> Proposed Intervenors may not expand the scope of this action. In particular, Proposed Intervenors may not move for relief in District Court

separately from the South Coast AQMD, but Proposed Intervenors are not limited in the arguments they may make within the scope of this action. Proposed Intervenors may submit their own brief in support of any motion filed by the South Coast AQMD. All filings must be in accordance with this Court's Standing Order and may not be duplicative. Proposed Intervenors and Plaintiffs agree not to pursue discovery between themselves. This agreement does not place any conditions on Proposed Intervenors' participation or submissions at any appellate stage.

## BACKGROUND

## I.    Air Pollution in the South Coast

Since Congress enacted the federal Clean Air Act more than half a century ago to ensure that the public can breathe clean, healthy air, the South Coast has made strides toward reducing air pollution in the region. But even with this progress, the South Coast consistently fails to meet federal and state ozone and particulate matter standards. More than 17 million people—about half the population of the state of California—live within the region, which consists of all of Orange County and the urban portions of Los Angeles, Riverside, and San Bernardino counties. Declaration of Adriano L. Martinez in Support of NGOs Motion to Intervene ("Martinez Decl."), Ex. 1 (Final 2022 Air Quality Management Plan), at 1-7–1-8. South Coast residents continue to suffer from the worst smog in the country. *Id.* at ES-1, 2-58. Moreover, the health harms from South Coast air pollution disproportionately fall on low-income communities and communities of color. *See id.* at 1-9, 8-1, 8-11.

Air pollution comes from many types of sources—including some mobile, like cars, trucks, and buses, and some stationary, like factories, dry cleaners, and residential water heaters. *Id.* at 1-4. To meet federal and state clean air standards, the South Coast must further reduce emissions from stationary sources. *Id.* at 4-1, 4-7. Fossil fuel-powered boilers and water heaters are a significant source of smog-forming NOx emissions and deadly particulate matter ("PM2.5") in the region. ECF No. 1-2 at 118, 121. These boilers and water heaters are used to heat swimming pools and spas and in a variety of industrial processes. Communities living near high

concentrations of industrial facilities, such as those operating gas-fired boilers and water heaters, can be subject to greater health risks from exposure to health harming pollution. *See* Martinez Decl., Ex. 1 at 2-29–2-31, 8-1, 8-6–8-7, 8-11. Additionally, onshore winds push these emissions and cause inland communities to face the highest ozone concentrations in the South Coast. *Id.* at 8-11. Harms to South Coast communities from boiler emissions are compounded by cumulative air pollution impacts from multiple emissions sources. *See id.* at 8-6.

The South Coast has been classified by the U.S. Environmental Protection Agency ("EPA") as an "extreme" nonattainment area for all federal ozone pollution standards. 40 C.F.R. § 81.305—the most-polluted of the six categories of ozone nonattainment areas that EPA employs. The region is also in nonattainment of California's state-level ozone standards. Martinez Decl., Ex. 1 at 6-14. Ground-level ozone, commonly referred to as smog, is formed by the reaction of volatile organic compounds ("VOC") and NOx in the atmosphere in the presence of sunlight. 69 Fed. Reg. 23,858, 23,859 (April 30, 2004). Short- and long-term exposure to ozone is a significant health concern, particularly for children and people with asthma and other respiratory diseases, and it is associated with school absences, reduced activity and productivity, and increased hospital and emergency room visits for respiratory causes. *Id.* The South Coast has failed to attain the 1997 8-hour ozone national ambient air quality standard. Martinez Decl. ¶ 4. As a region failing to attain national air quality standards, the federal Clean Air Act requires South Coast to achieve attainment for ozone by 2031 and 2038 or potentially face sanctions. The California Clean Air Act also mandates that the South Coast, as a nonattainment area, devise a plan to meet state ambient air quality standards "by the earliest practicable date." Cal. Health & Safety Code § 40913.

The South Coast also violates air quality standards for fine particulate matter. Particulate matter describes a broad class of chemically and physically diverse substances existing as distinct solid or liquid particles that become suspended in the

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

ambient air. *See* 62 Fed. Reg. 38,652, 38,653 (July 18, 1997). When these particles bypass the body's natural defenses, they can be inhaled into the lungs and even pass into the bloodstream. Martinez Decl. ¶ 5. Fine particulate matter, also called PM2.5, refers to particles with a diameter of 2.5 micrometers or smaller; it comes primarily from combustion activities. 71 Fed. Reg. 61,144, 61,146 (Oct. 17, 2006). NOx emissions additionally contribute to the formation of PM2.5, through a series of chemical reactions with VOCs, ammonia, and sulfur dioxide in the atmosphere. *See* 89 Fed. Reg. 92,873, 92,874 (Nov. 25, 2024). PM2.5 exposure can cause aggravation of respiratory and cardiovascular diseases, lung disease, asthma attacks, heart attacks, and premature death. *See* 70 Fed. Reg. 65,984, 65,988 (Nov. 1, 2005). Individuals with heart and lung disease, the elderly, and children are most sensitive to PM2.5 exposure. *Id.* The South Coast has been designated as a moderate nonattainment area for the 1997 federal PM2.5 standards and a serious nonattainment area for the 2006 and 2012 federal PM2.5 standards. 40 CFR § 81.305. In September 2020, EPA determined that the South Coast had failed to attain the 2006 24-hour PM2.5 national ambient air quality standard by the attainment date for serious nonattainment areas. 85 Fed. Reg. 57,733 (Sep. 16, 2020). The region is also in nonattainment of California's PM2.5 standard. Martinez Decl., Ex. 1 at 6-14.

