Courtland L. Reichman (SBN 268873)
 creichman@reichmanjorgensen.com
Brian C. Baran (SBN 325939)
 bbaran@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

*Attorneys for Plaintiffs Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

ADDITIONAL COUNSEL ON FOLLOWING PAGE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RINNAI AMERICA CORP., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,<br><br>　　　　Defendant,<br><br>and<br><br>PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and INDUSTRIOUS LABS,<br><br>　　　　Defendant-Intervenors. | Civil Action No.<br><br>2:24-cv-10482 PA(PDx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DECLARATORY RELIEF, AND PERMANENT INJUNCTION**<br><br>Date:  Monday, July 14, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9A<br><br>Honorable Percy Anderson<br>United States District Judge |

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
  sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-3501

Sean Kneafsey (SBN 180863)
  skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

John J. Davis, Jr. (SBN 65594)
  jjdavis@msh.law
MCCRACKEN, STEMERMAN
  & HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-7201

*Attorneys for Plaintiff California State Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-7724

*Attorney for Plaintiff Californians for Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-2429

*Attorney for Plaintiff Restaurant Law Center*

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................1

Argument ....................................................................................................................3

I.   Under *California Restaurant Ass'n v. City of Berkeley*, the District's Zero-$NO_x$ Rule Concerns Energy Use Because It Effectively Prevents Gas Appliances From Using Any Energy, and It Is Therefore Preempted. ................3

    A.   The District cannot escape preemption by indirectly regulating appliances' energy use. ...........................................................................................4

    B.   EPCA does not exempt emission standards from preemption. ............................6

    C.   The District's rule prohibiting gas appliances from emitting $NO_x$ does not "incidentally affect energy use"; rather, it "cuts to the heart of what Congress sought to prevent" through EPCA's preemption provision. ................8

    D.   Enforcing EPCA's plain text here would not gut public health regulation. ......11

II.  The District's Authority Under the Clean Air Act Does Not Override EPCA Preemption. ..............................................................................................14

III. Plaintiffs Have Satisfied the Standard for a Facial Preemption Challenge.........18

IV.  Plaintiffs Are Entitled to Declaratory and Injunctive Relief. .............................23

Conclusion ...............................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Apparel & Footwear Ass'n v. Baden,*
    107 F.4th 934 (9th Cir. 2024) ............................................................. 19

*Ariz. Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014) ............................................................. 24

*Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.,*
    622 F.3d 1094 (9th Cir. 2010) ...................................................... 9, 16, 17

*Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A.,*
    519 U.S. 316 (1997) .......................................................................... 13

*California Restaurant Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ......................................................... *passim*

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene,*
    529 F. Supp. 2d 1151 (E.D. Cal. 2007) ............................................... 10

*Citizens United v. FEC,*
    558 U.S. 310 (2010) .......................................................................... 20

*Coventry Health Care of Mo., Inc. v. Nevils,*
    581 U.S. 87 (2017) ............................................................................ 12

*Dan's City Used Cars, Inc. v. Pelkey,*
    569 U.S. 251 (2013) .......................................................................... 13

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
    144 S. Ct. 457 (2024) .......................................................................... 7

*Galvez v. Jaddou,*
    52 F.4th 821 (9th Cir. 2022) ............................................................... 23

*John Doe No. 1 v. Reed,*
    561 U.S. 186 (2010) ..................................................................... 18, 19

*Lamar, Archer & Cofrin, LLP v. Appling,*
    138 S. Ct. 1752 (2018) .................................................................. 5, 12

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ............................................................... 24

ii

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)............................................................................11

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................23

*Obduskey v. McCarthy & Holthus LLP*,
    139 S. Ct. 1029 (2019).........................................................................7

*Project Veritas v. Schmidt*,
    125 F.4th 929 (9th Cir. 2025) ...........................................................18

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ...........................................................23

*Rowe v. New Hampshire Motor Transport Ass'n*,
    552 U.S. 364 (2008)......................................................................12, 13

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) .............................................................21

*United States v. Sup. Ct. of N.M.*,
    839 F.3d 888 (10th Cir. 2016) ......................................................18, 19

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008).........................................................................18

**Statutes**

Energy Policy and Conservation Act of 1975,
    42 U.S.C. §§ 6201-6422 ......................................................................3

    § 6291(1)-(2) ......................................................................................19

    § 6292 .................................................................................................21

    § 6292(a) ............................................................................................19

    § 6292(b) ............................................................................................20

    § 6297 ...................................................................................................6

    § 6297(c) ......................................................................................*passim*

    § 6297(f)(3) ...........................................................................................7

    § 6311(1)-(2) ......................................................................................19

iii

§ 6312(b) ..................................................................................................20

42 U.S.C. § 7410(a)(2)(E)(i) ..................................................................15

49 U.S.C. § 32902(f) ..............................................................................10

**Regulations**

S. Coast AQMD R. 1146.2 ................................................................*passim*

S. Coast AQMD R. 1146.2(b) ..................................................................22

S. Coast AQMD R. 1146.2(c)(1) ..............................................................22

S. Coast AQMD R. 1146.2(c)(18) ......................................................20, 22

S. Coast AQMD R. 1146.2(c)(31) ............................................................22

**Other Authorities**

California Restaurant Ass'n's Opposition to Motion to Dismiss First
    Amended Complaint at 16-17, *Cal. Rest. Ass'n v. City of Berkeley*,
    547 F. Supp. 3d 878 (N.D. Cal. 2021) (No. 4:19-cv-07668-YGR),
    Dkt. 52 ..................................................................................................10

Letter from Michael T. Benjamin, Div. Chief, Cal. Air Res. Bd., to Cheree
    Peterson, Acting Reg'l Adm'r, Region 9, U.S. EPA (Mar. 10, 2025)
    (EPA-R09-OAR-2024-0417),
    https://www.regulations.gov/document/EPA-R09-OAR-2024-0417-0016 ..........16

Motion to Dismiss First Amended Complaint at 18-20, *Cal. Rest.
    Ass'n v. City of Berkeley*, 547 F. Supp. 3d 878 (N.D. Cal. 2021)
    (No. 4:19-cv-07668-YGR), Dkt. 47 ................................................................10

## INTRODUCTION

This is a straightforward preemption case.  The District's Rule 1146.2 is a regulation concerning the energy use of covered appliances under EPCA because, by prohibiting gas appliances from having any $NO_x$ emissions, it effectively prohibits their use.  Or in other words, it sets the maximum energy use to zero.  It is undisputed that $NO_x$ emissions are an inevitable byproduct of combustion and that gas appliances therefore cannot operate via combustion without producing some $NO_x$.  As a result, the District's rule falls squarely within the four corners of the Ninth Circuit's decision in *California Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), and so it is preempted.

