MATTHEW D. ZINN (CA Bar No. 214587)
Zinn@smwlaw.com
LAUREN M. TARPEY (CA Bar No. 321775)
Ltarpey@smwlaw.com
RYAN K. GALLAGHER (CA Bar No. 344349)
Rgallagher@smwlaw.com
SHUTE, MIHALY & WEINBERGER LLP
396 Hayes Street
San Francisco, California 94102
Telephone:  (415) 552-7272
Facsimile:   (415) 552-5816

Attorneys for Defendant South Coast Air Quality Management District

(additional counsel on following page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RINNAI AMERICA CORP., et al,<br><br>   Plaintiffs,<br><br>   v.<br><br>SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,<br><br>   Defendant.<br><br>and<br><br>PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and INDUSTRIOUS LABS,<br><br>   Defendant-Intervenors. | Case No. 2:24-cv-10482 PA (PDx)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:            July 14, 2025<br>Time:           1:30 p.m.<br>Courtroom:   9A<br><br>The Hon. Percy Anderson<br><br>Trial Date:    September 30, 2025 |

BAYRON T. GILCHRIST (CA Bar No. 212393)
General Counsel
BARBARA BAIRD (CA Bar No. 81507)
Chief Deputy District Counsel
SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
21865 Copley Drive
Diamond Bar, California 91765
Telephone: (909) 396-3400
Facsimile:   (909) 396-2961
bgilchrist@aqmd.gov

Attorneys for Defendant South Coast Air Quality Management District

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 4

INTRODUCTION .................................................................................................. 6

ARGUMENT .......................................................................................................... 7

    I.    Contrary to Plaintiffs' assertion, the Rule does not regulate energy use and therefore falls outside EPCA's preemptive scope as interpreted by *CRA*. ................................................................................................... 7

        A.    Plaintiffs err in arguing that *CRA* held that EPCA preempts any regulation that effectively prevents the use of a gas appliance. But even if it had, the Rule is not such a regulation. ........................... 7

        B.    Despite Plaintiffs' contention that the Rule inevitably affects appliances' energy use, any such effect is merely incidental. .............. 9

        C.    EPCA cannot supplant the District's obligations to attain the federal air quality standards under the Clean Air Act. ....................... 12

    II.    Plaintiffs attempt to rewrite their facial challenge and ignore the Rule's technology-forcing nature. ................................................................ 14

        A.    Because Plaintiffs concede that process heaters are not covered products, their facial challenge fails. .................................................... 14

        B.    Plaintiffs misunderstand both fuel cell technology and the Rule's anticipation of further technological advancements ................ 16

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*American Apparel & Footwear Ass'n v. Baden*,
  107 F.4th 934 (9th Cir. 2024) ..................................................................... passim

*California Restaurant Association v. City of Berkeley*,
  89 F.4th 1094 (9th Cir. 2024) ..................................................................... passim

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*,
  529 F. Supp. 2d 1151 (E.D. Cal. 2007) ........................................................ 11, 13

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ........................................................................................... 16

*Green Mtn. Chrysler Plymouth Dodge Jeep v. Crombie*,
  508 F. Supp. 2d 295 (D. Vt. 2007) ..................................................................... 11

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (9th Cir. 2024) .............................................................................. 17

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th. Cir. 2025) ............................................................................ 14

*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010) ........................................................................................... 14

*Rowe v. New Hampshire Motor Transport Ass'n*,
  552 U.S. 364 (2008) ........................................................................................... 12

*Thornhill Publ'g Co., Inc. v. GTE Corp.*,
  594 F.2d 730 (9th Cir. 1979) ............................................................................. 13

*United States v. Salerno*,
  481 U.S. 739 (1987) ........................................................................................... 16

*United States v. Sup. Ct. of N.M.*,
  839 F.3d 888 (10th Cir. 2016) ........................................................................... 14

**CALIFORNIA CASES**

*Am. Coatings Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
  54 Cal. 4th 446 (2012) ....................................................................................... 16

**FEDERAL STATUTES**

42 U.S.C. § 6291 ........................................................................................... 7, 14

42 U.S.C. § 6297 .................................................................................................. 7, 14

42 U.S.C. § 6311 ....................................................................................................... 14

**CALIFORNIA STATUTES**

Cal. Health & Safety Code § 19881(a) ...................................................................... 8

