UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Kamilla Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS — COURT ORDER

    Before the Court is a Motion for Summary Judgment filed by plaintiffs Rinnai America Corp., Noritz America Corporation, National Association of Home Builders, California State Pipe Trades Council, California Manufacturers & Technology Association, California Restaurant Association, Restaurant Law Center, Californians for Homeownership, Inc., California Hotel & Lodging Association, and California Apartment Association ("Plaintiffs") (Docket No. 50) and a Cross-Motion for Summary Judgment filed by defendant South Coast Air Quality Management District ("SCAQMD" or "District" or "Defendant"). (Docket No. 58.) The parties seek summary judgment on the same issue: whether the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201-6422, preempts the SCAQMD's rule regulating nitrogen oxide emissions for certain categories of natural gas appliances. Both motions are fully briefed. (Docket Nos. 50, 53-61, 63, 66, 67-75.) In addition, intervening defendants, People's Collective for Environmental Justice, Sierra Club, and Industrious Labs ("Intervening Defendants") have filed an Opposition to Plaintiff's Motion and a Joinder in Defendant's Cross-Motion for Summary Judgment and Reply. (Docket Nos. 62, 63, 76.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument and vacates the hearing on the matter.

**I.     Factual and Procedural Background**

    In this action, Plaintiffs, manufacturers of gas appliances, affordable housing groups, labor union associations, and associations of manufacturers, builders, commercial and residential building owners, hotel owners and operators, and restaurant chefs and owners, seek declaratory and injunctive relief against enforcement of SCAQMD's Rule 1146.2 ("Rule") imposing a zero-nitrogen oxide emission standard on certain categories of natural gas appliances.[1] (First Amended Complaint ("FAC") ¶ 1.) Plaintiffs allege that implementation of this Rule will

---

[1]     The Rule specifically applies to large water heaters and small boilers and process heaters fired with, or designed to be fired with, natural gas. Rule 1146.2(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

effectively prohibit the manufacture, sale, purchase, and installation of natural gas appliances after certain dates, and that this "de facto ban" on certain gas appliances should be invalidated under the EPCA's preemption clause. (Id.)

On December 17, 2024, Plaintiffs filed a First Amended Complaint and Defendant filed its Answer on January 24, 2025. (Docket Nos. 12, 23.) On February 26, 2025, the Court granted the Intervening Defendants' Motion to Intervene. (Docket No. 35.) The Intervening Defendants filed an Answer to the First Amended Complaint on March 4, 2025. (Docket No. 43.)

   A.   **SCAQMD and Rule 1146.2**

The SCAQMD is the air pollution control agency for all of Orange County and the urban portions of Los Angeles, Riverside and San Bernardino counties. South Coast Air Quality Mgmt. Dist., About SCAQMD, S. COAST AQMD (last visited July 8, 2025), https://www.aqmd.gov/aq-spec/aboutscaqmd. The California state legislature created the SCAQMD in 1976 in order to address "the most critical air pollution problem in the nation" that is "detrimental to the public peace, health, safety and welfare of the people of the state." Cal. Stat. ch. 324, § 5, at 893.

The District has worked for many years to reduce emissions of air pollutants in the South Coast Air Basin ("Basin") in order to bring the Basin into compliance with federal air pollution standards.[2] (Defendants' Consolidated Additional Material Facts and Statement of Uncontroverted Facts, Docket No. 60, ("AMF") 42-44.) Despite its efforts, the Basin continues to suffer from poor air quality and has failed to meet federal standards. (AMF 41, 42.) In order to achieve its goals, the District has regulated appliance emissions of nitrous oxides ("NOx") – a leading cause of pollutants and smog in the Basin – since its inception. (AMF 48-52.)[3]

---

[2]   The amendments to the Clean Air Act ("CAA") were passed in 1970 as "a drastic remedy to what was perceived as a serious and otherwise uncheckable problem of air pollution." Union Electric Co. v. Environmental Protection Agency, 427 U.S. 246, 256 (1976). "The Amendments place the primary responsibility for formulating pollution control strategies on the States, but nonetheless subject the States to strict minimum compliance requirements." Id. at 256-57. The CAA thus relies on states to reduce pollutant emissions in order to meet national air quality standards. See also 42 U.S.C. § 7410.

