Courtland L. Reichman (SBN 268873)
  creichman@reichmanjorgensen.com
Brian C. Baran (SBN 325939)
  bbaran@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

*Attorneys for Plaintiffs Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

ADDITIONAL COUNSEL ON FOLLOWING PAGE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RINNAI AMERICA CORP., et al.<br><br>     Plaintiffs,<br><br>     v.<br><br>SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,<br><br>     Defendant,<br><br> and<br><br>PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and INDUSTRIOUS LABS,<br><br>     Defendant-Intervenors. | Civil Action No.<br><br>2:24-cv-10482 PA(PDx)<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**<br><br>Date:  Monday, Sept. 29, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9A<br><br>Honorable Percy Anderson<br>United States District Judge |

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
  sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-3501

Sean Kneafsey (SBN 180863)
  skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California*

John J. Davis, Jr. (SBN 65594)
  jjdavis@msh.law
Luke Dowling (SBN 328014)
  ldowling@msh.law
MCCRACKEN, STEMERMAN
  & HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-7201

*Attorneys for Plaintiff California State
Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-2429

*Attorney for Plaintiff Restaurant Law Center*

# **<u>TABLE OF CONTENTS</u>**

**Page**

Introduction ........................................................................................................1

Background .........................................................................................................2

Argument ...........................................................................................................3

   I.    Plaintiffs Have a Likelihood of Success on the Merits. ................................6

   II.   The Balance of Harms Weighs Sharply in Plaintiffs' Favor. .......................12

         A.   Plaintiffs will be irreparably harmed if the zero-$NO_x$ rule takes effect. .....................................................................................................13

         B.   There is no appreciable harm to the District from a short delay ............18

   III.  The Public Interest Favors Preserving the Status Quo to Allow the Ninth Circuit Time to Address the Issue ..................................................................20

Conclusion .......................................................................................................21

Attestation .......................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,*
410 F.3d 492 (9th Cir. 2005) ................................................................................ 10

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2010) ................................................ 4, 13, 19

*Am. Beverage Ass'n v. City & County of San Francisco,*
2016 WL 9184999 (N.D. Cal. June 7, 2016) ................................................ 5

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.,*
534 F. App'x 633 (9th Cir. 2013) ................................................ 13, 16

*Am. Trucking Ass'ns v. City of Los Angeles,*
559 F.3d 1046 (9th Cir. 2009) ................................................ 14, 15, 16, 21

*Ariz. Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) ................................................ 14

*Atlas Ins. Agency, Inc. v. Ulmann,*
2024 WL 5344432 (D. Haw. Nov. 25, 2024) ................................................ 14

*California Restaurant Ass'n v. City of Berkeley,*
89 F.4th 1094 (9th Cir. 2024) ................................................ *passim*

*Champion Int'l Corp. v. Brown,*
731 F.2d 1406 (9th Cir. 1984) ................................................ 20

*Clark v. City of Seattle,*
899 F.3d 802 (9th Cir. 2018) ................................................ 4

*Earth Island Inst. v. Carlton,*
626 F.3d 462 (9th Cir. 2010) ................................................ 13

*Feldman v. Ariz. Sec'y of State's Off.,*
843 F.3d 366 (9th Cir. 2016) (en banc) ................................................ 4

*Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.,*
82 F.4th 664 (9th Cir. 2023) (en banc) ................................................ 13, 20

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
   593 F. Supp. 2d 1088 (N.D. Cal. 2009)................................................................14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) ...................................................................4, 14

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ...........................................................................21

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ..........................................................................3, 6

*Longbridge Fin., LLC v. Mut. of Omaha Mortg., Inc.*,
   2025 WL 1382866 (S.D. Cal. May 13, 2025) .....................................................14

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996), *abrogated by Puerto Rico v. Franklin Cal. Tax-*
   *Free Tr.*, 579 U.S. 115 (2016) .........................................................................10

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ...........................................................................21

*Monster Energy Co. v. Vital Pharms., Inc.*,
   2023 WL 2918724 (C.D. Cal. Apr. 12, 2023), *aff'd*, 2025 WL
   1111495 (9th Cir. Apr. 15, 2025) .....................................................................14

*Monterey Mech. Co. v. Wilson*,
   125 F.3d 702 (9th Cir. 1997) ...........................................................................15

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
   242 F.3d 1163 (9th Cir. 2001) .........................................................................3, 6

*Native Ecosystems Council v. Kimbell*,
   2005 WL 8167434 (D. Mont. Nov. 21, 2005) ......................................................5

*Nelson v. Nat'l Aeronautics and Space Admin.*,
   530 F.3d 865 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134
   (2011).............................................................................................................14

*NetChoice v. Bonta*,
   761 F. Supp. 3d 1232 (N.D. Cal. 2025)................................................................5

*Nken v. Holder*,
   556 U.S. 418 (2009).....................................................................................3, 20

*Obduskey v. McCarthy & Holthus LLP*,
   139 S. Ct. 1029 (2019).................................................................11

*Protect Our Water v. Flowers*,
   377 F. Supp. 2d 882 (E.D. Cal. 2004) .....................................5

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ...................................................20

*Rowe v. N.H. Motor Transp. Ass'n*,
   552 U.S. 364 (2008)....................................................................11

*S. Bay United Pentecostal Church v. Newsom*,
   959 F.3d 938 (9th Cir. 2020) .......................................................4

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
   472 F.3d 1097 (9th Cir. 2006) .....................................................4