## II.   Air Pollution Control Measures and the Boiler Rule

The federal Clean Air Act, 42 U.S.C. §§ 7401-7671q, "divides regulatory authority between the states and the federal government." *Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Control Dist.*, 627 F.3d 730, 733 (9th Cir. 2010). Under the Act, EPA sets national ambient air quality standards. The states meet those standards by adopting and implementing state implementation plans ("SIPs") that are submitted to EPA for approval. The Act requires nonattainment areas like the South Coast to "provide for implementation of all reasonably available control measures as expeditiously as practicable" in their SIPs. 42 U.S.C. § 7502(c)(1). Similarly, the California Clean Air Act requires that plans for nonattainment areas

include measures with emissions limits requiring existing emissions sources to install
the Best Available Retrofit Control Technology ("BARCT"). Cal. Health & Safety
Code § 40440(d). BARCT is "an emission limitation that is based on the maximum
degree of reduction achievable, taking into account environmental, energy, and
economic impacts by each class or category of source." Cal. Health & Safety Code
§ 40406.

The District is the regulatory agency responsible for improving air quality in the
South Coast, and its primary authority is over stationary sources. Cal. Health & Safety
Code §§ 39002, 40000; Martinez Decl., Ex. 1 at 1-4. Under the California Health and
Safety Code, the District's air quality management plan ("AQMP") and its subsequent
revisions serve as the federally required SIP submission for the South Coast. Cal.
Health & Safety Code §§ 40460–40462. Through its AQMP, the District set forth a
path for improving air quality and meeting federal and state air pollution standards by
controlling emissions sources as stringently as possible. Martinez Decl., Ex. 1 at ES-5.
The most recent AQMP, released in December 2022, includes a control measure that
seeks NOx emission reductions by 2037 from the equipment covered by the Boiler
Rule. *Id.* at 4-15.

The Boiler Rule's purpose is "to reduce NOx emissions from water heaters,
boilers, and process heaters as defined in [the] rule." ECF No. 1-2 at 100. The District
originally adopted the Rule in January 1998 to regulate NOx emissions from gas-fired
large water heaters, small boilers, and process heaters that have a rated heat input
capacity of less than or equal to two million British thermal units ("Btu") per hour. *Id.*
at 3. Residential instantaneous water heaters and pool heaters are also covered by the
Rule. *Id.* When the Boiler Rule was initially adopted, it applied to new water heaters
and boilers with compliance dates based on the date of unit manufacture. *Id.* at 56.
The Rule has since been amended three times to reflect changes in both California's
air pollution problems and major advances in technology over nearly three decades.
*See id.* at 56–57. The 2005 amendment added compliance requirements for existing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

equipment, and it did not lower emission limits for new equipment to allow additional
time for evaluating technologies and their cost-effectiveness. *Id.* at 57. In 2006, the
Rule was amended to establish a lower NOx emission limit for new equipment to
reflect BARCT, allowing manufacturers up to six years to design equipment to meet
the proposed limit. *Id.* In light of the technological advancements in the twelve years
since the last amendment, the 2018 amendment directed staff to conduct a technology
assessment by January 2022. *Id.* In January 2022, staff completed a technology
assessment that determined that NOx emission limits should be lowered to satisfy
BARCT requirements. *Id.*

After over two years of thorough deliberation, the District amended the Boiler
Rule on June 7, 2024 to meet BARCT requirements and implement the applicable
AQMP control measure to meet air quality standards. *See* ECF No. 1-1; ECF No. 1-2.
The Rule covers over a million pieces of equipment and will reduce emissions in
greater amounts than any other rule the agency has adopted since 2021 and will
provide emission benefits that South Coast communities need. ECF No. 1-2 at 58; *see
also* Martinez Decl., Ex. 1 at 1-17. The Boiler Rule will gradually phase in zero-
emission equipment over nearly a decade—first for new buildings and eventually for
all buildings based on the type of facility and the commercial availability of the type
of equipment they need. ECF No. 1-2 at 3. For example, the smallest zero-emission
heater and boilers must be used in new buildings starting January 1, 2026, and in older
buildings starting January 1, 2029. *Id.* Larger units, pool heaters, and high temperature
units have later implementation dates, some as far out as 2033, to allow the
technologies time to mature. *Id.* Before these later compliance dates go into effect, the
Boiler Rule commits staff to performing a technology assessment in 2027 to assess
market availability. *Id.* at 4.

When fully implemented, the Boiler Rule will take important steps toward
cleaning the South Coast's air. The Boiler Rule is projected to reduce daily NOx
emissions in Southern California by 5.6 tons—the equivalent of nearly half the NOx

emissions from every car in the region combined. *Id.* at 118; Martinez Decl. ¶ 6. The
Boiler Rule alone will reduce nearly 10 percent of the emissions that are under the
District's authority. ECF No. 1-2 at 292. While the Boiler Rule is designed to limit
NOx, it will also be considered as a control strategy for the South Coast to attain
federal standards for particulate matter. *Id.* at 121. These reductions translate to
significant public health benefits for communities in the South Coast, including
avoided premature deaths and new cases of asthma, whose estimated value is
hundreds of millions of dollars annually. *Id.* at 225.