The problem with the District's and Intervenors' positions is that they seek to avoid both the plain text of the statute Congress wrote and Ninth Circuit precedent.  The District's explanation that its rule "addresses only what comes out the other side" of the appliance, Dkt. 53 at 9, is the mirror image of Berkeley's preempted rule addressing the gas pipe fueling the appliance; both rules do indirectly what they cannot do directly—ban gas appliances.  The District's claim that Berkeley's ban is distinguishable because it "explicitly" regulated the quantity of gas, *id.*, is wrong twice over.  Berkeley's ban did not, in fact, explicitly regulate appliances or the quantity of gas they used.  And that gave rise to the legal issue the Ninth Circuit decided:  The district court thought that EPCA preempted only explicit (or "facial[] or direct[]") regulations, and the Ninth Circuit reversed.  *Cal. Rest.*, 89 F.4th at 1098.  Of course, the Ninth Circuit limited its decision to the ordinance before it: Berkeley's ban.  But there is no daylight between its holding and reasoning there and the District's rule here.

The District's other arguments likewise misread *California Restaurant Ass'n*

1

1    and would rewrite EPCA.  Far from holding that only building codes are preempted,

2    the Ninth Circuit explained that EPCA's broad preemption provision reaches beyond

3    energy efficiency standards to also include building code provisions.

4           Nor does the District's assertion of its regulatory authority under the Clean Air

5    Act ("CAA") have any bearing on this case.  EPCA's "silence" on air quality

6    regulations, rather than creating an implied exception, shows that they are not exempt.

7    Congress was well aware of the CAA's legislative scheme yet chose not to make an

8    exception for state air quality regulations.  And the CAA, for its part, does not authorize

9    the District to violate other federal laws—to the contrary, it affirmatively requires that

10   any regulation submitted as part of a state plan not be otherwise prohibited by federal

11   law.  The District's suggestion that Congress would not undo "the very pollution

12   controls it demanded," Dkt. 53 at 10, ignores that Congress has made no such demand;

13   nothing requires the District to reach its emissions objectives through these specific

14   rules.  And for all the District's attempts to portray its rule as a federal directive, the

15   rule remains in reality a local air quality regulation subject to EPCA preemption; any

16   reservation of regulatory authority to the states under the CAA is simply irrelevant.

17          The District's attempts to evade the merits fare no better.  The District's

18   argument against Plaintiffs' facial challenge misapplies the legal standard, which asks

19   whether the plaintiffs' claim aligns with the requested relief.  Plaintiffs seek to have

20   the rule enjoined as to covered appliances, which matches the scope of EPCA's

21   preemption provision and the Ninth Circuit's holding in *California Restaurant Ass'n*.

22   In any event, this argument goes at most to the proper remedy, not the merits; the Court

23   here should grant the same relief the Ninth Circuit granted there.

24          Holding that the District's zero-$NO_x$ rule is preempted will not cause the sky to

2

fall.  It does not threaten to gut all air quality regulations any more than the *California Restaurant Ass'n* decision gutted all building code provisions.  Regulations that only incidentally impact energy use of covered appliances are not preempted; previously existing $NO_x$ limits may fall within that category.  But the District's regulation crosses the line into effectively banning the use of gas appliances and therefore intrudes into the heartland of what Congress sought to prevent in EPCA.

Plaintiffs' motion should therefore be granted.

## ARGUMENT

I.  **Under *California Restaurant Ass'n v. City of Berkeley*, the District's Zero-$NO_x$ Rule Concerns Energy Use Because It Effectively Prevents Gas Appliances From Using Any Energy, and It Is Therefore Preempted.**

In *California Restaurant Ass'n*, the Ninth Circuit held that the Energy Policy and Conservation Act of 1975, 42 U.S.C. §§ 6201-6422,[1] "preempts regulations . . . that relate to the quantity of natural gas directly consumed by certain consumer appliances at the place where those products are used."  89 F.4th 1094, 1101 (9th Cir. 2024) (cleaned up).  In doing so, the court recognized that "EPCA is concerned with the end-user's ability to *use* installed covered products at their intended final destinations."  *Id.* at 1102.  Berkeley's prohibition on gas piping in new construction was thus preempted because its inevitable effect was to prevent consumers from using covered gas appliances.  *Id.* (holding that "a regulation on 'energy use' fairly encompasses an ordinance that *effectively* eliminates the 'use' of an energy source" (emphasis added)).

Here, it is undisputed that "$NO_x$ is an inevitable byproduct of combustion" and "[n]o gas appliance can operate via combustion without producing some $NO_x$."  Dkt. 57

---

[1] All further statutory references are to Title 42 of the U.S. Code unless otherwise noted.

at SUF 3.  It follows that a prohibition on $NO_x$ emissions is effectively a prohibition on gas appliances.  The District's zero-$NO_x$ rule is therefore preempted by EPCA because, just as with Berkeley's ban on gas piping, the inevitable effect of prohibiting covered gas appliances from emitting any $NO_x$ is to prevent consumers from using them at all. None of the District's or Intervenors' arguments escape this straightforward application of binding precedent.