**FEDERAL REGULATIONS**

10 C.F.R. Part 430 .................................................................................................... 14

10 C.F.R. Part 431 .................................................................................................... 14

**CALIFORNIA REGULATIONS**

Cal. Code Regs, tit. 24, Part 5, 2022 Cal. Plumbing Code §§ 501-508 .................... 11

**OTHER AUTHORITES**

Jonathan L. Ramseur & Jane A. Leggett, Cong. Research Serv., R45625, *Attaching a Price to Greenhouse Gas Emissions with a Carbon Tax or Emissions Fee: Considerations and Potential Impacts* 2-3 (2019) ................................................... 10

Los Angeles Muni. Code § 57.605.10.2 ..................................................................... 8

# INTRODUCTION

EPCA preempts state regulations concerning the quantity of energy that appliances use. The District's Rule 1146.2 concerns something else: the pollution that appliances emit. It does not set requirements for how much natural gas an appliance can consume.

Plaintiffs contend the District's Rule is the "mirror image" of Berkeley's ordinance invalidated in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024) ("*CRA*"). That symmetry is a mirage. Berkeley's ordinance directly regulated appliances' "energy use," or the quantity of gas consumed, setting the allowable amount at zero. By contrast, the Rule targets appliances' nitrogen oxide emissions, as the District has done since the 1970s. Any effect on their use of gas is purely incidental, which the *CRA* court recognized as outside its expressly "narrow" holding.

*CRA* concluded that EPCA would not preempt other regulations with merely incidental impacts on energy use—such as state regulation of utilities' gas distribution or imposition of carbon taxes—on which the statute is silent. EPCA is similarly silent about appliance emission standards, which are analogous to taxes on carbon emissions. Indeed, Congress created a distinct regulatory program with extensive mandates for state and local governments to adopt such pollution regulation to achieve federal air quality standards.

Plaintiffs have failed to explain how or at what point legitimate emission standards are transformed into preempted regulations that "concern[ ] energy use." Any standard may be unachievable by some gas appliances. And contrary to Plaintiffs' claim, *CRA* does not prohibit all regulations that in effect prevent use of gas appliances; it is narrowly focused on regulations of the quantity of energy appliances may use.

Even if this Court found that *CRA*'s "narrow" holding includes appliance emission standards, the Rule is not invalid in all applications. EPCA does not cover process heaters that the Rule regulates. The Ninth Circuit rejected a facial challenge for virtually identical reasons in *American Apparel & Footwear Ass'n v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024). Plaintiffs also cannot explain away gas fuel cell technology that could comply with the Rule, and they ignore that the Rule allows time for technological innovation.

6

The District's emission standard regulates what comes out of appliances, not what goes into them. That distinction preserves the balance Congress struck between federal energy policy and air pollution control. Congress did not mean to establish a right to pollute when it limited state regulation of appliances' energy use.

## ARGUMENT

**I.   Contrary to Plaintiffs' assertion, the Rule does not regulate energy use and therefore falls outside EPCA's preemptive scope as interpreted by *CRA*.**

**A.   Plaintiffs err in arguing that *CRA* held that EPCA preempts any regulation that effectively prevents the use of a gas appliance. But even if it had, the Rule is not such a regulation.**

Plaintiffs assert that the Rule is the "mirror image" of Berkeley's preempted ordinance. Dkt. 66 (Reply Mem. In Supp. of Mot. Summ. J. ("Reply")) 7; *see also id.* 11.[1] That argument assumes both that *CRA* held that any regulation effectively prohibiting the use of gas appliances is preempted, and that this Rule is such a regulation. Neither is true.

Despite the Ninth Circuit's repeated emphasis on the narrow scope of its opinion (*see* Dkt. 58-1 (Mem. P. & A. In Supp. of Def.'s Cross-Mot. Summ. J. ("X-Mot.")) 19), Plaintiffs contend that *CRA* held that EPCA preempts *any* regulation that has the effect of prohibiting the use of covered gas appliances. Reply 9, 10. Not so. The Ninth Circuit invoked the "plain meaning" of EPCA's preemption provision and held it preempts regulations "concerning the . . . energy use" of covered products, where "energy use" is the "quantity of natural gas directly consumed by" an appliance at the point of use. *CRA*, 89 F.4th at 1101 (quoting 42 U.S.C. §§ 6297(f), 6291(4)). Because Berkeley's ordinance prohibiting gas piping "necessarily regulate[d] the 'quantity of energy'" consumed by gas appliances, it was preempted as concerning energy use. *Id.* at 1101-02.