[3]   NOx are toxic and highly reactive gases that threaten the environment and also pose significant safety risks to human health. (AMF 41.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

To further reduce emissions of NOx, the District developed an Air Quality Management Plan ("Plan").[4/] (AMF 45.) The Plan called for reductions of NOx emissions from appliances by requiring zero-emission commercial water heaters. (AMF 63.) In order to implement the Plan, the District amended an existing rule to expand the scope of equipment subject to NOx limits and also to reduce the emission limits to zero. (AMF 58-62.) The final rule, Rule 1146.2 was amended following public hearing on June 7, 2024. (AMF 65.) As amended, the Rule prohibits the manufacture, sale, supply, offer for sale, or installation for use in the District, of large water heaters and small boilers and process heaters that emit more than zero NOx based on a schedule of staggered compliance dates. (Rule 1146.2(b), (d)(2); AMF 70.) The Rule's zero-NOx standard is designed to bring the Basin into compliance with the federal ozone air quality standard. (AMF 84; Docket No. 50-2, Ex. 2.)

**B.    The Energy Policy and Conservation Act**

The EPCA regulates the energy efficiency of consumer products including air conditioners, water heaters, furnaces, washers and dryers, and stoves. See 42 U.S.C. §§ 6292, 6295. It authorizes the Department of Energy ("DOE") to promulgate energy conservation standards for certain appliances or "covered products." 42 U.S.C. § 6295(a). The EPCA expressly preempts state and local regulations "concerning energy efficiency" and "energy use" of the products for which the EPCA sets its own energy efficiency standards:

> . . .[O]n the effective date of an energy conservation standard established in or prescribed under section 6295 of this title for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product . . . .

42 U.S.C. § 6297(c).[5/] The term "covered product" includes certain consumer and commercial appliances, including the heaters and boilers subject to Rule 1146.2. 42 U.S.C. §§ 6291(2),

---

[4/]    The District's Plan and its subsequent revisions serve as the federally required state implementation plan to meet applicable federal and state air quality standards. (Intervening Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at p. 14.)

[5/]    The EPCA also preempts state and local regulations concerning the energy efficiency or energy use of certain larger sized commercial or industrial appliances. See 42 U.S.C. §§ 6316(b)(2)(A); 6311, 6313, and 6291(3). Because the two preemption provisions operate in the same manner, and for ease of reference, the Court's ruling refers only to the EPCA sections pertaining to consumer appliances.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

6292. There are limited exceptions to preemption under the EPCA, including building code regulations for new construction that meet certain requirements. 42 U.S.C. §§ 6297(c)(3), (f)(3).

## II.   Legal Standard

### A.   Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move "for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Id. (emphasis added). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See id. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510, 91 L. Ed.2d 202. A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252, 106 S. Ct. at 2514, 91 L. Ed. 2d 202).

### B.   Preemption

The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any state to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. "Under this principle, Congress has the power to preempt state law. . . .There is no doubt that Congress may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

withdraw specified powers from the States by enacting a statute containing an express preemption provision." Arizona v. United States, 567 U.S. 387, 399 (2012). Prior to 2016, in express preemption cases, the Supreme Court made clear that preemption was a matter of statutory interpretation, and that courts must ascertain Congress' purpose in determining whether a state statute should give way to a federal one. Medtronic, Inc. v. Lohr, 518 U.S. 470, 484 (1996); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517 (1992). Moreover, if the statute contained an express preemption clause, "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). The Supreme Court also applied another canon of statutory construction known as a "presumption against preemption," which instructs that federal law should not be read to supersede states' historic police powers "unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). However, in Commonwealth of Puerto Rico v. Franklin Cal. Tax-Free Tr., the Supreme Court, in considering whether an express preemption provision barred Puerto Rico from enacting its own municipal bankruptcy scheme, stated that because the federal Bankruptcy Code "contains an express pre-emption clause, we do not invoke any presumption against preemption." 579 U.S.115, 125 (2016) (cleaned up).