*Starz Ent., LLC v. MGM Domestic TV Distrib., LLC*,
   2021 WL 945237 (C.D. Cal. Feb. 22, 2021) ..............................5

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) .....................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..........................................................................4

*Youth 71Five Ministries v. Williams*,
   2024 WL 3749842 (9th Cir. Aug. 8, 2024) .........................15, 21

**Statutes**

42 U.S.C. § 6297(c) .........................................................................2

42 U.S.C. § 6297(f) .........................................................................8

42 U.S.C. § 6297(f)(3) .....................................................................7

Energy Policy and Conservation Act, 42 U.S.C. §§ 6201 *et seq.* ....................*passim*

**Rules**

Fed. R. App. P. 8(a)(1)....................................................................3

Fed. R. Civ. P. 62(d) ...............................................................1, 3, 5

iv

**Other Authorities**

https://www.aqmd.gov/home/rules-compliance/rules/scaqmd-rule-
        book/proposed-rules/rule-1111-and-rule-1121...................................................20

# INTRODUCTION

Plaintiffs move under Civil Rule 62(d) for an injunction pending appeal in order to maintain the status quo while the Ninth Circuit considers the serious legal question this case presents. Without interim relief, the first set of zero-$NO_x$ limits in the South Coast Air Quality Management District's Rule 1146.2 will take effect January 1, 2026, before the Ninth Circuit is likely to be able to resolve Plaintiffs' appeal.

Plaintiffs' preemption claim raises, at the least, a serious question in light of recent Ninth Circuit precedent. *California Restaurant Ass'n* held that Berkeley's ban on gas piping was preempted because it prevented the use of gas appliances. Once the Court here concluded that the zero-$NO_x$ rule bans gas appliances, Dkt. 81 at 6, *California Restaurant Ass'n* should have dictated the outcome. There is no persuasive reason for distinguishing the District's ban from Berkeley's, and the Court's contrary conclusion cannot be squared with the Ninth Circuit's reasoning. But in any event, disagreement over this issue presents at least a serious question on the merits.

The balance of harms tips sharply in Plaintiffs' favor: During the pendency of the appeal, Plaintiffs will suffer serious harms that cannot be unwound—including not only lost sales but also lost market share, customers, and goodwill; forced business restructuring; and lost work hours and opportunities. The District, in contrast, will suffer no appreciable harm in the interim, bearing no costs or burdens. Nor would an injunction prevent anyone from purchasing or using electric appliances. And delaying the rule's earliest compliance dates—which affect only a subset of the regulated appliances—by a few months to a year will have at most a de minimis impact on the District's decades-long air quality goals.

1

For the same reasons, an injunction is in the public interest; it would protect Plaintiffs from the burdens of a preempted law until the Ninth Circuit has time to rule. Under well-established Ninth Circuit precedent, an injunction preserving the status quo pending appeal is appropriate here.

## BACKGROUND

Plaintiffs—manufacturers and sellers of gas appliances, trade associations, affordable housing groups, and labor union groups that rely on the availability of natural gas appliances and systems for their and their members' livelihoods—brought this federal preemption challenge to the District's recently amended Rule 1146.2, which effectively bans certain gas appliances by setting a zero-$NO_x$ emission limit. Dkt. 12; Dkt. 81 at 6 (Court determining that the rule, "by prohibiting NOx emissions, effectively bans the use of covered gas fueled boilers and water heaters"). Plaintiffs contended that the zero-$NO_x$ limits are preempted by the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§6201 *et seq.*, which preempts local regulations "concerning the … energy use" of covered products, *id.* §6297(c), including many common residential and commercial appliances. As the Ninth Circuit recently held in *California Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), EPCA preempts regulations that effectively prohibit covered appliances from using gas. Here, Plaintiffs contended that the District's zero-$NO_x$ rule is functionally indistinguishable from Berkeley's ban on gas piping that the Ninth Circuit struck down and therefore sought declaratory and injunctive relief.

This Court denied Plaintiffs' summary judgment motion and granted the District's cross-motion. Dkt. 81. Despite holding that the rule bans the covered gas appliances, the Court nonetheless concluded that the rule was not preempted because

it "concerns the pollution appliances emit, and not how much energy an appliance uses, and is therefore outside the scope of" the Ninth Circuit's *California Restaurant Ass'n* holding. *Id.* at 6. Plaintiffs appealed. Dkt. 83.

## ARGUMENT

"While an appeal is pending from … [a] final judgment that … refuses … an injunction," Civil Rule 62(d) authorizes district courts to "grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d); *see also* Fed. R. App. P. 8(a)(1) (parties "must ordinarily move first in the district court for" an injunction pending appeal). That rule codifies district courts' "inherent[]" power "to preserve the status quo" while an appeal is pending. *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). This Court should exercise that power here to give the Ninth Circuit time to consider the serious legal question presented before the District's rule causes irreparable harm.

Interim relief pending appeal—whether an injunction preserving the state of affairs before the challenged action or a stay of a judicial order that would change the status quo—serves an important purpose: It "give[s] the reviewing court the time to 'act responsibly,' rather than doling out 'justice on the fly.'" *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)); *see Nken*, 556 U.S. at 434 (recognizing that there is "substantial overlap" between the preliminary injunction and stay factors, "not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined").