## III.    Proposed Intervenors and their Interest in this Litigation

Each of the Proposed Intervenors in this case has a history of working to
improve air quality in the South Coast.

People's Collective for Environmental Justice ("PCEJ") is an unincorporated
nonprofit association dedicated to building community power in the Inland Empire to
fight against pollution and environmental racism. Declaration of Andrea Vidaurre in
Support of NGOs Motion to Intervene ("Vidaurre Decl."), ¶ 3. Founded in 2020,
PCEJ represents over 1,000 community members in the Inland Empire who are
impacted by air pollution from industry. *Id.* ¶¶ 2, 5. Since its inception, PCEJ staff and
members have advocated for regulatory measures to reduce air pollution in the South
Coast. *Id.* at ¶¶ 2–6; Declaration of Gem M. Montes in Support of NGOs Motion to
Intervene ("Montes Decl."), ¶¶ 6–8. The Boiler Rule is essential to reducing the
pollution burdens of PCEJ members. Vidaurre Decl. ¶¶ 12; Montes Decl. ¶¶ 17–18.

Sierra Club is a national environmental organization, founded in 1892, that is
dedicated to exploring, enjoying, and protecting the planet; to practicing and
promoting the responsible use of the earth's ecosystems and resources; to educating
and enlisting humanity to protect and restore the quality of the natural and human
environment; and to using all lawful means to carry out those objectives. Declaration
of Kimberly R. Orbe in Support of NGOs Motion to Intervene ("Orbe Decl."), ¶ 4.
Sierra Club currently has approximately 612,000 members and 1.5 million supporters

nationwide and over 35,000 members in the South Coast. *Id.* ¶ 7. For many years, Sierra Club has advocated for strong regulatory measures to control building and industrial emissions. *Id.* ¶¶ 8, 11.

Industrious Labs is an environmental nongovernmental organization focused on advocating for efforts to clean up heavy industry through network and capacity building, research and analysis, data-driven campaigns, and communications. Declaration of Evan Gillespie in Support of NGOs Motion to Intervene ("Gillespie Decl."), ¶ 4. Founded in 2021, Industrious Labs is working across the nation to clean up air pollution. *Id.* ¶¶ 3, 4. Industrious Labs has been extensively involved at the District since its founding. *Id.* ¶ 5.

## LEGAL STANDARDS

The Ninth Circuit has established a four-part test for deciding applications for intervention as of right under Federal Rule of Civil Procedure 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)). If an applicant meets these standards, they must be permitted to intervene. *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991). An applicant need not separately establish Article III standing. *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014).

To facilitate "efficient resolution of issues and broadened access to the courts," Rule 24(a) is construed "broadly in favor of proposed intervenors," taking into account "practical and equitable considerations." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (citations omitted). Rule 24(a) does not require a specific legal or equitable interest, and "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as

is compatible with efficiency and due process." *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). The allegations of a proposed intervenor must be credited "as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Additionally, under Rule 24(b)(1)(B), courts have "broad discretion" to grant permissive intervention to applicants that, through a timely motion, assert a claim or defense that shares a common question of law or fact with the principal action. *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 537, 539 (9th Cir. 1986) (citation omitted). In exercising its discretion, a court must consider whether intervention will cause undue delay or prejudice existing parties. Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

For the following reasons, the Court should grant Proposed Intervenors' intervention as of right under Federal Rule of Civil Procedure 24(a), or, in the alternative, the Court should grant permissive intervention under Rule 24(b).

## I. Proposed Intervenors are entitled to intervene as of right in this litigation.

As detailed below, Proposed Intervenors satisfy the four-part test and are entitled to intervene as a matter of right. Their motion is timely, they have demonstrated they have significantly protectable interests, those interests may be impaired by the disposition of this action, and the existing parties to this litigation "may not" adequately represent their interests.

### A. The unopposed motion is timely.

A motion to intervene under Rule 24(a) must be timely. Fed. R. Civ. P. 24(a). Timeliness is evaluated according to three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).

Proposed Intervenors' motion is timely because this case is in its earliest stages. Less than two months have passed since Plaintiffs filed their complaint on December 5, 2024. ECF No. 1; *see also* ECF No. 12. This motion is being filed less than three weeks after the Defendant filed its first responsive pleading on January 24, 2025. ECF No. 23. No administrative record has been filed, the first Case Management Conference has not yet been conducted, and the Court has not yet issued any substantive orders or rulings. Proposed Intervenors can abide by the Court's Scheduling Order. Plaintiffs have indicated they will not oppose this motion, and Defendant supports this request for intervention. Martinez Decl. ¶¶ 7, 8. Under these circumstances, intervention will not prejudice the existing parties or delay the proceeding. *See, e.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion timely when filed three months after the complaint and less than two weeks after defendant filed its answer); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding motion timely when filed four months after complaint and two months after answer and administrative record, but "before any hearings or rulings on substantive matters"); *Martin v. La Luz Del Mundo*, No. 2:20-cv-01437-ODW-(ASx), 2020 WL 6743591, at *2–3 (C.D. Cal. Sept. 29, 2020) (finding motion timely when filed four months after complaint and before rulings on any substantive motions).