## A. The District cannot escape preemption by indirectly regulating appliances' energy use.

The District first attempts to distinguish its zero-$NO_x$ rule by emphasizing that it "regulates only the $NO_x$ emissions that appliances release" as opposed to directly "regulating the quantity of gas that appliances c[an] use." *E.g.*, Dkt. 53 at 9; Dkt. 63 at 16.  As the Ninth Circuit has held, that is a distinction without a difference.  "States and localities can't skirt the text of broad preemption provisions" like EPCA's "by doing *indirectly* what Congress says they can't do *directly*." *Cal. Rest.*, 89 F.4th at 1107.  So just as Berkeley "can't evade preemption by merely moving up one step in the energy chain and banning natural gas piping," *id.*, the District can't evade preemption by merely moving down one step and banning gas emissions.

The District nonetheless insists that its zero-$NO_x$ rule is distinguishable because Berkeley's ordinance "explicitly" regulated energy use.  Dkt. 53 at 19, *see also id.* at 9 (same); *id.* at 20 (asserting that Berkeley's ordinance "on its face" regulated the quantity of gas).  That is not true.  In reality, Berkeley's ordinance did not directly address energy use at all, let alone "explicitly" regulate it.  That is why the central issue before the Ninth Circuit was whether EPCA preempted Berkeley's ordinance even though it only prohibited gas infrastructure, as opposed to directly regulating gas

appliances' energy use. *Cal. Rest.*, 89 F.4th at 1102 ("Berkeley's main contention is that its Ordinance doesn't regulate 'energy use' because it bans natural gas rather than prescribes an affirmative 'quantity of energy.'"). The district court there upheld the ordinance because it did "not facially regulate or mandate any particular type of product or appliance," and its impact on covered products was "at best indirect[]." 89 F.4th at 1099. The Ninth Circuit expressly rejected the district court's ruling as "divorced from [EPCA's] text," which preempts regulations that effectively "prevent consumers from using covered products in their homes, kitchens, and businesses." *Id.* Any doubt that Congress did not intend to limit preemption to direct regulation of covered products was "erase[d]" by Congress's choice to "expand[] EPCA's reach to regulations that 'concern[]' such products" given that the term "concerning" in preemption provisions has a well-established "broadening" and "expansive" effect. *Id.* (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)).

The District's argument that its zero-$NO_x$ rule does not directly regulate "how much gas an appliance can use" but instead "addresses only what comes out the other side," Dkt. 53 at 9, therefore gets it nowhere and instead puts it squarely within the Ninth Circuit's *California Restaurant Ass'n* holding. Likewise, that "the Rule targets appliances, not construction standards for new buildings," only places the District's rule even more in the heart of EPCA's preemptive scope than was Berkeley's preempted ordinance. Just as with Berkeley's ordinance, the undisputed effect of the District's rule is to prevent consumers from using covered appliances; that the District "took a more circuitous route to the same result" Congress otherwise foreclosed does not allow it to evade preemption. *Cal. Rest.*, 89 F.4th at 1098.

**B. EPCA does not exempt emission standards from preemption.**

Next, the District and Intervenors assert that preemption is limited to regulations contained in building codes, and emission standards are thus implicitly exempt from EPCA's preemptive reach. *E.g.*, Dkt. 53 at 27; Dkt. 63 at 16-17. That is irreconcilable with EPCA's text and structure alike.

Nothing in § 6297 exempts emission standards from preemption. To the contrary, "EPCA's preemption clause establishes that, once a federal energy conservation standard becomes effective for a covered product, 'no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product,' unless the regulation meets one of several categories" that have nothing to do with emission standards. *Cal. Rest.*, 89 F.4th at 1101 (quoting § 6297(c)). Because EPCA "broadly preempts any state regulation concerning" the preempted subject matter unless it falls under a defined exception, *id.* at 1105, there is no basis to add an implied emission standards exception.

Put another way, that EPCA "does not mention state emissions regulations" does not mean that Congress intended to exclude them from preemption; if anything, EPCA's "silen[ce]" on the issue shows the opposite. *Contra* Dkt. 63 at 16-17; Dkt. 53 at 27. As the District points out, "[b]y the time Congress enacted EPCA in 1975 and amended [the operative preemption provision] in 1987, the [Clean Air Act]'s cooperative federalism scheme for addressing air pollution had been in place for years." Dkt. 53 at 26. So Congress, which specified several exceptions to preemption, easily could have—but did not—exempt state and local emission standards from the preempted subject matter.[2] Courts must "presume that Congress means what it says"

---

[2] This choice does not "reverse course" on air quality regulations, *contra* Dkt. 53 at 27, but merely, as the CAA itself states, requires air quality regulations to comply

6

1  and cannot "simply reconfigure the statute to fit the [District's] needs" by importing a

2  new exception into the statute.  *Cal. Rest.*, 89 F.4th at 1105; *accord Dep't of Agric.*

3  *Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 474 (2024) (courts' "role is to

4  apply the law, not rewrite it").

5      Likewise, Defendants' suggestion that EPCA's preemptive scope excludes

6  emission standards because certain building code regulations are exempt from

7  preemption has it backward.  As discussed, § 6297(c) broadly preempts "[a]ny State

8  regulation concerning" the preempted subject matter unless a specific exception

9  applies.  One such exception is § 6297(f)(3), which exempts from preemption certain

10  regulations "contained in a State or local building code for new construction" that meet

11  strict requirements.  That shows that EPCA preempts "[a]ny State regulation

12  concerning" the preempted subject matter, including building code regulations that do

13  not qualify for the exemption—not that EPCA preempts only building code

14  regulations.  "[I]f Congress meant to cover only" regulations contained in building

15  codes, "it could have said so." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029,

16  1038 (2019).