Indeed, the decision does not turn on the fact that Berkeley prevented *all* gas use, but rather that it was *regulating* appliances' energy use. If instead of prohibiting gas pipes,

---

[1] The District is responding to Plaintiffs' reply in support of their motion because their opposition to the District's cross-motion only incorporated by reference the arguments in their opening and reply briefs. *See* Dkt. 71 at 1 (citing Dkts. 50, 50-1, 66).

Berkeley had required installing a device at the gas connection that restricted the flow of gas into the building and thereby reduced gas consumed by an appliance, the result could hardly be different. That would not prohibit the use of gas appliances, but would still "necessarily regulate[] the 'quantity of energy directly consumed.'" *Id.* The court thus rejected Berkeley's argument that a required quantity of zero was different from any other quantity. *Id.* The Rule here, by contrast, does not regulate the quantity of energy consumed.[2]

To support their overbroad reading of *CRA*, Plaintiffs pull quotes from the opinion out of context. For example, they cite the statement that "EPCA is concerned with the end-user's ability to *use* installed covered products." Reply 9 (quoting 89 F.4th at 1102). But the court's emphasis on the "use" of appliances was relevant only to its statement that EPCA preempts regulations concerning a product's energy use "at point of use," rather than only as manufactured. 89 F.4th at 1103. Similarly, Plaintiffs quote the court's conclusion that "a regulation on 'energy use' fairly encompasses an ordinance that *effectively* eliminates the 'use' of an energy source." Reply 9. Plaintiffs misplace the italics. The court was not focused on the effect of the regulation. It was merely restating its conclusion that Berkeley's ordinance was not exempt from preemption just because it required a quantity of zero natural gas. 89 F.4th at 1102.

*CRA* does not hold that EPCA would preempt a prohibition of gas appliances that does *not* concern the quantity of natural gas an appliance uses. For example, many health and safety regulations effectively prohibit the use of EPCA-covered gas appliances in certain building types. *See, e.g.*, Cal. Health & Safety Code § 19881(a) (prohibiting "unvented heaters" for use in "any dwelling house or unit"); Los Angeles Muni. Code § 57.605.10.2 (prohibiting certain heating and lighting products in industrial buildings containing flammable materials). EPCA does not preempt these effective prohibitions because they do not regulate the quantity of energy appliances may use. *See* 89 F.4th at 1102; *see also* X-Mot.

---

[2] Plaintiffs remarkably assert that Berkeley's ordinance did not "directly address energy use at all." Reply 10. To the contrary, because the ordinance directly targeted the energy that appliances could use, the court held that it fell within EPCA's preemptive scope. The Rule does not.

21-22.

Finally, Plaintiffs' proposed rule that EPCA preempts any regulation effectively prohibiting gas appliances is unworkable. *See* Reply 17. Plaintiffs assert that a zero-NOx emissions standard is significant only because it effectively prohibits gas appliances. *Id.* But, in fact, most non-zero emission standards will prevent the use of *some* gas appliances. For example, older gas appliances are unlikely to meet the District's current 14 ng/J NOx emissions standard. Plaintiffs do not grapple with the practical questions their proposed rule raises. For instance, is an emissions standard preempted only if it effectively bans *all* gas appliances or if it effectively bans just *some* gas appliances? At how many nanograms per Joule of NOx does a legitimate regulation of emissions become a regulation "concerning . . . energy use"? Although Plaintiffs claim the Court need not consider non-zero emission standards, their inability to provide a coherent limiting principle means that non-zero emission standards would be imperiled by a judgment for Plaintiffs. *Id.* 17-19. Their inability to articulate a limiting principle is further reason to reject their reading of the statute.

Even if EPCA preempted regulations that effectively prevent use of gas appliances, the Rule is not such a regulation. The Rule is fuel-agnostic: it does not prohibit the use of gas appliances that meet the emission standard. Although Plaintiffs assert that the Rule has the "inevitable effect" of "categorically prohibit[ing] gas appliances' energy use," Reply 14-15, 16, the District has shown that that is not the case. As described in Section II.B, *infra*, a fuel cell uses gas but provides emissions-free heat. Dkt. 60 (Def.'s Additional Material Facts ("AMF")) at AMF 94, 97. Indeed, the District contemplated that gas fuel cell appliances could comply with the Rule. *See* AMF 93. By contrast, Berkeley's ordinance made it physically impossible to use gas appliances—even if they did achieve a zero-emission standard—by removing the fuel source. Plaintiffs ignore this key distinction from *CRA*.