Following the Supreme Court's decision in Franklin Cal. Tax-Free Tr., the Ninth Circuit has consistently held that in cases involving an express preemption clause, there is no presumption against preemption. See Hollins v. Walmart, Inc., 67 F.4th 1011, 1016 (9th Cir. 2023) ("'[W]e do not invoke any presumption against pre-emption' where, as here, 'the statute contains an express pre-emption clause.'" (quoting Franklin Cal. Tax-Free Tr.)); Nat'l R.R. Passenger Corp. v. Su, 41 F.4th 1147, 1153 n.1 (9th Cir. 2022) ("because the statute contains an express pre-emption clause, we do not invoke any presumption against pre-emption" (quoting Franklin Cal. Tax-Free Tr.)); R.J. Reynolds Tobacco Co. v. County of Los Angeles, 29 F.4th 542, 553 n.6 (9th Cir. 2022) (quoted in CRA); Webb v. Trader Joe's Co., 999 F.3d 1196, 1201 (9th Cir. 2021) ("Where the intent of a statutory provision that speaks expressly to the question of preemption is at issue, we do not invoke any presumption against pre-emption." (citation and quotation marks omitted)); Connell v. Lima Corp., 988 F.3d 1089, 1097 (9th Cir. 2021) (quoting Franklin Cal. Tax-Free Tr.); In re Bard IVC Filters Prods. Liab. Litig., 969 F.3d 1067, 1073 (9th Cir. 2020) ("When a federal law contains an express preemption clause, we focus on the plain wording of the clause." (citation and quotation marks omitted)); Atay v. County of Maui, 842 F.3d 688, 699 (9th Cir. 2016) (quoted in Webb).

### III.  Analysis

Both Motions for Summary Judgment raise the same issue: whether the SCAQMD's zero NOx emissions standard for certain appliances fueled by natural gas – Rule 1146.2 – is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

preempted by the EPCA.[6/]  The Court agrees with Plaintiffs that the Rule, by prohibiting NOx emissions, effectively bans the use of covered gas fueled boilers and water heaters.  Plaintiffs argue that this conclusion should end the Court's inquiry because under the Ninth Circuit's holding in Cal. Rest. Ass'n v. City of Berkeley, 89 F.4th 1094 (9th Cir. 2024) ("CRA"), the EPCA's preemption clause necessarily applies.  However, SCAQMD argues that unlike the building code provision at issue in CRA, the Rule concerns the pollution appliances emit, and not how much energy an appliance uses, and is therefore outside the scope of the CRA holding.  For the reasons discussed below, the Court agrees with SCAQMD and concludes that the EPCA's preemption clause does not apply to Rule 1146.2.

### A. EPCA Preemption Clause

Congress initially enacted EPCA in 1975 to "reduce the United States' domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n, 410 F.3d 492, 498-99 (9th Cir. 2005).  At that time, the EPCA required manufacturers to label appliances with measures of energy efficiency and use in order to help consumers make informed purchasing decisions.  Id. at 499.  "A few years later, Congress took the EPCA a step further, establishing a nationwide conservation program for consumer appliances." CRA, 89 F.4th at 1120 (Friedland, J., dissenting from denial of rehearing en banc).  The new act required the DOE to prescribe minimum energy efficiency standards for thirteen covered products.  Air Conditioning & Refrigeration Inst., 410 F.3d at 499.

The DOE largely failed to prescribe such standards and permitted states to establish their own standards resulting in a "growing patchwork of differing State regulations" that complicated the "design, production, and marketing of appliances."  S. Rep No. 100-6, at 4 (1987).  Thus, in 1987 Congress, in cooperation with manufacturer trade associations and the National Resources

---

[6/]  The parties raise a number of evidentiary objections to each other's Statements of Uncontroverted Facts.  (See Docket Nos. 59, 73, 74.)  Plaintiffs also object to Defendant's Request for Judicial Notice of certain state and local rules concerning appliance NOx emissions (Docket No. 61, Exhs. A-P) and of an Opposition to a Motion to Dismiss filed by Plaintiff in Cal. Rest. Ass'n v. City of Berkeley, Case No. CV 19-7668 YGR (N.D. Cal. 2021) (Ex. Q).  (Docket No. 70.)  However, none of the evidence presented in the Request for Judicial Notice or the parties' uncontroverted facts is material to the legal issue before the Court.  Accordingly, because the Court has not relied on any evidence to which an evidentiary objection is asserted, the Court denies the Request for Judicial Notice and overrules all of the parties' objections as moot.  See Am. Guard Servs., Inc. v. First Mercury Ins. Co., No. CV 15-9259 PA (PJWx), 2017 WL 6039975, at n. 5 (C.D. Cal. Apr. 14, 2017), aff'd, 741 F. App'x 407 (9th Cir. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

Defense Council, adopted a uniform set of national federal energy efficiency standards designed to ease the burden on manufacturers while promoting energy conservation. Id.; CRA, 89 F.4th at 1120 (Friedland, J.). As amended, the EPCA now requires that covered products meet prescribed energy conservation standards, and that prior to distribution, a manufacturer perform certain test procedures, certify that the product meets the applicable standard, and label the product with information regarding its energy efficiency and energy use. Association of Contracting Plumbers of City of New York, Inc. v. City of New York, 23-CV-11292 (RA), 2025 WL 843619, at *4 (S.D.N.Y. March 18, 2025) (appeal pending, Second Circuit Case No. 25-977).