An injunction pending appeal is appropriate when the moving parties have shown that "they are likely to succeed on the merits, that they are likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest." *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc) ("The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction.").[1]

Although a party must make a threshold showing on each of the four factors, the Ninth Circuit adheres to the "sliding scale" approach, under which "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2010); *see also id.* at 1134-35. As a result, an injunction is warranted when there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff … , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135; *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188, 1191 (9th Cir. 2022) ("So, when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only serious questions going to the merits," rather than likely success. (cleaned up)); *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) ("balanc[ing] the plaintiff's likelihood of success against the relative hardship to the parties" and affirming an injunction pending appeal preventing government action).

---

[1] *See also Feldman*, 843 F.3d at 367 (granting an injunction pending appeal to prevent a challenged law from going into effect while the Ninth Circuit addressed the case); *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) (noting that the court had enjoined enforcement of the challenged ordinance pending appeal).

4

Finally, that a district court has denied injunctive relief on the merits does not prevent it from granting relief pending appeal; Rule 62(d) contemplates this very setup. *See* Fed. R. Civ. P. 62(d) (court may "grant an injunction" while an appeal is pending from a "final judgment that … refuses … an injunction").  Parties need not "meet the high bar for reconsideration to secure an injunction pending appeal."  *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1235-36 (N.D. Cal. 2025); *accord Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) ("Several courts have observed that the success on the merits factor cannot be rigidly applied, because if it were, an injunction would seldom, if ever, be granted because the district court would have to conclude that it was probably incorrect in its determination on the merits." (cleaned up)).  Rather, injunctions pending appeal are "frequently issued where the trial court," while continuing to believe its ruling was correct, recognizes that it "is charting a new and unexplored ground" with the attendant risk that its decision "may succumb to appellate review."  *Am. Beverage Ass'n v. City & County of San Francisco*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016) (attribution omitted) (granting an injunction pending appeal of the denial of a preliminary injunction); *accord NetChoice*, 761 F. Supp. 3d at 1236 ("admittedly difficult legal question" (attribution omitted)); *see also Native Ecosystems Council v. Kimbell*, 2005 WL 8167434, at *1-2 (D. Mont. Nov. 21, 2005) (granting an injunction pending appeal because there was "a possibility that the Ninth Circuit will disagree" and the plaintiffs may suffer irreparable harm in the meantime).[2]  After all, the point of Rule 62(d) is not to reassess the merits, but to

---

[2] *See also, e.g.*, *Starz Ent., LLC v. MGM Domestic TV Distrib., LLC*, 2021 WL 945237, *2 (C.D. Cal. Feb. 22, 2021) ("A stay may also be proper when the district court has ruled on an admittedly difficult legal question and when the equities of the case suggest that a stay is warranted." (cleaned up)).

preserve the status quo while the appeals court has time to fully consider the merits for itself. *Nat. Res. Def. Council*, 242 F.3d at 1166; *see also Leiva-Perez*, 640 F.3d at 967.

## I.    Plaintiffs Have a Likelihood of Success on the Merits.

Plaintiffs recognize that this Court already determined that the District's Rule 1146.2 does not "concern … energy use" within the meaning of EPCA's preemption provision. But in light of the Ninth Circuit's ruling in *California Restaurant Ass'n*, and that decision's explanation of the scope of the preemption provision and how it applied to Berkeley's ban, Plaintiffs' claim nevertheless presents a likelihood of success on the merits. Plaintiffs do not have to show that they will more likely than not prevail, but only that they have a substantial case on the merits. *See Leiva-Perez*, 640 F.3d at 968 ("Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits."). And for the reasons explained below, Plaintiffs do. Besides, Plaintiffs need not even show that much; where, as here, the balance of harms tips decidedly in Plaintiffs' favor, a serious question going to the merits is plenty. *Supra* p. 4. This case readily clears that hurdle.

**1.**    This Court held that the District's zero-NO$_x$ rule is a ban on the covered gas appliances. Dkt. 81 at 6. It follows that the ban is preempted by EPCA under the holding and reasoning of *California Restaurant Ass'n*, which focused on the effect of the law rather than its framing:

> EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings. So Berkeley can't evade preemption by merely moving up one step in the energy chain and banning natural gas piping within those buildings. Otherwise, the ability to use covered

6

products is "meaningless" if consumers can't access the natural gas available at the meter on the premises.

89 F.4th at 1107; *see also id.* ("EPCA thus preempts the Ordinance's effect on covered products.").  Here, the District's ban admittedly "prohibits the use of covered natural gas appliances in new buildings"—which means it does exactly what *California Restaurant Ass'n* held was preempted.  *Id.*; *see also id.* at 1102 ("a regulation on 'energy use' fairly encompasses an ordinance that effectively eliminates the 'use' of an energy source").  That the District's ban does so indirectly, by banning $NO_x$ emissions, is no different from Berkeley's ban, which also banned gas appliances indirectly by "moving up one step in the energy chain and banning natural gas piping within those buildings." *Id.*

**2.**    This Court's contrary conclusion is at least in tension with the Ninth Circuit's explanation of the scope and application of the preemption provision.  The Court's reading of *California Restaurant Ass'n* as addressing only building code provisions that "physical[ly]" prevent the use of gas appliances, Dkt. 81 at 8-9, fails to give fair effect to the Ninth Circuit's reasoning.  The Ninth Circuit was concerned with rules that achieve the same prohibited result—banning appliances—through a different but equally effective means, which is exactly what the District's rule does here.  *See Cal. Rest.*, 89 F.4th at 1106-07 (collecting cases for the point that states and localities cannot avoid preemption by doing indirectly what cannot be done directly).