### B.    Proposed Intervenors have significant protectable interests in the Boiler Rule.

Proposed Intervenors meet the second element of intervention as of right because they have multiple "significantly protectable" interests related to the issues relevant to this action. *See Wilderness Soc'y*, 630 F.3d at 1177. The interest test is a threshold question and "does not require a specific legal or equitable interest." *Id.* at 1179. Nor does it require that the asserted interest be protected by the statutes under which litigation is brought. *Id.* Instead, "the operative inquiry should be whether the 'interest is protectable under some law' and whether 'there is a relationship between

the legally protected interest and the claims at issue.'" *Id.* at 1180 (quoting *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d at 1484). "[I]f the resolution of the plaintiff's claims actually will affect the applicant," the relationship requirement is met. *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998); *see also California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (An applicant for intervention satisfies the interest test "if it will suffer a practical impairment of its interests as a result of the pending litigation.").

1.    **Proposed Intervenors' environmental and health concerns constitute a legally protectable interest.**

As set forth above, Proposed Intervenors are nonprofit organizations, nongovernmental organizations, and unincorporated associations whose purposes and missions include the protection of their communities and the environment. *See, e.g.*, Vidaurre Decl. ¶ 3; Orbe Decl. ¶ 4; Gillespie Decl. ¶ 4. Multiple of the Proposed Intervenors have members who live, work, and recreate in the South Coast, including in areas with a high concentration of industrial facilities that operate the gas-fired equipment covered by the Boiler Rule. *See, e.g.*, Vidaurre Decl. ¶¶ 5–8; Montes Decl. ¶¶ 2, 10; Orbe Decl. ¶¶ 8–10, 12; Declaration of Rodney P. Boone in Support of NGOs Motion to Intervene ("Boone Decl."), ¶¶ 11, 26–27. Their members will benefit from the Rule's reductions in health-harming emissions. *See, e.g.*, Vidaurre Decl. ¶ 12; Montes Decl. ¶¶ 16–18; Orbe Decl. ¶ 12; Boone Decl. ¶¶ 25–27. Moreover, Proposed Intervenors have staff impacted by the pollution sources covered by the Rule. *See, e.g.*, Vidaurre Decl. ¶¶ 10–11; Montes Decl. ¶¶ 8–15; Gillespie Decl. ¶ 6.

An intervenor need only show that its interest "is protectable under any statute," and is not required to show that its interest is protected by the law under which this litigation is brought—here, the federal Energy Policy and Conservation Act. *See Alisal Water Corp.*, 370 F.3d at 919. Proposed Intervenors' interests in improving air quality in the South Coast and protecting the health of their members are protectable under several environmental statutes, including the federal Clean Air Act. *See, e.g.*, 42

U.S.C. §§ 7401(b)(1) (purpose of Clean Air Act includes protection and enhancement of air quality for public health and welfare); 7604(a)(1) (creating citizen suit authority to enforce state pollution control measures adopted under the Clean Air Act). Because the District adopted the Boiler Rule as a key part of its strategy to meet the federal Clean Air Act requirement to achieve state and national ambient air quality standards for ozone and fine particulate matter, Proposed Intervenors' involvement in this case to defend the legality of the Rule is key to protecting their interests in improving the air quality in the South Coast for the health of their members. *See, e.g.*, Vidaurre Decl. ¶¶ 11–12; Montes Decl. ¶¶ 17–18; Orbe Decl. ¶¶ 8–10, 12; Boone Decl. ¶¶ 26–27.

Proposed Intervenors' concern for the environment and public health constitutes a legally protectable interest sufficient to support intervention. *See Citizens for Balanced Use*, 647 F.3d at 897 ("Applicants have a significant protectable interest in conserving and enjoying the wilderness character of the Study Area . . . ."); *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) ("[I]ntervenors were entitled to intervene because they had the requisite interest in seeing that the wilderness area be preserved for the use and enjoyment of their members."); *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). Proposed Intervenors are environmental and public health advocacy organizations with specific, demonstrated, and longstanding interests in protecting and improving air quality in the South Coast. In addition, Proposed Intervenors have a protectable interest in "conserving and enjoying" the environment in the South Coast. *Citizens for Balanced Use*, 647 F.3d at 897. Proposed Intervenors' members recreate in and enjoy the surrounding environment. Montes Decl. ¶¶ 10–11; Orbe Decl. ¶ 10; Boone Decl. ¶¶ 14–18. Due to their concerns about the health impacts of pollution from gas-fired boilers and water heaters, their use and enjoyment of this area will be harmed if the Boiler Rule is invalidated and pollution from equipment covered by the Rule continues unabated. Montes Decl. ¶¶ 17–18; Orbe Decl. ¶ 12; Boone Decl. ¶¶ 25–27.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

2. **Proposed Intervenors' participation in the administrative process was critical to the District's development and ultimate adoption of the Boiler Rule, and demonstrates Proposed Intervenors' protectable interest.**

Proposed Intervenors also have an interest in this litigation because their members and professional staff were actively engaged in the development and adoption of the Boiler Rule. When a public interest group has been involved in a decision-making process that leads to a legal challenge of a decision it supported, it satisfies the protectable interest prong for intervention as of right. *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (citations omitted) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."). In *Sagebrush Rebellion, Inc. v. Watt*, the Audubon Society was entitled to intervene in an action challenging the creation of a conservation area the Society had supported. 713 F.2d 525, 527–28 (9th Cir. 1983). The Society had actively participated in the administrative process surrounding the designation of the conservation area, and based on that participation, the Ninth Circuit held that "there can be no serious dispute in this case concerning . . . the existence of a protectable interest on the part of the applicant." *Id.* at 528; *accord Idaho Farm Bureau Fed'n*, 58 F.3d at 1397–98 (finding environmental groups that were active in the administrative process leading to endangered species listing were entitled to intervene in litigation seeking to invalidate listing); *see also Prete v. Bradbury*, 438 F.3d 949, 955 (9th Cir. 2006) (allowing "chief petitioner" and "main supporter" of ballot measure to intervene in action challenging measure's constitutionality).