17      Beyond that, Defendants' position misreads the point of the Ninth Circuit's

18  emphasis on building codes.  That was a "critical[ly] important" issue in *California*

19  *Restaurant Ass'n* only because Berkeley claimed that preemption was limited to energy

20  efficiency standards and did not reach its gas infrastructure prohibition as part of a

21

22  with other federal law, including EPCA's nationally uniform scheme. *See infra* pp. 14-
   15.  Nor does the District's suggestion that its rule builds on an already-present

23  patchwork of appliance standards, Dkt. 53 at 27, change the reality that its rule has the
   very effect Congress sought to prevent—let alone change the preemption provision

24  Congress wrote.  Whether other jurisdictions' rules are also preempted is beyond the
   scope of this case.

1   building code.  *See* 89 F.4th at 1101.  The Ninth Circuit discussed the building code

2   exception in the course of rejecting Berkeley's argument that preemption is limited to

3   "regulations that impose standards on the design and manufacture of appliances."  *Id.*

4   at 1100.  That was because the exception establishes that "EPCA's preemptive scope

5   extends beyond direct or facial regulations of covered products."  *Id.* at 1101.  After

6   all, Congress would have had no reason to define exactly which building code

7   regulations were exempt from preemption unless some building code regulations were

8   preempted in the first place.  Beyond confirming the breadth of EPCA's preemption

9   provision, *see* Dkt. 50-1 at 13-14, the Ninth Circuit's emphasis on building codes is

10  irrelevant here.

11      **C. The District's rule prohibiting gas appliances from emitting $NO_x$ does
        not "incidentally affect energy use"; rather, it "cuts to the heart of what**

12      **Congress sought to prevent" through EPCA's preemption provision.**

13      The District and Intervenors next assert that the zero-$NO_x$ rule is not preempted

14  because it only "incidentally affect[s] energy use" of covered gas appliances.  Dkt. 53

15  at 25.  That argument is irreconcilable with the Ninth Circuit's reasoning and holding

16  in *California Restaurant Ass'n*.  As discussed, the inevitable effect of a rule allowing

17  only appliances with zero $NO_x$ emissions is to prevent consumers from using covered

18  gas appliances, an outcome that the Ninth Circuit held is preempted.  *Supra* pp. 3-5;

19  *see also* Dkt. 50-1 at 10-12.

20      Nothing about that conclusion jeopardizes the District's ability to promulgate

21  emission standards.  *Contra* Dkt. 53 at 21; Dkt. 63 at 23-27 & n.4.  As Judge Baker

22  explained in the Ninth Circuit, EPCA is "unlikely" to preempt regulations that only

23  "incidentally impact" covered products' gas consumption, such as "state and local

24  taxes" or a decision to not extend a utility distribution system.  *Cal. Rest.*, 89 F.4th at

8

1117 (Baker, J., concurring); *see also Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097 n.2 (9th Cir. 2010) (rejecting the argument that preemption would affect a broad swath of local regulations and noting that "the District greatly overstates its case when it claims that a finding of preemption here would mean that *all* state and local regulation that happened to affect railroads, such as criminal laws or consumer protection laws, would be preempted"). The District's zero-$NO_x$ rule, by contrast, "cuts to the heart of what Congress sought to prevent." *Cal. Rest.*, 89 F.4th at 1119 (Baker, J., concurring). Far from "incidentally affect[ing] energy use," Dkt. 53 at 23, that the District's rule concededly "targets appliances," *id.* at 23, inextricably links the rule to covered gas appliances' energy use. The rule is preempted not because it is one of "a host of state and local regulations that incidentally impact the quantity of natural gas consumed by covered products" in certain circumstances, *id*. at 25 (cleaned up), but because its effect—and inescapable purpose—is to categorically prohibit gas appliances' energy use. In short, the District's ban is indistinguishable from Berkeley's ban; the District merely banned gas combustion instead of gas piping.

The District's reliance on cases addressing motor vehicle regulations to suggest that emissions can have at most "incidental" effect on energy use is therefore misplaced. Dkt. 53 at 25-26. For starters, the District's district court cases predate and so do not address the Ninth Circuit's holding that EPCA preempts an effective ban on covered appliances. More fundamentally, the legislative scheme for motor vehicle regulations involves different statutory requirements. Unlike appliance regulations, motor vehicle regulations are expressly within the ambit of two federal agencies: The National Highway Traffic Safety Administration ("NHTSA") regulates fuel economy standards under EPCA, while the Environmental Protection Agency regulates motor

vehicle emissions under the Clean Air Act. *See Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1168 (E.D. Cal. 2007). EPCA requires that NHTSA, in setting fuel economy standards, consider "other motor vehicle standards of the government" that affect fuel economy. *Id*. (citing 49 U.S.C. § 32902(f)). That drove the *Goldstene* district court to find "that Congress did not intend that EPCA should preempt state laws that serve purposes different from EPCA, but which may have some effect on fuel economy as a byproduct of their enforcement." *Id*. at 1175. Here, by contrast, there is no such requirement; EPCA does not require that the Energy Department consider other federal appliance standards, and neither it nor any other statute tasks the EPA with regulating appliances.

The District next insists that the zero-$NO_x$ rule "merely further tightened $NO_x$ emission standards for appliances that had been in place since 1978." Dkt. 53 at 20. But unlike previous regulations, prohibiting appliances from emitting any $NO_x$ inevitably prevents gas appliances from using any energy at all—and thus prevents consumers from using gas appliances altogether. By contrast, the District's previous emissions regulations—as distinct from effective bans—may indeed have had only an incidental impact on covered appliances. The preemption problem at issue here arises when emission standards are so stringent that manufacturers cannot design or sell (or consumers cannot use) covered gas appliances. *See Cal. Rest.*, 89 F.4th at 1102.[3]

---

[3] For the same reasons, the California Restaurant Association's purported concession in the Berkeley litigation that EPCA does not preempt "[l]ocal regulations limiting the emissions of nitrogen oxide" is beside the point. *Contra* Dkt. 53 at 22 (alterations incorporated). The distinction the Association was drawing was between Berkeley's ordinance and then-existing rules limiting, but not banning, $NO_x$ emissions. California Restaurant Ass'n's Opposition to Motion to Dismiss First Amended Complaint at 16-17, *Cal. Rest. Ass'n v. City of Berkeley*, 547 F. Supp. 3d 878 (N.D. Cal. 2021) (No. 4:19-cv-07668-YGR), Dkt. 52 (citing Motion to Dismiss First Amended Complaint at 18-20, *Cal. Rest.*, 547 F. Supp. 3d 878 (No. 4:19-cv-07668-

To be clear, zero is not a magical number that triggers preemption; it just makes this case easy to resolve on the facts.  To borrow the District's example, a 0.001 ppmv emission standard would in all likelihood be preempted, not because all emission standards necessarily concern appliances' energy use, but because that particular standard would have the same preempted effect as a 0 ppmv standard:  It would, in all likelihood, amount to an effective ban on covered gas appliances.  *Contra* Dkt. 53 at 20-21.  And as the Ninth Circuit explained, what matters is the effect of the regulation on the energy use of covered appliances.  *See Cal. Rest.*, 89 F.4th at 1099.