**B.   Despite Plaintiffs' contention that the Rule inevitably affects appliances' energy use, any such effect is merely incidental.**

Because the Rule regulates appliance emissions, it has only an incidental impact on

appliance energy use. EPCA does not preempt such regulations. *CRA*, 89 F.4th at 1117 (Baker, J. concurring).

Plaintiffs sidestep the Rule's similarities to two regulations that *CRA* identified as having incidental impacts on energy use: carbon taxes and utility distribution regulations. Reply 14-15. Plaintiffs concede that the *CRA* court found that "state and local taxes" have only an incidental effect on energy use. *Id.* But they strategically shorten the quote to obscure that Judge Baker was discussing "carbon taxes designed to discourage . . . consumption [of natural gas]." 89 F.4th at 1117 (Baker, J., concurring). A carbon tax imposes a charge on carbon emissions. Jonathan L. Ramseur & Jane A. Leggett, Cong. Research Serv., R45625, *Attaching a Price to Greenhouse Gas Emissions with a Carbon Tax or Emissions Fee: Considerations and Potential Impacts* 2-3 (2019).[3] Whether such a tax is imposed at the point of fuel production or on fuel end users, it makes fuel more expensive, and it makes more carbon-intensive fuels more expensive than others. *Id.* Carbon taxes thus inevitably reduce the quantity of natural gas consumed. Nevertheless, because the impact on energy use would be only incidental, the tax would not be preempted. 89 F.4th at 1117 (Baker, J., concurring).

The *CRA* court also explained that a state or local government decision not to extend gas utility service would preclude the use of gas appliances, and yet such a decision would have only an "incidental" effect on appliance energy use. *Id.* at 1103, 1117 (Baker, J., concurring). Likewise here, even if Plaintiffs were right that the Rule effectively prohibits the use of gas appliances, *cf.* Section II.B. *infra*, its operation on emissions rather than the quantity of gas that appliances use means that its impact on energy use is just as incidental as the impact of a decision not to extend gas distribution.

In an analogous context, courts have repeatedly held that EPCA does not preempt states' direct regulation of pollutant emissions, even if those standards had a "substantial" incidental impact on the energy use of covered products. *Cent. Valley Chrysler-Jeep, Inc.*

---

[3] Available at https://www.congress.gov/crs-product/R45625.

*v. Goldstene*, 529 F. Supp. 2d 1151, 1175 (E.D. Cal. 2007); *see also Green Mtn. Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 352 (D. Vt. 2007) (recognizing manufacturers would "have to increase fuel economy to some degree in order to comply" with the emissions rule); X-Mot. 25-26. The same construction of EPCA preemption applies here: regulation of appliance emissions is not preempted if the regulation has the purpose of protecting health and welfare "under the Clean Air Act," even if it may "incidental[ly]" affect the appliances' energy use. *See Cent. Valley*, 529 F. Supp. 2d at 1176; *see also Green Mtn.*, 508 F. Supp. 2d at 353-54; X-Mot. 25-26.

Plaintiffs attempt to dismiss *Central Valley* and *Green Mountain* on the basis that EPCA's preemption provisions for vehicle standards operate differently.[4] *See* Reply 15-16. But that distinction did not dictate the outcome in those cases, nor does it support ignoring them here. EPCA's provision preempting vehicle energy efficiency standards is virtually identical to those for appliances. *See* X-Mot. 23 n.7, 25-26. Moreover, the courts' rationale is equally relevant in the appliance context. Namely, Congress also enacted EPCA "against the backdrop of other regulations," similar to the Rule, that limit emissions from appliances. *Green Mtn.*, 508 F. Supp. 2d at 354; *see also Cent. Valley*, 529 F. Supp. 2d at 1174-75 (acknowledging California has regulated pollution since before Congress enacted EPCA); X-Mot. 26, 27. As in those cases, EPCA should not be read to jeopardize longstanding pollution control practices. X-Mot. 26, 27.