At that same time, Congress amended the EPCA's preemption clause to "counteract the systems of separate state appliance standards." Air Conditioning & Refrigeration Inst., 410 F.3d at 499-500. The EPCA preemption provision turns on whether a state law or local ordinance directly or indirectly regulates the "energy efficiency" or "energy use" of a covered product. 42 U.S.C. § 6297(c); CRA, 89 F.4th at 1102. The EPCA defines the term energy efficiency as "the ratio of the useful output of services from a consumer product to the energy use of such product" and the term energy use as "the quantity of energy directly consumed by a consumer product at point of use." 42 U.S.C. §§ 6291(4)-(5).

With respect to the application of EPCA's express preemption clause, the CRA court reaffirmed that after Franklin, district courts should look to the "text, structure and context" of the ECPA because "the plain wording of the clause . . . necessarily contains the best evidence of Congress' pre-emptive intent." CRA, 89 F.4th at 1101 (quoting Franklin Cal. Tax-Free Tr.) Referring specifically the EPCA, the CRA court also stated that "we apply this textual analysis 'without any presumption thumb on the scale' for or against preemption." 89 F.4th at 1101 (quoting R.J. Reynolds Tobacco Co.). Focusing on the plain wording of the presumption clause, the relevant inquiry is thus whether the Rule at issue in this case concerns energy use within the meaning of the EPCA.

**B.    EPCA Preemption Under California Restaurant Association v. City of Berkeley**

In CRA, the Ninth Circuit analyzed the "text, structure and context" of the EPCA preemption clause to determine whether it applied to a City of Berkeley building code ordinance that prohibited the installation of natural gas piping within newly constructed buildings. The CRA court interpreted "point of use" to mean a place where something is used, and based on that interpretation found that the "EPCA is concerned with the end-user's ability to use installed covered products at their intended final destinations." 89 F. 4th at 1101-02. The CRA court concluded that because the building code required appliances to use a quantity of "zero" natural gas, it was preempted. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

In so holding, the CRA court noted that although the "EPCA's preemption provision is broad, it is not unlimited," Id. at 1103, and expressly limited its holding as follows:

> For instance, our holding here has nothing to say about a State or local government regulation of a utility's distribution of natural gas to premises where covered products might be used. We only decide that EPCA's preemptive scope applies to <u>building codes that regulate the gas usage of covered appliances on premises where gas is otherwise available</u>.

Id. at 1103 (emphasis added). Moreover, the court itself characterized its opinion as "a narrow opinion about Berkeley's building codes," its decision as "limited," and its holding as "very narrow." Id. at 1106. "We only hold that EPCA prevents Berkeley from prohibiting new-building owners from 'extending' fuel gas piping within their buildings 'from the point of delivery at the gas meter' by way of a building code." Id. The CRA court concluded by stating that "Berkeley cannot bypass EPCA's preemption of building codes that directly ban covered products by instead simply prohibiting the piping that transports natural gas from the utility's meter to the appliance." Id. at 1107.[7]

Thus, the basis for the CRA court's limited holding – and the Ninth Circuit's primary concern – was that the Berkeley building code imposed a complete physical impediment to the use of gas for covered appliances in buildings where the gas lines were already there. In other words, by banning the installation of piping to transport gas to an appliance where gas was otherwise available, the building code "concerned the energy use" of covered appliances within the meaning of the EPCA by setting that use at zero. Id.