To be sure, the Ninth Circuit decided only the case before it, and that case involved a building code regulation.  But its discussion of EPCA's building code exception, 42 U.S.C. §6297(f)(3), nowhere suggested that preemption is somehow limited to building code requirements.  *Contra* Dkt. 81 at 8 & n.7.  Faced with

arguments that preemption "only covers regulations that impose standards on the design and manufacture of appliances" or "'energy conservation standards' that operate directly on the covered products themselves," the Ninth Circuit explained that §6297(f) refuted that narrow view of preemption. *Cal. Rest.*, 89 F.4th at 1100-02. The Ninth Circuit's view was that preemption extends "at least" to building codes, not that it extends only to building codes:

> Of critical importance here is that the structure of the statute indicates that 'a regulation concerning the energy use' can include 'building code requirements.' … [S]ubsection (f) demonstrates that EPCA's preemptive scope extends beyond direct or facial regulations of covered products to at least include building codes … .

*Id.* (alterations incorporated) (quoting 42 U.S.C. §6297(f))[3]  So the fact that the District's ban is not in a building code and does not expressly set a quantity of energy use does not move this case outside of the Ninth Circuit's holding. Just like Berkeley's ban, the District's rule effectively sets the covered gas appliances' maximum energy use to zero by prohibiting them from combusting any gas.

**3.** The Court's remaining reasons for distinguishing the District's zero-$NO_x$ rule from Berkeley's ban are all arguments the Ninth Circuit rejected; every point either describes Berkeley's ban or mirrors an argument the dissent from denial of rehearing en banc made. First, neither Berkeley nor the District expressly "prohibit[ed] or regulate[d] the quantity of natural gas used by appliances," Dkt. 81 at 8, but both did so in effect: Berkeley "prohibit[ed] the installation of necessary natural gas

---

[3] The Ninth Circuit also explained that the waiver provision shows the broad scope of preemption. *See id.* at 1103-04. This Court's decision did not address that point.

infrastructure," and the District prohibited NO$_x$ emissions (and thus the combustion necessary to use gas appliances). *Cal. Rest.*, 89 F.4th at 1102. Both approaches effectively "prohibit[] consumers from using natural gas-powered appliances," and so both "necessarily regulat[e] the 'quantity of energy directly consumed by the appliances at point of use.'" *Cal. Rest.*, 89 F.4th at 1102 (alteration incorporated). And just as the District's "Rule addresses the pollution appliances emit and not their energy use," Dkt. 81 at 8-9, Berkeley's ban addressed the gas infrastructure to which appliances could be hooked up and not their energy use.

The Court also suggested that the District's rule did not require specific performance standards or require manufacturers to change designs—but this is true of Berkeley's ban as well. Both regulations "say[] nothing about the quantity of gas an appliance may use," and neither regulation's "application depend[s] on an appliance's efficiency or energy use" Dkt. 81 at 9. *See Cal. Rest.*, 89 F.4th at 1126 (Friedland, J., dissenting from the denial of rehearing en banc) (arguing that Berkeley's ban did not depend on—and might wind up increasing—appliances' energy consumption). Likewise, neither "require[d] consumers to use appliances with higher efficiency standards than those prescribed by DOE" or required manufacturers "to change the design of their natural gas products to meet" such standards. *Id.* (Friedland, J., dissenting from the denial of rehearing en banc)); Dkt. 81 at 9 (same). And although neither expressly "create[d] inconsistent state efficiency standards," Dkt. 81 at 9, both approaches, "if adopted by States and localities throughout the country, would 'significantly burden' the 'sale' of covered products 'on a national basis'" and thus implicate Congress's preemptive purposes, *Cal. Rest.*, 89 F.4th at 1104 (panel opinion).

Further, the Court relied on the rule's purpose as an air quality regulation, but Berkeley's purpose was to address health and safety and climate change; neither's purpose was energy conservation.  *Compare Cal. Rest.*, 89 F.4th at 1126.  ("The ordinance was intended to slow climate change and reduce public safety hazards and health risks associated with the combustion of natural gas."), *with* Dkt. 81 at 9 ("[T]he Rule regulates appliances' $NO_x$ emissions in order to address air pollution issues and the health risks associated with the combustion of natural gas.").  In short, this Court's decision aligns more closely with the dissent from denial of en banc review than with the binding panel opinion.  That raises, at a minimum, a serious prospect of reversal.

**4.**    In addition, despite acknowledging that there is no presumption against preemption in express preemption cases, Dkt. 81 at 5-6, the Court nevertheless suggested that it must read the EPCA preemption provision narrowly so as to avoid upsetting "the historic and recognized powers of states and local governments to set emissions standards and implement other regulations designed to protect the health and safety of their citizens." *Id.* at 9-10.  And the case the Court relied on in support of its discussion of congressional intent, Dkt. 81 at 10, applied the now-overruled presumption against preemption to support a narrow interpretation of the preemption provision at issue there. *See Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 497 (9th Cir. 2005).  But such a narrow reading is exactly what the presumption against preemption used to require. *See, e.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (cleaned up)),

1    *abrogated by Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115 (2016).  There

2    is thus at least a serious question whether this Court applied the correct legal standard.