Here, Proposed Intervenors not only actively participated in the administrative process for the Boiler Rule, but they also have spent years advocating for air pollution emissions reductions at the District. Vidaurre Decl. ¶¶ 12–13, 15–16; Orbe Decl. ¶¶ 8, 11; Gillespie Decl. ¶¶ 5, 7–9. This advocacy by Proposed Intervenors was integral to the District's decision to pursue the Boiler Rule. *See* Vidaurre Decl. ¶¶ 12–13; Orbe Decl. ¶¶ 8, 11; Gillespie Decl. ¶¶ 5, 7–9. The District identified requiring zero-

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs] UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

emission boilers and water heaters as a potential emissions reduction strategy in its 2022 AQMP, released in December 2022. Martinez Decl., Ex. 1 at 4-15. The inclusion of an emissions limit for boilers and water heaters in the 2022 AQMP is in part attributed to longstanding efforts by Proposed Intervenors and their members to advocate for strong regulatory measures at the District to reduce emissions in the South Coast. In December 2022, staff was directed to initiate a rulemaking to require zero-emission commercial water heating units in new and existing buildings. *Id.* at 4-15.

Beginning in April 2023, Proposed Intervenors, their employees, and their members regularly attended public working group meetings at the District to advocate for an emissions reduction standard for boilers and water heaters to control pollution from our homes, businesses, and factories. Vidaurre Decl. ¶¶ 12–13; Orbe Decl. ¶¶ 8, 11; Gillespie Decl. ¶¶ 7–9. Proposed Intervenors, their employees, and their members also regularly participated in working groups and testified at numerous meetings of the District's Governing Board to support the development of an emissions reduction standard for boilers and water heaters to reduce air pollution. Vidaurre Decl. ¶¶ 12–13; Orbe Decl. ¶¶ 8, 11; Gillespie Decl. ¶¶ 7–9. From early 2023 until the District adopted the Rule in June 2024, Proposed Intervenors, their employees, and their members continued to regularly attend public workshops on the Boiler Rule, providing extensive input and shaping the regulatory process. Vidaurre Decl. ¶¶ 12–13; Orbe Decl. ¶¶ 8, 11; Gillespie Decl. ¶¶ 7–9. Proposed Intervenors, their employees, and their members also advocated for the timely adoption of the Rule by sending comment letters and giving testimony at numerous Board meetings as the Boiler Rule was considered. Vidaurre Decl. ¶¶ 13, 15; Orbe Decl. ¶¶ 11, 13; Gillespie Decl. ¶¶ 7, 11.

Proposed Intervenors easily satisfy the protectable interest requirement as their involvement in and support for the District's administrative process exceeds the extent of participation by intervenors in *Sagebrush Rebellion, Inc*. *See* 713 F.2d at 527. In

1  this case, Proposed Intervenors did not merely "support" the Boiler Rule. Rather,

2  Proposed Intervenors participated extensively in the regulatory process that led to the

3  development of the boiler and water heater emissions reduction standard. Vidaurre

4  Decl. ¶¶ 12–13, 15; Orbe Decl. ¶¶ 8, 11, 13; Gillespie Decl. ¶¶ 7–9, 11. As consistent

5  participants advocating for the adoption of the Boiler Rule before the District,

6  Proposed Intervenors have demonstrated a protectable interest in this suit that

7  challenges the Boiler Rule's validity.

8  **C.    The disposition of this case may impair Proposed Intervenors' ability
          to protect their interests.**

9

10  Rule 24(a) requires intervenors to show that "disposing of the action may as a

11  practical matter impair or impede the movant's ability to protect its interest." Fed. R.

12  Civ. P. 24(a)(2). If a proposed intervenor "would be substantially affected in a

13  practical sense by the determination made in an action, he should, as a general rule, be

14  entitled to intervene." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting Fed.

15  R. Civ. P. 24 advisory committee's notes). A determination of impairment tends to

16  follow once intervenors have satisfied the interest test's inquiry into whether the

17  applicant "will suffer a practical impairment of its interests as a result of the pending

18  litigation." *California ex rel. Lockyer*, 450 F.3d at 441–42 ("Having found that

19  appellants have a significant protectable interest, we have little difficulty concluding

20  that the disposition of this case may, as a practical matter, affect it.").

21  As described above, Plaintiffs ask this Court to declare the Boiler Rule invalid

22  and bar the District from implementing or enforcing the Rule. *See* ECF No. 12 at 7.