Anyhow, the Court need not consider hypothetical non-zero emission standards.  Nobody challenges them here.  And bright-line rules are a poor fit for broad preemption provisions like EPCA's.  No one case can map EPCA preemption's outer boundaries, much less one that, as here, "does not present a borderline question."  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992).

### D. Enforcing EPCA's plain text here would not gut public health regulation.

The District and Intervenors fail to confront the well-established meaning of "concerning."  Instead, they attack a strawman, arguing that a ruling prohibiting it from banning gas appliances through its novel regulation—just as the Ninth Circuit prohibited Berkeley from doing so—"would jeopardize dozens of longstanding public health regulations across the country."  Dkt. 53 at 26; *see also* Dkt. 63 at 9-10 (presenting a parade of horribles with no resemblance to the District's novel emissions limit).  Nobody is asking for that, and there is no reason to think it would happen.  All

YGR), Dkt. 47).  This case presents the distinct question whether EPCA preempts the District's rule effectively banning gas appliances by barring all $NO_x$ emissions.  The Association's statement had nothing to do with the (preempted) zero-$NO_x$ standard the Bay Area District adopted years later or with the District's rule at issue here.  *Contra* Dkt. 53 at 21-22.

Plaintiffs ask is that the Court apply the statute Congress wrote, which given its choice of "concerning" is broad but not unlimited.

It is well established that Congress uses "concerning," like "relating to," to "express[] a broad pre-emptive purpose." *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 95-96 (2017) (attribution omitted); *accord Cal. Rest.*, 89 F.4th at 1103 (citing *Lamar, Archer & Cofrin*, 138 S. Ct. at 1759). These terms, while not unbounded, are not easily evaded. For example, in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008), the Supreme Court confirmed that at the very least, laws with "a significant impact related to Congress' deregulatory and pre-emption-related objectives" are preempted by a "related to" provision, *id*. at 371 (cleaned up). Specifically, the Court held that a state law was impermissibly "related to" the prices of motor carriers because, although the law did not directly regulate trucking companies, it accomplished the same result by prohibiting retailers from accepting deliveries from trucking companies that did not follow certain rules. *See id*. at 368-69, 372. The state law was "less 'direct' than it might be," but that did not save it from preemption because it "produce[d] the very effect that the federal law sought to avoid." *Id*. at 372; *see also id.* at 373 (noting that allowing this type of law "could easily lead to a patchwork of state" laws, contrary to congressional intent); *Cal. Rest.,* 89 F.4th at 1107 (recognizing that "the ability to use covered products is 'meaningless' if consumers can't access the natural gas available at the meter on the premises"). Put another way, states cannot evade preemption "related to" a subject of federal regulation just by doing indirectly what they cannot do directly. *See Cal. Rest.*, 89 F.4th at 1107 (collecting cases). Just as in those cases, the District's zero-$NO_x$ rule is preempted.

None of that leaves § 6297(c) without a limiting principle. Congress's intent—

as understood through the statute it wrote—is the limiting principle, just as it is for similarly broad preemption provisions. *See, e.g.*, *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997) ("[T]o determine whether a state law has the forbidden connection [with ERISA plans], we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." (cleaned up)); *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 263-64 (2013) (considering congressional purpose, as evidenced by the text). That is why generally applicable regulations with only a tangential effect on the preempted subject matter are ordinarily not preempted. *See, e.g.*, *Dan's City*, 569 U.S. at 264 (noting that the provision at issue in *Rowe* would not preempt generally applicable zoning laws even if they tangentially affected trucking operations). Likewise, by prohibiting state and local governments from regulating concerning appliances' energy use, EPCA says nothing about whether those governments must take actions to ensure access to gas distribution (or any other type of energy) that is not already available. *See Cal. Rest.*, 89 F.4th at 1117 (Baker, J., concurring). The District's cursory approach to "concerning," by contrast, is at odds with Supreme Court and Ninth Circuit precedent.

Finally, the District cannot switch off preemption by merely invoking health and safety purposes. "Despite the importance of [those] objective[s]," EPCA does not "create[] an exception on that basis." *See Rowe*, 552 U.S. at 373-74. But applying EPCA's plain text to hold that localities cannot impose effective bans of covered gas appliances will not cause the sky to fall—just as it hasn't in more than a year since the Ninth Circuit held that Berkeley's ordinance was preempted, despite similar arguments made there about the purported threat to all sorts of health and safety regulations.

## II. The District's Authority Under the Clean Air Act Does Not Override EPCA Preemption.

The District and Intervenors spend much of their energy emphasizing the District's obligations under the Clean Air Act, insisting that the District is merely following a federal "directive," that it has "no choice" but to adopt Rule 1146.2's zero-$NO_x$ limits, and that EPCA cannot encroach on CAA regulation as a coexisting federal regulatory scheme. *See* Dkt. 53 at 24-27; Dkt. 63 at 16-17. To no avail. Nothing about the District's authority to regulate under the CAA gives the District the power to adopt a regulation preempted by a separate federal law or otherwise requires this Court to "harmonize" the District's rule with EPCA by finding a way for both to coexist. *Contra* Dkt. 63 at 16-17, 24-25 & n.2; Dkt. 53 at 23-27.

**1.** The District's authority to regulate under the CAA does not provide a blank check to ignore whatever other laws it thinks stand in the way of its air quality targets. The District, like any state or local agency, is bound by other laws. Taken to its logical conclusion, the District's position here would mean that if it finds that eliminating appliance emissions based on a user's race would help it achieve its targets more quickly, the CAA authorizes it to violate the Equal Protection Clause. That cannot be correct. So too for EPCA's preemption provision and the Supremacy Clause. As discussed, the District's position is contrary to EPCA's plain text; Congress was well aware of the CAA's "cooperative federalism" scheme when it amended EPCA's operative preemption provision, and Congress was well within its rights to prioritize uniform appliance regulation by deciding not to exempt state and local emission standards from preemption. *See supra* pp. 6-7.