Plaintiffs contend that the Rule has a more than incidental effect on energy use because it "targets appliances" and is therefore "inextricably link[ed]" to gas appliances' energy use. Reply 15. But this reasoning conflates regulation of appliances generally with regulation of their energy use. Many health and safety rules regulate appliances without regulating their energy use. *See, e.g.*, Cal. Code Regs, tit. 24, Part 5, 2022 Cal. Plumbing Code §§ 501-508 (setting out safety requirements for water heaters, including pressure-

---

[4] The *CRA* court did not expressly or implicitly disagree with the reasoning in the two cases, and Plaintiffs have not even attempted to explain how the decisions conflict. Reply 15.

and temperature-limiting devices). By Plaintiffs' reasoning, since these regulations "target[] appliances," they are linked to appliance energy use and must be preempted. Reply 15. The Ninth Circuit's "narrow" holding in *CRA* does not support expanding EPCA's preemption provision to such regulations, which have, at most, an incidental impact on appliance energy use. *See* 89 F.4th at 1103 ("[T]he breadth of EPCA's preemption provision 'does not mean the sky is the limit.'").

Ignoring the limitations of the *CRA* court's holding, Plaintiffs assert that their broad reading of EPCA's preemption provision is consistent with courts' interpretation of the term "concerning" or "related to" in preemption provisions. Reply 17-18. But Plaintiffs' reliance on *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008), is misplaced. There, a state rule forbade tobacco retailers from using a delivery service unless the service followed certain procedures. *Id.* at 371. The rule was preempted by a federal statute prohibiting state laws "related to" a motor carrier "price, route, or service." *Id.* at 367-68. The state rule mandated particular motor-carrier services, but indirectly—by requiring their customers to demand them. *Id.* The Rule, by contrast, targets a byproduct of energy use and thus has only an *incidental* connection with it.

Finally, Plaintiffs' broad reading of *CRA* also ignores that the Ninth Circuit limited the scope of its holding to building codes. Plaintiffs assert that the Ninth Circuit emphasized EPCA's exception for some building code provisions (*see* X-Mot. 22-23) because Berkeley had claimed that EPCA only preempted regulation of appliance design. Reply 13-14. On the contrary, the court emphasized that EPCA's silence on topics like regulation of utilities' natural gas distribution—which only incidentally impact energy use—unlike its express treatment of building codes, suggested that preemption did not extend to the unstated regulatory fields. 89 F.4th at 1117-18 (Baker, J., concurring). The same is true of its silence on emissions standards.

### C. EPCA cannot supplant the District's obligations to attain the federal air quality standards under the Clean Air Act.

Plaintiffs finally address the Clean Air Act ("CAA") in their reply, but they

12

DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:24-cv-10482 PA (PDx)

downplay its significance, alleging it did not force the District to adopt the challenged Rule and observing that the Rule has not been adopted in the State Implementation Plan ("SIP"). Reply 20-24. These responses misconstrue the facts and the law. As a result, the Court should decline to read EPCA to preempt air pollution regulations, whether or not the Rule has been incorporated into the SIP. In any event, the CAA context distinguishes this case from *CRA*.

Initially, Plaintiffs are simply wrong that the District had "no mandate" to adopt the Rule. *Id.* 21. It is undisputed that the CAA and state law give the District primary responsibility for regulating emissions from stationary sources, such as appliances; that the Basin remains in extreme nonattainment of the federal air quality standards; that the District must wield its authority to achieve the federal standards; and that the region could suffer severe sanctions if it fails to do so. X-Mot. 11-13, 24-25 (citing AMFs 42, 44, 49). The District must thus eliminate NOx emissions from "all stationary sources of pollutants, large and small." *Id.* at 24 (citing AMF 46). Plaintiffs disagree, Reply 21, but their allegations—entirely unsupported by legal or factual authority—do not make for a genuine dispute. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Given the strict obligations that the CAA imposes on the District to attain the federal standards, the Court should read EPCA's preemption provision to preserve states' ability to regulate appliance emissions. *See* X-Mot. 24-27. The Court need not conduct a "harmonization" analysis. *Cf.* Reply 22-23. Rather, like other courts that have confronted the interplay between the CAA, EPCA, and states' air pollution control authority, the Court need only decide that Congress did not intend to preempt air pollution regulations that only incidentally affect product's energy use.[5] *See, e.g.*, *Cent. Valley*, 529 F. Supp. 2d at 1174-76.