### C. The EPCA Does Not Preempt Rule 1146.2

Here, we have a very different situation to that addressed by the Ninth Circuit in CRA. The SCAQMD Rule is not a building code, and it does not prohibit or regulate the quantity of natural gas used by appliances. The Rule addresses the pollution appliances emit and not their

---

[7]   The CRA court's emphasis on the fact that the challenged ordinance was a building code appears to be based directly on the text of the EPCA itself. See CRA, 89 F.4th at 1119 (Baker, J., concurring) ("the Berkeley Ordinance cuts to the heart of what Congress sought to prevent – state and local manipulation of building codes for new construction to regulate the natural gas consumption of covered products when gas service is otherwise available. . . ."). The EPCA preemption provision specifically applies to "State or local building code[s] for new construction concerning the . . . energy use of . . . covered products]," and preempts those building codes unless they comply with various specified conditions. Id. §§ 6297(f)(3) & (f)(3)(A)-(G).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

energy use. It says nothing about the quantity of gas an appliance may use. Nor does its application depend on an appliance's efficiency or energy use. To the contrary, the Rule regulates appliances' NOx emissions in order to address air pollution issues and the health risks associated with the combustion of natural gas. The Rule does not implicate any of the issues the EPCA was intended to address – it does not create inconsistent state efficiency standards, require that consumers use appliances with higher efficiency standards, or force manufacturers to meet standards different than those set by the DOE.

Plaintiffs argue that now that the Rule has reduced the NOx emissions limit to zero – and no gas fueled appliance can comply – the Rule is subject to EPCA preemption. (Motion at pp. 11-12.) The District contends – and the Court agrees – that if taken to its logical conclusion, this interpretation would upset the historic and recognized powers of states and local governments to set emissions standards and implement other regulations designed to protect the health and safety of their citizens. (Cross-Motion at pp. 21-22; Reply at p. 8) (citing examples of other emission standards requiring zero or near zero NOx emissions and state and local provisions that effectively prohibit the use of covered gas appliances in certain buildings).

The Court also agrees with SCAQMD that there is no reason to believe that Congress ever intended or even contemplated that the EPCA would preempt emission regulations designed to combat air pollution. (Cross-Motion at p. 23.) Indeed, while the EPCA specifically preempts building codes concerning energy use unless certain exemptions are met, it fails to mention air pollution regulations, despite the fact that the CAA had been in place for many years at the time the EPCA was enacted and amended. (Cross-Motion at pp. 10-12, 26-27). Moreover, the EPCA's legislative history confirms its focus on establishing national standards for energy efficiency and not on upsetting states and local governments' longstanding practice of regulating appliance emissions to achieve air pollution goals.[8/] See Air Conditioning & Refrigeration Inst., 410 F.3d at 500 ("In sum, the legislative history of the relevant Acts supports a narrow interpretation of the preemption provision. . . [and] . . .demonstrates that Congress intended to preempt state energy efficiency standards, testing procedures, and consumer labeling requirements."); see also S. Rep. No. 94-516, at 173 (1975); H.R. Rep. No. 94-700, at 116-17 (1975); H.R. Rep. No. 100-11, at 23-24 (1987).)

Based on the foregoing, the Court concludes that CRA's narrow holding – expressly limited to building codes that concern an appliance's actual energy use – does not reach the state regulation of toxic emissions from appliances in order to comply with federal air pollution

---

[8/]   California has regulated ozone pollution in Los Angeles since the mid-twentieth century and the District has regulated NOx emissions from boilers and water heaters since the end of the twentieth century. (Intervening Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at p. 29.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 24-10482 PA (PDx) | Date | July 22, 2025 |
|---|---|---|---|
| Title | Rinnai America Corp., et al. v. South Coast Air Quality Management District, et al. | | |

standards. Simply stated, the SCAQMD Rule does not concern the energy use of appliances under the EPCA and is not preempted.[9]

## Conclusion

For all of the foregoing reasons, the Court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment, Declaratory Relief and Permanent Injunction. A Judgment consistent with this order will be filed concurrently.

IT IS SO ORDERED.

---

[9] In Association of Contracting Plumbers, the district court disagreed with CRA's interpretation of the phrase "point of use," concluding that the EPCA's history and structure support a definition of energy use as a "predetermined fixed value that measures the characteristics of a covered product as manufactured." 2025 WL 843619 at *4-5. The district court then found that the local ordinance at issue – regulating appliances' carbon dioxide emissions – did not relate to or concern the subject matter of the EPCA because it did not focus on the performance standards of covered products. Rather, the ordinance regulated the type of fuel a covered product may use in certain new residential buildings, regardless of the product's energy efficiency or use. Id. at * 6. However, the Court need not reconcile these two cases because it concludes that under CRA, the SCAQMD Rule concerns appliance emissions and not energy use.