3        **5.**    Finally, there is ample "reason to believe" that Congress intended that

4    "EPCA would preempt emission regulations."  *Contra* Dkt. 81 at 9.  The plain text of

5    the statute Congress enacted provides all the evidence needed.  That statute broadly

6    preempts "any regulation concerning … energy use" and enumerates a range of

7    specific exceptions, such as the building code exception—none of which is for air

8    quality regulations.  Far from suggesting that Congress meant to exclude air quality

9    regulations from preemption, EPCA's silence on that topic in fact signals that Congress

10   did not intend to "create[] an exception on that basis."  *Rowe v. N.H. Motor Transp.*

11   *Ass'n*, 552 U.S. 364, 373-74 (2008).  Congress easily could have—but did not—exempt

12   state and local emission standards from the preempted subject matter.  *See Cal. Rest.*,

13   89 F.4th at 1105 ("[W]e presume that Congress means what it says, and we can't simply

14   reconfigure the statute to fit the Government's needs"); *Obduskey v. McCarthy &*

15   *Holthus LLP*, 139 S. Ct. 1029, 1038 (2019) ("[I]f Congress meant to cover only"

16   regulations contained in building codes, "it could have said so.").

17                                    *    *    *

18       In sum, there are substantial questions as to whether the District's ban can be

19   distinguished from Berkeley's in any meaningful way that is consistent with binding

20   precedent and supported by EPCA's plain text, context, and purpose.  Accordingly, and

21   for the reasons more fully explained in Plaintiffs' summary judgment briefing,

22   Dkts. 50-1, 66, Plaintiffs have shown a likelihood of success or, at the very least, a

23   serious question on the merits.

24

## II.      The Balance of Harms Weighs Sharply in Plaintiffs' Favor.

Plaintiffs will be gravely harmed if the law goes into effect during the pendency of the appeal, while the District will suffer no appreciable harm.  On the one hand, Plaintiffs will suffer serious, lasting harm that cannot be readily measured or compensated with monetary damages.  When Phase I of the ban goes into effect on January 1, 2026, gas tankless water heaters, boilers, or process heaters below a certain size cannot be manufactured, sold, or installed in new buildings in the District, and any noncompliance with the Rule will face civil penalties.  This ban will affect not only sales and installation of the covered appliances, but also related pipefitting and plumbing work, manufacturing processes, new building construction, and housing availability and affordability.  Plaintiffs will lose customers, market position and goodwill, certain lines of business, job opportunities, work hours, or the ability to pursue their chosen professions, and they will suffer business disruptions, compliance burdens, income losses and a diminished workforce.  These harms cannot simply be unwound if Plaintiffs prevail on appeal. *See infra* pp. 13-18.

On the other hand, the District will suffer no appreciable harm from a delay in the effective date of its Rule.  The delay would affect only Phase I, set to go into effect January 1, 2026; Phase II does not start until January 1, 2028.  There is no burden on or expense to the District from the delay.  Nor would it constrain any individuals or businesses, who would still be free to choose electric appliances.  Moreover, the impact of a delay of months on the District's goals of meeting federal air quality standards would be minimal at best.  The District has not even submitted its rule to the EPA as part of its state implementation plan, and in any event, the rule is purportedly intended

to demonstrate compliance with air quality regulations in 2037 and beyond, more than a decade in the future.[4]  *See infra* pp. 18-20.

Given the serious harm to Plaintiffs and the lack of any real harm to the District, the balance of equities tips sharply in Plaintiffs' favor.  *See Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 683-84 (9th Cir. 2023) (en banc); *Wild Rockies*, 632 F.3d at 1135; *see also Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("Economic harm may indeed be a factor in considering the balance of equitable interests.").

### A.  Plaintiffs will be irreparably harmed if the zero-$NO_x$ rule takes effect.

If Rule 1146.2's zero-$NO_x$ limits are allowed to take effect while the Ninth Circuit considers whether they are unlawful, Plaintiffs will suffer direct, tangible harms, many of which are difficult if not impossible to measure and compensate in monetary terms.

Plaintiffs (*e.g.*, Rinnai, Noritz) will suffer not only lost sales and revenues, but also the loss of customers, loss of goodwill, and loss of market share—injuries that are more than economic and cannot easily be undone.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (affirming the grant of a preliminary injunction where the district court found that the plaintiff stood to "lose its newfound customers and accompanying goodwill and revenue"); *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) (irreparable harm is likely where

---

[4] Plaintiffs plan to move to expedite in the Ninth Circuit.  The District indicated that it would agree to expedite the appeal only if Plaintiffs agreed to forgo an injunction pending appeal.  Plaintiffs will commit to moving to expedite even if an injunction pending appeal is granted in order to mitigate any purported harm to the District.

plaintiff provided "evidence of threatened loss of customers or goodwill" (cleaned up)).[5]

Plaintiffs (*e.g.*, builders, hotels) will also suffer business disruptions; they will need to restructure supply and distribution chains, modify relationships with service networks or contractors, or revise development and investment plans. *See Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009) (finding that the plaintiffs would be irreparably harmed by being "forced to incur large costs" that would "disrupt and change the whole nature of [their] business[es] in ways that most likely cannot be compensated with damages alone").