23  Such a result would eliminate the projected emission reductions provided by the

24  Boiler Rule and hamper the ability of the District to achieve cleaner air in the South

25  Coast, as required by the Clean Air Act. Because Proposed Intervenors were actively

26  engaged in the development and approval of the Boiler Rule, invalidation of the Rule

27  will undermine the efforts of Proposed Intervenors to ensure the adoption of the Rule

28

and threaten their overall interests in protecting the environment and achieving clean air in the South Coast.

### D. Proposed Intervenors' interests are not adequately represented by existing parties.

Proposed Intervenors should be granted intervention as of right because their interests are not adequately represented by Plaintiffs or the District. The three factors a court must consider in determining whether a proposed intervenor's interests are adequately represented by existing parties are:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *Cal. v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests '*may* be' inadequate." *Id.* (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added)); *see also Citizens for Balanced Use*, 647 F.3d at 900 ("[I]ntervention of right does not require an absolute certainty that . . . existing parties will not adequately represent" a proposed intervenor's interests.").

While some courts apply a rebuttable presumption of adequate representation when a proposed intervenor and a party have the same ultimate objective, or when the government is acting on behalf of its constituency, a "compelling showing" to the contrary rebuts the presumption. *Citizens for Balanced Use*, 647 F.3d at 898. Moreover, even when that presumption arises, the Ninth Circuit has "emphasize[d] that the burden of showing inadequacy of representation is generally minimal . . . ." *Prete*, 438 F.3d at 959. Ultimately, "[t]he most important factor in assessing the adequacy of representation is how the interest compares with the interests of existing

24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

parties." *Citizens for Balanced Use*, 647 F.3d at 898 (internal quotation marks and citation omitted).

Because the interests of the District diverge from those of Proposed Intervenors, Proposed Intervenors easily meet their minimal burden to show that the District may not "undoubtedly make all of a proposed intervenor's arguments" or may not be "capable and willing to make such arguments." *See Arakaki*, 324 F.3d at 1086.

### 1. Proposed Intervenors' interests are narrower and more focused than interests of the District.

The first significant way in which Proposed Intervenors' interests diverge from the District's interests is that Proposed Intervenors' interests are narrow and focused specifically on public health and environmental impacts. In contrast, the District's interests lie in the administration of its legal obligations. As such, the District is influenced by cost, administrative resource constraints, and political pressures that are not coextensive with the interests of the Proposed Intervenors.

Throughout their long history advocating before the District, Proposed Intervenors have sought strong policies that set stringent mandatory emissions reductions—an approach sometimes rejected by the District. *See* Vidaurre Decl. ¶¶ 12–16; Orbe Decl. ¶¶ 11, 13; Gillespie Decl. ¶¶ 7, 13. During the development of the Boiler Rule, Proposed Intervenors consistently advocated for positions that differed from those of the District. Vidaurre Decl. ¶¶ 12–16; Orbe Decl. ¶¶ 11, 13; Gillespie Decl. ¶¶ 7, 13. For example, Proposed Intervenors submitted numerous comment letters requesting, among other things, that the District adopt a rule with earlier compliance dates and avoid further delays in adopting the Rule. Vidaurre Decl. ¶¶ 12–16; Orbe Decl. ¶¶ 11, 13; Gillespie Decl. ¶¶ 7, 13. Although Proposed Intervenors ultimately supported the Boiler Rule because of the significant health benefits to their members and residents throughout the South Coast, the final regulation was adopted with compliance deadlines that fall short of what Proposed Intervenors sought. Vidaurre Decl. ¶ 15; Orbe Decl. ¶ 13; Gillespie Decl. ¶ 11. The

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs] UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

District's adoption of a rule that does not align with Proposed Intervenors' recommendations as stakeholders during the rulemaking process proves that the District's interests diverge from those of Proposed Intervenors. Vidaurre Decl. ¶ 15; Orbe Decl. ¶ 13; Gillespie Decl. ¶ 11. Therefore, it is quite possible that the District will not advance the same legal arguments as Proposed Intervenors in this case and is unable to adequately represent Proposed Intervenors' more narrow, particularized interests.

Courts have found that more focused interests of this type are sufficient to make a "compelling showing" of inadequate representation and to defeat any presumption of adequate representation. *Arakaki*, 324 F.3d at 1086–87 (citing Ninth Circuit precedent that "permit[s] intervention on the government's side [when] the intervenors' interests are narrower than that of the government and therefore may not be adequately represented"). The presumption of adequate representation is overcome when a government entity "is required to represent a broader view than the more narrow, parochial interests" of the proposed intervenor. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24 (narrower interests of intervening developers defeated presumption of adequate representation by government defendants).

In *National Association of Home Builders v. San Joaquin Valley Unified Air Pollution District*, proposed intervenors argued that because their interests lay solely in the health of their members, the San Joaquin Valley Air Pollution Control District, with its broader interests, may not adequately represent proposed intervenors' interests. No. 1:07-cv-0820-LJO-DLB, 2007 WL 2757995, at *5 (E.D. Cal. Sept. 21, 2007). The court agreed, finding that "[w]hile Proposed Interveners and the District share a general interest in public health, the District has a much broader interest in balancing the need for regulations with economic considerations" such that "it is not

likely that the District will 'undoubtedly make all the intervener's arguments.'" *Id.* The situation here is similar, and this Court should reach the same conclusion.