The CAA's own text confirms the point. Despite spending page after page discussing the CAA, neither the District nor Intervenors acknowledge that the CAA

requires, as one of the criteria for EPA approval of an amendment to a state
implementation plan ("SIP"), that the state provide assurances that its rule "is not
prohibited by any provision of Federal or State law." § 7410(a)(2)(E)(i).[4]  It follows
that the CAA does not authorize, let alone require, states to violate other federal laws
in pursuit of air quality objectives.  The District's regulations are therefore not immune
from challenges under EPCA's preemption provision or any other federal statute.

That state air quality regulations are part of a "cooperative" state–federal
regulatory scheme under the CAA is irrelevant, as is the District's contention that air
quality regulation is "traditionally" an area of state control.  *Contra* Dkt. 53 at 11.
While the District may have a general "directive" under the CAA to "achieve air quality
standards," *id.* at 24, it has no specific federal directive to regulate appliance emissions,
let alone set regulations that effectively ban gas appliances in violation of EPCA and
Ninth Circuit precedent.  Similarly, that local regulations may (or may not) be
"necessary" to meet the federal air quality standards does not authorize the District to
duck EPCA preemption or any other federal law.  *Contra id.* at 25.  In any event, the
District's claim that it has "no choice" but to effectively ban gas appliances, *id.*, is just
not true.  The District itself emphasizes its wide latitude to carry out its CAA
"directive[s]," *see, e.g.*, *id.* at 12, 24; while the federal government sets the objective,
the District decides how to get there.  There is no mandate for the specific pollution
controls at issue here, *contra id.* at 10—and the District points to none.

---

[4] Section 7410(a)(2)(E)(i) requires that each state implementation plan provide
"necessary assurances that the State" (or, where applicable, the local government or
regional agency) "will have adequate personnel, funding, and authority under State
(and, as appropriate, local) law to carry out such implementation plan (and is not
prohibited by any provision of Federal or State law from carrying out such
implementation plan or portion thereof)."

Moreover, for Rule 1146.2's zero-$NO_x$ limits to count toward the District's attainment plan to meet federal air quality standards, those limits would need to be submitted to the EPA by the California Air Resources Board ("CARB") and approved as part of a SIP amendment. Dkt. 53 at 16-17. But the District's rule has not been submitted to the EPA, nor is it likely to be submitted in the near term, despite the District's intentions. *Contra id.* CARB recently withdrew the Bay Area District's almost-identical zero-$NO_x$ rules from EPA consideration for inclusion in the California SIP—presumably to avoid disapproval.[5] Despite suggesting that the Bay Area rules help its case, Dkt. 53 at 17 n.5, the District neglected to mention this development.

In short, Congress did not excuse air quality rules motivated by the CAA from EPCA's preemption provision, no matter how "necessary" or helpful to achieving federal air quality standards the District believes its rules to be, Dkt. 53 at 24. While Plaintiffs sympathize with the District's difficulty in wrestling with poor air quality in the South Coast air basin, that does not justify a violation of a separate federal statute.

**2.**    The District's and Intervenors' view that the District's rule carries a federal imprimatur that overrides EPCA's preemption provision is further undermined by the Ninth Circuit's reasoning in *Association of American Railroads v. South Coast Air Quality Management District*, 622 F.3d 1094 (9th Cir. 2010). There, the Ninth Circuit held that a District rule regulating emissions from idling trains was preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), which regulates rail transportation. *Id.* at 1096-97. The Ninth Circuit specifically rejected the District's arguments that its regulation had to be "harmonize[d]" with federal law.

---

[5] Letter from Michael T. Benjamin, Div. Chief, Cal. Air Res. Bd., to Cheree Peterson, Acting Reg'l Adm'r, Region 9, U.S. EPA (Mar. 10, 2025) (EPA-R09-OAR-2024-0417), https://www.regulations.gov/document/EPA-R09-OAR-2024-0417-0016.

*Id.* at 1097-98.  The court explained that if there is an "apparent conflict" between "ICCTA and a *federal* law, then the courts must strive to harmonize the two laws, giving effect to both laws if possible," but that "different rules apply" if the conflict is with a "*state or local* law."  *Id.* at 1097.  And because the District's rule was a state law, it was "irrelevant that the Clean Air Act reserves certain regulatory authority to the states and localities."  *Id.* at 1098.  The court had "no authority . . . to harmonize the District's rules with ICCTA."  *Id.*

So too here.  Rule 1146.2 is a local law that has not been approved by the EPA as part of a SIP amendment; it is therefore "irrelevant" that the CAA reserves authority to the state, and the Court has "no authority" to try to "harmonize" the rule with EPCA.  *Am. R.Rs.*, 622 F.3d at 1098.  *American Railroads* likewise debunks the District's claim that "Congress would not have silently preempted" state air quality regulations it sought to foster, Dkt. 53 at 10; the Ninth Circuit held that Congress did just that.  Because EPCA preempts all regulations concerning the energy use of covered appliances (unless its express exceptions apply), EPCA "preempts the District's rules here."  *Am. R.Rs.*, 622 F.3d at 1098.

The District does not even address this Ninth Circuit precedent.  And while Intervenors acknowledge in a footnote that *American Railroads* prohibits a "harmonization" analysis of EPCA with Rule 1146.2, they say they are not asking for that but just want the Court to avoid interpreting EPCA to be "wholly incompatible with the Clean Air Act provisions that," in their view, "authorize and obligate the District to enact" regulations like Rule 1146.2's zero-$NO_x$ limits.  Dkt. 63 at 25 n.4.  But as already explained, the CAA neither authorizes nor requires the District's zero-$NO_x$ rule; there is no conflict between the CAA and Plaintiffs' (and the Ninth Circuit's)

17

plain-text reading of § 6297(c).  *Supra* pp. 14-16.  Nor will preempting the District's ban gut air quality regulation.  *Supra* pp. 11-13.  The only lawful way to "harmonize" the District's zero-$NO_x$ limits with EPCA is to enforce EPCA's preemption provision.