---

[5] That the Rule has not yet been approved for inclusion in the SIP (Reply 22) is irrelevant to this analysis, as is Plaintiffs' speculation about why BAAQMD and the state agreed to withdraw BAAQMD's zero-NOx rule from consideration for inclusion in the SIP. *See id.* & n.5.

## II. Plaintiffs attempt to rewrite their facial challenge and ignore the Rule's technology-forcing nature.

Even if the Court accepts Plaintiffs' interpretation of *CRA*, their facial challenge fails because they cannot show the Rule is "invalid in all [its] applications." *Am. Apparel*, 107 F.4th at 939; X-Mot. 30-31. The Rule applies to appliances that are not EPCA "covered products," and it does not preclude the use of all gas appliances.

### A. Because Plaintiffs concede that process heaters are not covered products, their facial challenge fails.

EPCA only preempts regulations of "covered products" for which there is a federal energy efficiency standard. 42 U.S.C. § 6297(c). Process heaters are not federally regulated. *See id.* §§ 6291, 6311; 10 C.F.R. Parts 430, 431. As a result, EPCA cannot preempt the Rule insofar as it addresses them. X-Mot. 30.

In their motion, Plaintiffs mistakenly asserted that process heaters are a type of pool heater and therefore are covered products. Dkt. 50-1 ("Mot.") 19. Now realizing they cannot invalidate the entire Rule, Plaintiffs try to narrow their claim. They ask the Court to review their claim and the relief they seek to determine the extent of their facial challenge, and to apply the facial standard only "to the extent of [the] reach" of their claim. Reply 24 (quoting *John Doe No. 1. v. Reed*, 561 U.S. 186, 194 (2010)). Courts typically engage in this analysis when the parties disagree about whether the claim is facial or as-applied, because it has "characteristics of both." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 914 (10th Cir. 2016) ("*N.M.*"); *see also Reed*, 561 U.S. at 194.

Here, however, Plaintiffs' claim is unambiguously facial, and its "reach" is the entire Rule. *See Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th. Cir. 2025) (finding "little doubt that [the] complaint includes a facial challenge"). The complaint categorically "challenge[d] the facial validity of the District's zero-NOx rule" and sought "a declaration that the District's zero-NOx rule is preempted by EPCA." Dkt. 12 ¶¶ 38, 7; *see also id.* ¶¶ 75, 84, 91. Plaintiffs claimed there is "no set of circumstances under which the rule can be valid." *Id.* ¶ 38. In their motion they asserted that "the District's zero-NOx rule, Rule 1146.2, is preempted by EPCA" and asked the Court to enjoin the whole Rule. Mot. 32;

*see also id.* at 10, 30.

Nevertheless, on reply, Plaintiffs reframe their challenge as limited to the Rule's application to covered products, citing the complaint's request for a judgment declaring the Rule preempted "because it concerns the energy use of appliances covered by" EPCA. Reply 25 (quoting Dkt. 1 ¶¶ 89-90). But this is the reason Plaintiffs believe the Rule to be preempted, not the scope of their challenge. Regardless, one sentence cannot undo Plaintiffs' multiple requests to invalidate the entirety of the Rule.

Plaintiffs also contend that states could avoid facial EPCA preemption challenges by "tacking on" regulations of non-covered appliances. Reply 24-25. In *American Apparel* the Ninth Circuit court interpreted similar preemption language that was triggered only when a federal standard was in place. 107 F.4th at 939. The court rejected a facial preemption challenge to Oregon's law because the state had regulated chemicals for which there were no federal standards in place. *Id.* at 940-41. The court did not construe the challenge as limited to the federally regulated substances. *Cf.* Reply 25.

Plaintiffs argue the *American Apparel* appellants "were unable to show that all the applications contemplated by their claim were preempted." *Id.* at 25. So too Plaintiffs here: they concede that process heaters are not covered products under EPCA, dooming their facial challenge.[6] *See id.* at 26. *American Apparel* also refused to view the claim as limited only to those substances for which there was a federal standard. 107 F.4th at 943 n.3. The court explained such a challenge would require a different record, including discovery into appellants' standing to challenge regulations claimed to be preempted. *Id.* Likewise, Plaintiffs chose to challenge the entire Rule, and they must live with that choice.