And Plaintiffs (*e.g.,* union plumbers and plumbing contractors) will lose job hours or work opportunities, and they may be laid off, lose the opportunity to pursue a profession, or lose their business or lines of business. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (holding that the "loss of opportunity to pursue Plaintiffs' chosen professions constitutes irreparable harm" (cleaned up)); *hiQ Labs*, 31 F.4th at 1188 ("[T]he threat of being driven out of business is sufficient to establish irreparable harm." (attribution omitted)); *Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) ("[T]he loss of one's job does not carry merely monetary consequences; it carries emotional damages and stress, which

---

[5] *See also, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 2918724, at *3, *6 (C.D. Cal. Apr. 12, 2023) (finding that "threatened loss of prospective customers or goodwill" and loss of market share are "ongoing harms that cannot be fully compensated through an award of damages"), *aff'd*, 2025 WL 1111495 (9th Cir. Apr. 15, 2025); *Atlas Ins. Agency, Inc. v. Ulmann*, 2024 WL 5344432, at *8 (D. Haw. Nov. 25, 2024) ("The loss of clients and market share is not economic loss that can be fully compensated by a damage award … and can constitute irreparable harm."); *Longbridge Fin., LLC v. Mut. of Omaha Mortg., Inc.*, 2025 WL 1382866, at *13 (S.D. Cal. May 13, 2025) ("threatened loss of prospective customers and goodwill"); *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1111 (N.D. Cal. 2009) (loss of market share).

1  cannot be compensated by mere back payment of wages."), *rev'd on other grounds*,

2  562 U.S. 134 (2011).

3       Moreover, being forced to comply with "conditions which are likely

4  unconstitutional because they are preempted" is an irreparable harm in itself. *Am.*

5  *Trucking*, 559 F.3d at 1058-59 ("[C]onstitutional violations cannot be adequately

6  remedied through damages and therefore generally constitute irreparable harm.").

7  Stated differently, "an alleged constitutional infringement will often alone constitute

8  irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)

9  (cleaned up).  Unless the District is enjoined from enforcing the zero-$NO_x$ rule,

10 Plaintiffs and their members will be denied their right to operate and conduct their

11 professions and businesses unburdened by a preempted, unconstitutional law. *See*

12 *Youth 71Five Ministries v. Williams*, 2024 WL 3749842, at *4 (9th Cir. Aug. 8, 2024)

13 (granting an injunction pending appeal of the denial of a preliminary injunction, in part

14 because the plaintiff had a "colorable" free exercise claim).

15      Here, Plaintiffs Rinnai and Noritz will lose all sales of their gas tankless water

16 heaters and gas boilers in new buildings in the District once the zero-$NO_x$ rule goes

17 into effect.  Rinnai and Noritz are the two leading sellers of tankless water heaters in

18 the District, and they have spent decades building their brand names, relationships with

19 distributors and contractors, and goodwill with customers through targeted investments

20 in the District.  Ex. 1 (Decl. of F. Windsor) ¶¶ 5-6; 3Ex. 2 (Decl. of J. Hassel) ¶¶ 13-

21 14.    That market share, brand reputation, customer goodwill, and network of

22 distributors, builders, and contractors are all threatened by the zero-$NO_x$ rule, which

23 will immediately eliminate all sales for new construction and effectively dismantle this

24 established ecosystem.  Ex. 1 (Decl. of F. Windsor) ¶¶ 7-8, 14-15; Ex. 2 (Decl. of J.

Hassel) ¶¶12-13. Besides the disruption to brand recognition and business relationships, the immediate loss of sales has much more long-term harm; once buildings are built without gas water heaters or boilers, and perhaps without gas service at all, it forecloses the chance to provide repairs, service, and replacement appliances. *Id*. ¶ 9. Both companies will suffer monetary losses in the millions of dollars in less than a year, losses that cannot be recouped once an electric appliance is installed; and they have seen sales and marketing expenses, product pricing, and profit margins affected by the impending ban. Ex. 1 (Decl. of F. Windsor) ¶¶ 7, 11, 15; Ex. 2 (Decl. of J. Hassel) ¶¶ 6-8. As a result, Rinnai and Noritz will have to adjust their business operations and practices, including laying off employees, making changes to manufacturing and distribution networks, and shifting their sales efforts to different product lines (such as electric heat pumps) where there are entrenched competitors. Ex. 1 (Decl. of F. Windsor) ¶ 12; Ex. 2 (Decl. of J. Hassel) ¶ 13.[6] Moreover, Noritz will have to consider moving its headquarters out of the District—affecting the jobs of 50 employees—if it can no longer sell its leading products in the District. *Id*. ¶ 10. These are the types of business losses (lost customers, market share, and goodwill) and organizational burdens and disruptions that *American Trucking* and other cases recognize as irreparable harm. *See Am. Trucking*, 559 F.3d at 1058-59; *Am. Rena*, 534 F. App'x at 636; *supra* note 5.

The plumbers and pipefitters that are members of the State Pipe Trades Council and Local 364 already are suffering losses of work hours and job opportunities in the District because developers are eliminating gas service in anticipation of the rule's

---

[6] Contractors and distributors will also be affected, losing sales commissions and installation revenues, and may have to lay off employees or retrain technicians. Ex. 1 (Decl. of F. Windsor) ¶¶ 10-11.

taking effect.  Once the rule goes into effect in 2026, the work situation will continue to "deteriorate."  Ex. 3 (Decl. of J. Raymond) ¶ 10.  Because gas-related work "is a substantial part of our members' work," as the "work dries up, our members will suffer greater losses of income and difficulty supporting their families."  And they will have "difficulty obtaining the work hours needed to qualify for health-and-welfare (i.e., medical) benefits and to fund their retirement benefits."  *Id.*  Likewise, family-owned plumbing businesses with a majority of their work in services relating to gas appliance repair, replacement, and installation may not survive, and will have to lay off employees, sell assets, or shift to other lines of business, with disruptions caused by losing customers and goodwill, needing new equipment, and having to retrain employees.  Ex. 4 (Decl. of M. Prencavage) ¶¶ 3-7; Ex. 5 (Decl. of W. Squire) ¶¶ 5-8.