A proposed intervenor is not required to anticipate and identify specific differences in arguments and strategy in advance. "It is sufficient for [proposed intervenors] to show that, because of the difference in interests, it is likely that [an existing party] will not advance the same arguments as [proposed intervenors]." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 824. Because the District's interests differ from that of Proposed Intervenors, it is likely that the District will not make all of Proposed Intervenors' arguments.

Accordingly, Proposed Intervenors have made the requisite showing that the District may not adequately represent their interests.

### 2. Proposed Intervenors' interests relate directly to their own health, and are therefore more personal than the interests of the District.

The second significant way in which Proposed Intervenors' interests diverge from the interests of the District is that Proposed Intervenors, their members, and the residents of the communities they serve have a significant and deeply personal stake in upholding the Boiler Rule. Proposed Intervenors represent the interests of communities that are located in areas with high concentrations of industrial facilities and disproportionately impacted by pollution from gas-fired boilers and water heaters. Residents of those communities live, work, and recreate near factories and other facilities and, as a result, are regularly exposed to the particulate matter and NOx emissions associated with gas-fired boiler and water heater operations. Because this litigation will determine the legality of the Boiler Rule, the only regulation reducing emissions from boiler and water heaters in the South Coast to zero, its outcome will directly impact the health of Proposed Intervenors' members, the residents of the communities they serve, and other community members.

While the health of community members may be a key consideration for the District, the deeply personal health interests of Proposed Intervenors differ markedly

from the District's overall consideration of public health. It is the physical health of Proposed Intervenors' individual members, staff, and the South Coast residents they serve—not that of the District—that are impacted and put at risk daily by gas-fired boiler and water heater-related pollution. Vidaurre Decl. ¶¶ 6–9, 12; Montes Decl. ¶¶ 2, 9–15, 18; Orbe Decl. ¶¶ 9–10, 12; Boone Decl. ¶¶ 11, 13–15, 20, 22, 26; Gillespie Decl. ¶ 6. The District adopted the Boiler Rule to fulfill its legal obligation to reduce emissions in the South Coast, whereas Proposed Intervenors and their members vigorously supported the regulation to alleviate the disproportionate health risks South Coast residents face every day living next to facilities operating this equipment and breathing in noxious pollution. ECF No. 1-2 at 3, 6; Vidaurre Decl. ¶¶ 6–9, 12; Montes Decl. ¶¶ 2, 9–15, 18; Orbe Decl. ¶¶ 9–10, 12; Boone Decl. ¶¶ 11, 13–15, 20, 22, 26; Gillespie Decl. ¶ 6. Thus, the District's interest in public health, and in the outcome of this litigation, differs from that of Proposed Intervenors and their individual members and other South Coast residents, who are forced to shoulder disproportionate pollution burdens from gas-fired boilers and water heaters.

The Ninth Circuit has found that a government entity may not be able to adequately represent a proposed intervenor who has a more personal interest in the outcome of the litigation than the government. In *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, the Ninth Circuit considered whether the state adequately represented the interests of union truck drivers in a case challenging California's Prevailing Wage Law, which mandated increased wages for truck drivers. 152 F.3d 1184 (9th Cir. 1998). The court held that, even though the state defended the law, the union truck drivers overcame the presumption of adequate representation by the government because their interests were "potentially more narrow and parochial than the interests of the public at large . . . ." *Id.* at 1190. Similarly, Proposed Intervenors have demonstrated that their personal health interests are narrower than those of the District and therefore cannot be adequately represented.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

Additionally, Proposed Intervenors' more narrow health interest in the outcome of litigation is enough to overcome the presumption that a government entity defending an ordinance will adequately represent the interests of proposed intervenors. In *Syngenta Seeds, Inc. v. County of Kauai*, the court granted intervention to community and public interest groups with personal health interests in defending an ordinance that required disclosures related to the application of restricted-use pesticides. No. Civ. 14-00014BMK, 2014 WL 1631830 (D. Haw. Apr. 23, 2014). In that case, the proposed intervenors lived and worked in close proximity to plaintiffs' agricultural operations and argued that the challenged ordinance would eliminate or decrease their exposure to harmful restricted-use pesticides. *Id.* at *4. The court acknowledged that proposed intervenors were directly affected by the activities of plaintiffs that the ordinance would regulate. *Id.* at *7. In finding that the county would not adequately represent the proposed intervenors' interests, the court noted that the county's public health concerns were tempered by the need to balance regulation with economic and political considerations. *Id.* at *8. The court found that proposed intervenors' "interests in upholding the law are decidedly more palpable than the County's generalized interest." *Id.* at *7. As with *Sygenta Seeds*, Proposed Intervenors' individual members, staff, and the South Coast residents they serve are directly affected by the equipment that the Boiler Rule seeks to regulate. These individuals live and work in close proximity to facilities operating gas-fired equipment and, like intervenors in *Sygenta Seeds*, will benefit from reduced exposure to air pollutants as a result of the Boiler Rule. The District, on the other hand, must take into account political considerations and only possesses a "generalized interest" in public health. Because this case is similar, this Court should reach the same conclusion as the court in *Syngenta Seeds*.

### 3. Because of their uniquely situated position, Proposed Intervenors will provide necessary elements the existing parties cannot.