### III.    Plaintiffs Have Satisfied the Standard for a Facial Preemption Challenge.

Next, the District tries to dodge the merits by quibbling with whether Plaintiffs have satisfied the standard for a facial challenge.  According to the District, Plaintiffs' facial challenge fails because process heaters are not covered appliances under EPCA, and fuel cell technology might in the future provide a zero-$NO_x$ option for complying with its rule.  Dkt. 53 at 28-29.  This argument misapplies the legal standard and goes at most to the proper remedy, not the merits.

**1.**    To be sure, as a general matter, a facial challenge requires showing that the challenged law is "unconstitutional in all of its applications."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).  But the District misunderstands the standard, which is tethered to the "plaintiffs' claim and the relief that would follow."  *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).  "The label is not what matters"; "[w]here, as here, the claim and accompanying relief reach beyond the particular circumstances of the[] plaintiffs," facial standards apply, but only "to the extent of that reach."  *Id.*; *accord Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th Cir. 2025) (same).  Or as the Tenth Circuit summed it up, "facial standards are applied . . . to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision."  *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 914 (10th Cir. 2016) (applying *Reed*).

The scope of EPCA's preemption provision confirms the point.  Congress directed that state regulations are preempted only to the extent they operate on covered

appliances.  § 6297(c) ("no State regulation concerning the energy efficiency, energy use, or water use of such covered product *shall be effective with respect to such product*" (emphasis added)).  It was well within Congress's power to limit the scope of preemption in this way.  Defendants contend, however, that Plaintiffs must show that the zero-NO$_x$ rule "applies only to 'covered products'" as "a precondition to success on their facial challenge."  Dkt. 63 at 23 n.3.  By that logic, EPCA's preemption provision would practically never support a facial challenge; a state could easily flout EPCA by simply tacking on a regulation of a non-covered appliance to an otherwise preempted regulation. That result is contrary to Supreme Court and Ninth Circuit precedent—including the Ninth Circuit's decision in *California Restaurant Ass'n*.  *See Reed*, 561 U.S. at 194; *Cal. Rest.*, 89 F.4th at 1107.

Here, "the universe of applications contemplated by [P]laintiffs' claim" is the zero-NO$_x$ rule's effect on covered products as defined by EPCA, *Sup. Ct. of N.M.*, 839 F.3d at 914.  *See, e.g.*, Dkt. 1 at ¶¶ 89-90 (requesting a "declaratory judgment . . . that the District's Rule 1146.2 is preempted by federal law because it concerns the energy use of appliances covered by" EPCA).  Thus, contrary to the District's suggestion, it is irrelevant that the rule is not preempted to the extent it has an effect on products not covered by EPCA—a point no one is disputing.  *See Sup. Ct. of N.M.*, 839 F.3d at 915 (facial analysis "focuses on only the constitutional validity of the subset of applications targeted by the plaintiffs' substantive claim").  The District's reliance on *American Apparel & Footwear Ass'n v. Baden*, 107 F.4th 934 (9th Cir. 2024), is thus misplaced; the plaintiffs there were unable to show that all the applications contemplated by their claim were preempted.  As a practical matter, however, EPCA covers most gas appliances.  *See, e.g.*, §§ 6291(1)-(2), 6292(a), 6311(1)-(2) (listing a wide range of

covered products); §§ 6292(b), 6312(b) (authorizing rulemaking to cover additional products).

Any concern over the breadth of Plaintiffs' claim is properly addressed by cabining the scope of the remedy to the rule's effect on covered products, not by, as the District suggests, rejecting the claim. *See Citizens United v. FEC*, 558 U.S. 310, 331 (2010) (objection to scope of facial challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint"). That was exactly what the Ninth Circuit did in *California Restaurant Ass'n*. Recognizing that "Berkeley may enforce its building code on non-covered products, but EPCA displaces its effect on covered products," the court "conclude[d] that EPCA preempts Berkeley's building code's effect against covered products." *Cal. Rest.*, 89 F.4th at 1099, 1104. This Court should likewise declare that EPCA preempts the zero-NO$_x$ rule's effect against covered products and enjoin it to that extent.

Whether process heaters are covered under EPCA—and some may be as water heaters or boilers, *see* Rule 1146.2(c)(18) (defining "process heater" as equipment that "transfers heat from combustion gases to water or process streams")—is a separate question that can be addressed if the District proceeds with enforcing its rule against what it understands to be non-covered appliances. Because Plaintiffs' requested relief, like EPCA's preemption provision, is limited to covered appliances, the Court need not resolve this issue to rule on Plaintiffs' facial challenge.

**2.** Nor can the District save its rule from a facial preemption challenge with its vague suggestion that there is "potential" for future development of gas fuel cell technology that might comply with the zero-NO$_x$ standard. Dkt. 53 at 28-29. First off, the District never says that Rule 1146.2-compliant fuel cell technology exists or is

20

available in the District; the District says only that "it can be *reasonably anticipated* that compliant natural gas fuel cell technology *could* be developed" at some point in the future.  Dkt. 53 at 28-29 (emphasis added).  The District's conclusory speculation about the purported advancement and availability of this technology is reason enough to reject its argument.  *See, e.g.*, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").[6]

More fundamentally, what the District does *not* say confirms that its factual speculation has nothing to do with any legal issue in this case.  First, the District never argues that fuel cell technology is a "covered product" under EPCA—because it is not. *See* § 6292.  In reality, fuel cell technology is ancillary equipment akin to a generator (as opposed to a consumer appliance) that converts gas to electricity, thereby enabling use of electric appliances.  *See* Dkt. 56-2 at AMF 94.  The District implies that a fuel cell's waste heat could be used in conjunction with gas appliances, *see* Dkt. 53 at 28-29, but even accepting that assertion, those combustion gas appliances would still be barred by the District's rule; both the gas appliance and, by the District's own admission, the fuel cell would still emit some $NO_x$, *see* Dkt. 53 at 28 (asserting only that fuel cells emit "negligible," not zero, $NO_x$).  The District never says that fuel cell technology could enable the use of combustion appliances that meet the District's rule.