Finally, Plaintiffs ask the Court to "cabin the scope" of the requested remedy to covered products, Reply 26, but neither case they cite supports that assertion. Neither party in *CRA* raised the plaintiffs' failure to satisfy the facial standard. And, contrary to Plaintiffs'

---

[6] Plaintiffs speculate that some process heaters could qualify as water heaters or boilers and "maybe" covered under EPCA. Reply 26. But the Rule defines "process heaters" separately from "water heaters" and "boilers," showing the categories are distinct. Rule 1146.2(c); X-Mot. 15, n.4.

assertion, the Court in *Citizens United v. FEC* did not face an "objection to [the] scope of [a] facial challenge," Reply 26; instead it simply observed that the *distinction* between facial and as applied challenges was relevant for determining the breadth of the Court's remedy. 558 U.S. 310, 331 (2010). Nothing in *Citizens United* suggests a court may cabin the relief for a fundamentally flawed facial challenge. *Id.*

### B. Plaintiffs misunderstand both fuel cell technology and the Rule's anticipation of further technological advancements.

Plaintiffs also try to salvage their facial claim by arguing that natural gas fuel cell technology cannot comply with the Rule. Reply 27. But they misunderstand fuel cell technology's potential to satisfy the Rule and ignore the Rule's rolling compliance deadlines. Because Plaintiffs have not shown that gas fuel cell technology cannot be further developed in time for the Rule's rolling compliance deadlines, they have failed to show that there is "no set of circumstances" under which the Rule would allow the use of gas covered products. *Am. Apparel*, 107 F.4th at 938 (Plaintiffs must show that "'no set of circumstances exists under which the Act would be valid.'") (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Plaintiffs misconstrue the fuel cell technology that the District has described as potentially satisfying the Rule. Reply 27; *see* X-Mot. 28. The District has not contemplated that a gas appliance generating NOx emissions would comply with the Rule simply because it works in conjunction with a fuel cell, or that the fuel cell itself would qualify as a zero-NOx unit despite its negligible emissions. *Cf.* Reply 27-28. Rather, in a combined heat and power system ("CHP"), the fuel cell converts gas to electricity without burning it. AMF 94. That process generates waste heat, which can be transferred to water to satisfy the same heating purposes achieved by the appliances regulated by the Rule. *See* AMF 96. Although the process of converting gas generates negligible NOx emissions, the waste heat would be considered zero-NOx. *See* AMF 94, 97. The District has previously considered analogous waste heat as satisfying a zero-emission standard. AMF 94, 97.

Plaintiffs also ignore that the Rule, like many emission standards, is technology-

forcing. *See* Reply 27. Plaintiffs' reply fails to even mention the Rule's rolling compliance deadlines, which are designed to allow for the development of compliant technology. *See Am. Coatings Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 54 Cal. 4th 446, 467 (2012) (where standards require compliance "over a period of time . . . it is reasonable for a standard-setting district to predict and require ongoing innovation in pollution control technology"). The District has shown that gas technology can likely satisfy the Rule in time for its future compliance deadlines, which is enough to show that the Rule does not preclude the use of covered gas appliances in every application. X-Mot. 28-29; *see also Am. Apparel*, 107 F.4th at 938, 942-43.

Plaintiffs contend that the District speculates about future technology. Reply 27. But it is Plaintiffs' burden to show that no gas appliance will be able to comply with the Rule by its rolling deadlines. *See Am. Apparel*, 107 F.4th at 938. Nevertheless, Plaintiffs do not provide any evidence to support their contention that fuel cells cannot be further developed to satisfy the Rule. Reply 26-28. Their inability to meet their burden illustrates exactly why courts make facial challenges so "hard to win"—because they "'often rest on speculation' about the law's coverage and its future enforcement." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (9th Cir. 2024). Here, it is Plaintiffs who speculate, despite evidence to the contrary, that *no* gas appliance will be developed that can comply with the Rule. Plaintiffs have failed to meet their burden of showing no covered gas appliance can comply with the Rule.

## CONCLUSION

The District requests that the Court enter judgment in its favor.

DATED: June 16, 2025              SHUTE, MIHALY & WEINBERGER LLP

                                  By:     /s/Matthew D. Zinn
                                       MATTHEW D. ZINN
                                       LAUREN M. TARPEY
                                       RYAN K. GALLAGHER

                                       Attorneys for Defendant South Coast Air
                                       Quality Management District