Members of the hotel and lodging industry will also suffer harm that cannot be easily undone once the rule goes into effect.  Because the rule bans the sale or installation of gas tankless water heaters, boilers, and process heaters after January 1, 2026, hotels that are in the planning and permitting stages or that will not complete construction before the end of this year will be forced to modify plans midstream to change the infrastructure and appliances, which also impacts construction costs, layout and design, and availability of amenities.  Ex. 6 (Decl. of L. Mohrfeld) ¶¶ 5-6.  Being forced to build new hotels without these gas appliances will increase cost pressures, "impose operating and compliance burdens, and create difficult financial tradeoffs" that may decrease the hotel's value.  *Id.* ¶ 6.  And once "designed permitted, or built" without these gas appliances, it would be burdensome, time consuming, and expensive to revert back, were the decision to be reversed on appeal.  *Id.* ¶ 7.

Likewise, the residential construction industry will be affected once the rule goes into effect.  The lead-time necessary for building, planning, and permitting means that builders have to "now make irrevocable decisions on which appliances and HVAC equipment to install;" once "a new home is designed and constructed for electric appliances," it is difficult to install gas-fired appliances, which have specific construction requirements.  Ex. 7 (Decl. of T. Ward) ¶¶ 7-10.  And the increased costs of building all electric, as well as the increased utility costs, will affect residential pricing and availability; if some houses or developments are not built at all or are built with fewer units, this "will result in increases in rents and sales prices for existing units."  Ex. 8 (Decl. of M. Gelfand) ¶¶ 5-6; Ex. 7 (Decl. of T. Ward) ¶ 11.

In short, Plaintiffs are facing irreparable harms during the pendency of their appeal to the Ninth Circuit.  Even months to a year of the zero-$NO_x$ rule being in effect will have devastating consequences that cannot be meaningfully remedied.  Sales lost will not be regained, nor will company goodwill and relationships with builders and contractors be easily reestablished.  Manufacturing lines and company headquarters will have been modified or moved, distribution networks changed, equipment and assets sold, and employees laid off.  Plumbers and pipefitters will have lost work opportunities and hours, had training programs depleted, and potentially had to close family-owned plumbing businesses and give up the profession of their choice.  These harms should be stopped while the Ninth Circuit hears this case.

**B.    There is no appreciable harm to the District from a short delay.**

The District will suffer little if any harm from a delay of months in putting the first phase of its rule into effect.  There is no burden or expense imposed on the District by enjoining the rule during the pendency of the appeal.  Nor would an injunction

18

constrain the behavior of any individual or business; consumers, builders, and businesses alike are free to sell, buy, and install electric appliances or choose all-electric construction. Moreover, as the District has emphasized, its Rule is intended to comply with federal Clean Air Act standards in future decades, with the first benchmark in 2037. *See* Dkt. 53 at 16 (discussing anticipated effects of the rule in 2037 and 2057). And only Phase I of the rule would be in effect for the initial two years, until 2028—so any impact from an injunction pending appeal on the District's air quality goals would be minimal.

As the District itself explained, it needs a reduction of "124 tons per day" of $NO_x$ emissions. Yet *all* the appliances covered by Rule 1146.2, when the rule is at "full implementation" in 2057, will only reduce emissions by 5.6 tons per day (4.5% of the target), and that number drops to "2.44 tons per day" (2.0%) "by the attainment date of 2037." Dkt. 53 at 13, 16. Phase I, however, applies only to new buildings, covers only the "smaller" appliances, and excludes pool heaters. Dkt. 50-4 at 29. The District's Final Staff Report shows that of the 5.6 tons per day estimate for 2057, only 0.78 tons per day (0.6%) are attributed to Phase I appliances. *Id*. at 145, Table 4-1. And because less than half of the estimated emissions reductions occur by 2037, less than 0.39 tons per day of $NO_x$ reductions—just 0.3% of the District's overall target—are likely to result from Phase I by 2037. This is an insignificant contribution over the next twelve years, let alone the next twelve months. So the District's own calculations underscore that delaying enforcement of the first set of zero-$NO_x$ limits for months to a year will not make an appreciable difference for the District's long-term goals. Besides, the District's claim that it needs the zero-$NO_x$ rule to meet these goals is undermined both by the failure to submit the rule to the EPA for approval as part of the state

1   implementation plan and by the District Governing Board's recent decision to reject

2   similar zero-NO$_x$ rules for other types of appliances.[7]

3         It is hard to see how the District could be harmed by a temporary delay in

4   enforcing a potentially preempted rule. *Cf. Champion Int'l Corp. v. Brown*, 731 F.2d

5   1406, 1409 (9th Cir. 1984) (state "has no cognizable state interest in enforcing … laws

6   that are preempted by federal law"); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th

7   Cir. 2013) (government "cannot suffer harm from an injunction that merely ends an

8   unlawful practice"). An injunction here would serve to maintain the status quo and

9   avoid potentially forcing Plaintiffs to comply with a preempted rule, keeping the prior

10  NO$_x$ regulations in effect while the zero-NO$_x$ rule's enforceability is decided. In sum,

11  there is no appreciable harm to the District from a short delay.

12  **III.   The Public Interest Favors Preserving the Status Quo to Allow the Ninth
    Circuit Time to Address the Issue.**

13        "Where, as here, the party opposing injunctive relief is a government entity, the

14  third and fourth factors—the balance of equities and the public interest—'merge.'"