Finally, Proposed Intervenors will provide "necessary elements to the proceeding that other parties would neglect," a factor that weighs heavily in favor of permitting intervention in this case. *Arakaki*, 324 F.3d at 1086 (citing *Tahoe Reg'l Plan. Agency*, 792 F.2d at 778). Proposed Intervenors will bring the voices of community members living next to and working at or near industrial facilities, who are most directly impacted from pollution from this gas-fired equipment and would offer a unique perspective in the proceedings. *See Sagebrush Rebellion*, 713 F.2d at 528 (granting intervention where "the intervenor offers a perspective which differs materially from that" of existing parties). Proposed Intervenors worked alongside community members who reside in the South Coast, including in areas with a high concentration of industrial facilities, to encourage the District to pursue and adopt the Boiler Rule. Proposed Intervenors consequently have deep familiarity with the concerns of those community members. Vidaurre Decl. ¶¶ 4–13; Orbe Decl. ¶¶ 3, 5, 9–11. The interests of those community members who have been advocating for their interests to reduce pollution in the South Coast for years, and even decades in some cases, will be missing from this litigation. Moreover, Proposed Intervenors have deep policy expertise on addressing emissions from industrial equipment covered by the regulation. Vidaurre Decl. ¶¶ 2, 4, 12–13; Orbe Decl. ¶¶ 3, 5, 8, 11; Gillespie Decl. ¶¶ 3–9. Proposed Intervenors' participation is necessary to ensure that the interests of their members and other residents in the South Coast most affected by the highly polluting boilers and water heaters are adequately represented. Without Proposed Intervenors' participation, the Court will only hear from manufacturers, trade associations, unions, and the District—not from those who are directly affected by the pollution the Rule aims to reduce.

Proposed Intervenors have made a compelling showing that the existing parties may not adequately represent their interests, and thus overcome any presumption to

the contrary. Accordingly, each of the four requirements under Rule 24(a)(2) is satisfied and the Court should grant Proposed Intervenors intervention as of right.

## II. Alternatively, the Court should grant permissive intervention.

As set forth above, Proposed Intervenors meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). Alternatively, Proposed Intervenors also satisfy the requirements for permissive intervention under Rule 24(b). Permissive intervention is appropriate when (1) a movant files a timely motion; (2) the prospective intervenor has a claim or defense that shares a common question of law or fact with the main action; and (3) intervention will not unduly delay or prejudice existing parties. Fed. R. Civ. P. 24(b)(1), (b)(3).

Proposed Intervenors easily meet the three-part test for intervention. As discussed above, this motion is timely. Because Proposed Intervenors' motion is made at an early stage of the proceedings, intervention will neither cause delay nor prejudice the existing parties. *See Citizens for Balanced Use*, 647 F.3d at 897. *Cf. Air Cal.*, 799 F.2d at 538 (finding motion untimely and prejudicial where applicant moved to intervene after parties agreed to stipulated judgment following five years of litigation). Proposed Intervenors do not intend to duplicate the District's efforts. Additionally, Proposed Intervenors will work within the confines of the schedule set by the Court and the existing parties and not delay the resolution of any matters.

Additionally, Proposed Intervenors intend to defend the Boiler Rule against the claims raised in Plaintiffs' complaint, and those defenses share common questions of law with the main action. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002) (conservation groups met test for permissive intervention where they asserted defenses "directly responsive" to plaintiffs' complaint), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1178–79; *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

In sum, given the importance of the issues involved, the significant interests of Proposed Intervenors in the Boiler Rule, and the early stage of this case, Proposed

31

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs] UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))

Intervenors meet the requirements for permissive intervention under Rule 24(b). *See Kootenai Tribe of Idaho*, 313 F.3d at 1111 (holding that an "interest in the use and enjoyment" of roadless areas was sufficient to support permissive intervention in a case challenging rules protecting those areas from harmful development).

## CONCLUSION

For all the foregoing reasons, Proposed Intervenors have satisfied the requirements for intervention as a matter of right under Rule 24(a), and alternatively, permissive intervention under Rule 24(b). Proposed Intervenors therefore respectfully request that the Court grant this unopposed motion to intervene.

Respectfully submitted,

Dated: February 12, 2025        /s/    Adriano L. Martinez

ADRIANO L. MARTINEZ (SBN 237152)
CANDICE L. YOUNGBLOOD (SBN 328843)
Earthjustice
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
amartinez@earthjustice.org
cyoungblood@earthjustice.org
Tel: (415) 217-2000 / Fax: (415) 217-2040

*Counsel for Proposed Defendant-Intervenors People's Collective for Environmental Justice, Sierra Club, and Industrious Labs*

(List of Counsel continued on next page)

NIHAL SHRINATH (SBN 327921)
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
nihal.shrinath@sierraclub.org
Tel: (415) 977-5566

JAMES A. DENNISON *(Pro Hac Vice
forthcoming)*
Sierra Club
1650 38th St., Suite 103W
Boulder, CO 80301
jim.dennison@sierraclub.org
Tel: (435) 232-5784

*Counsel for Proposed Defendant-Intervenor
Sierra Club*

SEAN H. DONAHUE (SBN 264284)
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, DC 20003
sean@donahuegoldberg.com
Tel: (202) 277-7085

*Counsel for Proposed Defendant-Intervenor
Industrious Labs*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [NGOs]
UNOPPOSED MOTION TO INTERVENE (Civ. No. 2:24-cv-10482 PA(PDx))