Second, the District never argues that fuel cell technology is covered by Rule 1146.2.  It never says that fuel cells are a water heater, boiler, pool heater, or process heater, nor does it say that fuel cell technology could fit within the rule's

---

[6] The Court should also disregard the District's evidence about fuel cells for the reasons stated in Plaintiffs' L.R. 56-2 Statement of Genuine Disputes of Fact at AMF 92-98, and Plaintiffs' Evidentiary Objections at 1-3 & AMF 92-98.

defined scope: equipment "*fired with, or designed to be fired with*, natural gas," Rule 1146.2(b) (emphasis added); *accord* Rule 1146.2(c)(1), (18), (31) (defining "boiler," "process heater," and "water heater" to include only "equipment that is fired with, or is designed to be fired with, natural gas"). To the contrary, the District says that fuel cells "do not combust natural gas." Dkt. 53 at 28. Fuel cell technology thus would not be an application of the rule and is irrelevant to Plaintiffs' facial challenge.

Third, even if fuel cells were "covered products" under EPCA and regulated by Rule 1146.2, the District's admission that fuel cells emit $NO_x$ means that fuel cells would not comply with its rule. Dkt. 53 at 28 (District asserting that fuel cells have "negligible $NO_x$ emissions"); *accord* Dkt. 50-4 at 099 (District's Staff Report stating that fuel cells produce "some $NO_x$").

In short, the District's discussion of fuel cell technology is a red herring. The District nowhere explains how the potential future development of other non-combustive gas technology would allow the use of EPCA-covered appliances "fired with" gas and regulated by the zero-$NO_x$ rule. *See* Dkt. 57 at SUF 3 (admitting that "[n]o gas appliance can operate via combustion without producing some $NO_x$"). Plaintiffs are not asserting that EPCA protects consumers' right to generally burn gas as a fuel source. *See, e.g.*, *Cal. Rest.*, 89 F.4th at 1117 (Baker, J., concurring) (EPCA does not obligate a state to provide gas utility services). Rather, EPCA preempts regulations that effectively "prevent consumers from using covered *products* in their homes, kitchens, and businesses." *Id.* at 1103 (panel opinion) (emphasis added). That is exactly what Rule 1146.2 does. That gas can purportedly be repurposed in a novel way (with or without combustion) is neither here nor there.

In sum, the District's hazy speculation about potential future technology does

not allow it to evade binding precedent holding that states cannot effectively ban EPCA-covered gas appliances that consumers are using in their homes and businesses today. There is no genuine dispute that the zero-$NO_x$ rule effectively bans the use of all the EPCA-covered appliances it regulates. That violates EPCA.

\*   \*   \*

None of Defendants' arguments meaningfully distinguishes the zero-$NO_x$ rule from the gas piping ban the Ninth Circuit held was preempted by EPCA. *Cal. Rest.*, 89 F.4th at 1099. The rule concerns the energy use of covered appliances because its prohibition on $NO_x$ emissions prevents the regulated appliances from using any gas.

## IV.   Plaintiffs Are Entitled to Declaratory and Injunctive Relief.

The District and Intervenors fail to show any obstacle to Plaintiffs' entitlement to declaratory and injunctive relief. Intervenors suggest that a preempted (and therefore unconstitutional) law can be enforced so long as the Court decides, as a matter of policy, that it should be. Dkt. 63 at 30-32. That makes no sense and is contrary to Supreme Court and Ninth Circuit precedent. So it is no surprise that none of Intervenors' cited authority supports their radical approach to injunctions.

"The third and fourth [permanent injunction] factors"—the balance of hardships and public interest—"merge when the [g]overnment is the party opposing the injunction." *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As noted, the District—and by extension the public—has no legitimate interest in enforcing a preempted law. *See* Dkt. 50-1 at 23; *Galvez*, 52 F.4th at 832 (agreeing with the district court that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue"); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (explaining that the

government "cannot suffer harm from an injunction that merely ends an unlawful practice"); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("It is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." (cleaned up)).  To the contrary, the public interest and the balance of the equities favor "prevent[ing] the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  In short, neither the District nor Intervenors have any cognizable interest in the enforcement of a preempted policy; the Court's role here is to enforce the policy choice that Congress already made.

Nor is it necessary, as the District suggests, to "hold further proceedings" to evaluate whether any aspects of the District's rule are severable. *Contra* Dkt. 53 at 31. As discussed, the Court should declare that EPCA preempts the zero-$NO_x$ rule's effect against covered products and enjoin it to that extent, consistent with how the Ninth Circuit's handled Berkeley's ordinance. *See supra* pp. 18-20.  There is no dispute that the District can continue to enforce its rule against non-covered products. *See Cal. Rest.*, 89 F.4th at 1104 (explaining that "Berkeley may enforce its building code on non-covered products, but EPCA displaces its effect on covered products").

## CONCLUSION

For these reasons, Plaintiffs' motion should be granted.

Dated: June 2, 2025

*/s/ John J. Davis, Jr.*

John J. Davis, Jr. (SBN 65594)
jjdavis@msh.law
MCCRACKEN, STEMERMAN
  & HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-7201

*Attorneys for Plaintiff California State Pipe Trades Council*

*/s/ Matthew P. Gelfand*

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-7724

*Attorney for Californians for Homeownership, Inc.*

*/s/ Angelo I. Amador*

Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-2429

*Attorneys for Plaintiff Restaurant Law Center*

Respectfully submitted,

*/s/ Courtland L. Reichman*

Courtland L. Reichman (SBN 268873)
  creichman@reichmanjorgensen.com
Brian C. Baran (SBN 325939)
  bbaran@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

Sarah O. Jorgensen (*pro hac vice*)
  sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (404) 609-1040; Fax: (650) 560-3501

*/s/ Sean M. Kneafsey*

Sean M. Kneafsey (SBN 180863)
  skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: (213) 892-1208

*Attorneys for Plaintiffs Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

25