15  *Christian Athletes*, 82 F.4th at 695 (quoting *Nken*, 556 U.S. at 435). As discussed, the

16  balance of harms sharply favors Plaintiffs. *See supra* pp. 12-13. And because there is

17  "no cognizable state interest in enforcing … laws that are preempted by federal law,"

18  the public interest lies in staying enforcement of a potentially preempted law to allow

19  the Ninth Circuit time to decide the issue. *Champion Int'l*, 731 F.2d at 1409. In

20  *American Trucking*, the Ninth Circuit noted that while it did not "denigrate the public

21  interest represented by the Ports, that must be balanced against the public interest

22

---

23      [7]   https://www.aqmd.gov/home/rules-compliance/rules/scaqmd-rule-book/proposed-
    rules/rule-1111-and-rule-1121 ("On June 6, 2025, the South Coast AQMD Governing Board voted 7
24  to 5 **not** to approve Proposed Amended Rules 1111 and 1121").

represented in Congress' decision to deregulate the motor carrier industry, and the Constitution's declaration that federal law is to be supreme."  559 F.3d at 1059-60.[8] So too here.  EPCA embodies Congress's decision that there should be a uniform national energy policy, including a policy on appliances' energy use, and in particular one that encourages a diverse domestic supply of energy, provides manufacturers with one set of rules for selling appliances nationwide, and protects consumer choice—all of which the District's zero-$NO_x$ rule undermines.

Importantly, an injunction here would not prevent anyone from using or installing electric appliances; it would merely protect Plaintiffs' rights to conduct their businesses and chosen professions without being subject to the burdens and constraints of a preempted rule while their appeal is pending.  The public interest is served by preserving the status quo—namely, the $NO_x$ rules in place for many years before the District adopted the zero-$NO_x$ rule and that are still in place today.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court enjoin enforcement of amended Rule 1146.2's zero-$NO_x$ limits during the pendency of Plaintiffs' appeal.

---

[8] *See also Youth 71Five Ministries*, 2024 WL 3749842, at *5, *11 (granting an injunction pending appeal, and stating "it is always in the public interest to prevent the violation of a party's constitutional rights"); *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) (similar); *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (public interest is advanced by halting the "enforcement of the potentially unconstitutional regulations," which would infringe not only on the plaintiffs' rights but also those of the rest of the public subject to the same regulation).

Dated: August 27, 2025                          Respectfully submitted,

*/s/ John J. Davis, Jr.*                         */s/ Courtland L. Reichman*
John J. Davis, Jr. (SBN 65594)                   Courtland L. Reichman (SBN 268873)
  jjdavis@msh.law                                  **creichman@reichmanjorgensen.com**
Luke Dowling (SBN 328014)                        Brian C. Baran (SBN 325939)
  ldowling@msh.law                                 bbaran@reichmanjorgensen.com
MCCRACKEN, STEMERMAN                              REICHMAN JORGENSEN
  & HOLSBERRY LLP                                   LEHMAN & FELDBERG LLP
475 – 14th Street, Suite 1200                    100 Marine Parkway, Suite 300
Oakland, CA 94612                                Redwood Shores, CA 94065
Tel.: (415) 597-7200; Fax: (415) 597-7201        Tel.: (650) 623-1401; Fax: (650) 560-3501

*Attorneys for Plaintiff California State*       Sarah O. Jorgensen (*pro hac vice*)
*Pipe Trades Council*                              sjorgensen@reichmanjorgensen.com
                                                 REICHMAN JORGENSEN
*/s/ Matthew P. Gelfand*                           LEHMAN & FELDBERG LLP
Matthew P. Gelfand (SBN 297910)                  1201 West Peachtree St., Suite 2300
  matt@caforhomes.org                            Atlanta, GA 30309
CALIFORNIANS FOR HOMEOWNERSHIP, INC.             Tel.: (404) 609-1040; Fax: (650) 560-3501
525 S. Virgil Ave.
Los Angeles, California 90020                    */s/ Sean M. Kneafsey*
Tel.: (213) 739-8206; Fax: (213) 480-7724        Sean M. Kneafsey (SBN 180863)
                                                   skneafsey@kneafseyfirm.com
*Attorney for Californians for*                  THE KNEAFSEY FIRM, INC.
*Homeownership, Inc.*                            707 Wilshire Blvd., Suite 3700
                                                 Los Angeles, CA 90017
*/s/ Angelo I. Amador*                           Tel.: (213) 892-1200; Fax: (213) 892-1208
Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org                         *Attorneys for Plaintiffs Rinnai America*
RESTAURANT LAW CENTER                            *Corp., Noritz America Corp., National*
2055 L Street, NW, Suite 700                     *Association of Home Builders, California*
Washington, DC 20036                             *Manufacturers & Technology Association,*
Tel.: (202) 331-5913 Fax: (202) 331-2429         *California Restaurant Association,*
                                                 *California Hotel & Lodging Association,*
*Attorneys for Plaintiff Restaurant Law*         *California Apartment Association, and*
*Center*                                         *Plumbing-Heating-Cooling Contractors of*
                                                 *California*

## ATTESTATION

In accordance with Civil Local Rule 5-4.3.4(a)(2)(i), I attest that each of the

signatories have concurred in this filing's content and have authorized its filing.

Dated:  August 27, 2025                          By:  */s/ Courtland L. Reichman*
                                                      Courtland L. Reichman

22