MATTHEW D. ZINN (CA Bar No. 214587)
Zinn@smwlaw.com
LAUREN M. TARPEY (CA Bar No. 321775)
Ltarpey@smwlaw.com
RYAN K, GALLAGHER (CA Bar No. 344349)
Rgallagher@smwlaw.com
SHUTE, MIHALY & WEINBERGER LLP
396 Hayes Street
San Francisco, California 94102
Telephone:(415) 552-7272
Facsimile: (415) 552-5816

BAYRON T. GILCHRIST (CA Bar No. 212393)
General Counsel
BARBARA BAIRD (CA Bar No. 81507)
Chief Deputy District Counsel
SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
21865 Copley Drive
Diamond Bar, California 91765
Telephone: (909) 396-3400
Facsimile: (909) 396-2961
bghilchrist@aqmd.gov

Attorneys for Defendant South Coast Air
Quality Management District

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RINNAI AMERICA CORP., et al, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, <br><br> Defendant. <br><br> and <br><br> PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, | Case No. 2:24-cv-10482 PA (PDx) <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL** <br><br> Date:   September 29, 2025 <br> Time:   1:30 P.M. <br><br> The Hon. Percy Anderson |

SIERRA CLUB, and
INDUSTRIOUS LABS,

        Defendant-Intervenors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ 4

INTRODUCTION ........................................................................... 6

BACKGROUND ............................................................................. 7

LEGAL STANDARD ...................................................................... 8

ARGUMENT ................................................................................. 9

I.   Granting Plaintiffs' injunction would materially alter the status quo. ............................................................................ 9

II.  Plaintiffs are not likely to succeed on the merits. ...................... 11

     A.   The Rule's incidental effect on gas appliances does not bring it within EPCA's preemptive scope. ........................... 12

     B.   This Court took *CRA* at its word. .................................... 13

     C.   Plaintiffs cannot analogize the Rule to Berkeley's building code. ....................................................................... 14

     D.   The Court expressly did *not* apply a presumption against preemption. ............................................................. 15

     E.   This Court correctly held that Congress did not intend EPCA to preempt emissions regulations. ........................... 16

III. Plaintiffs have not shown that the balance of the equities leans sharply in their favor. .......................................................... 16

     A.   Plaintiffs cannot show irreparable harm. ........................... 16

          1.   Plaintiffs have not alleged concrete harm that enforcement of Phase I of the Rule is likely to cause during the appeal. ........................................... 17

          2.   Temporarily enjoining enforcement of the Rule would not prevent Plaintiffs' alleged harms. ........... 21

          3.   Plaintiffs' delay in bringing this motion undercuts their claims of irreparable harm. ............................... 23

     B.   The balance of the equities and public interest weigh against granting an injunction. ............................................ 23

CONCLUSION ............................................................................. 26

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................ 11, 17, 19, 25

*Am. Beverage Ass'n v. City & County of San Francisco*,
    2016 WL 9184999 (N.D. Cal. June 7, 2016) ........................................ 12

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) .................................................... 17, 21

*Amazon.com Servs. LLC v. NLRB*,
    No. 2:24-CV-09564-SPG-MAA, 2025 WL 1766349 (C.D. Cal. June 9, 2025) .................................................................... 9, 23

*Baird v. Bonta*,
    81 F.4th 1036 (9th Cir. 2023) ...................................................... 16

*Beame v. Friends of the Earth*,
    434 U.S. 1310 (1977) ................................................................ 25

*California Restaurant Association v. City of Berkeley*,
    65 F.4th 1045 (2023) ................................................................ 14

*California Restaurant Association v. City of Berkeley*,
    89 F.4th 1094 (2024) ............................................................ passim

*California v. BLM*,
    286 F. Supp. 3d 1054 (N.D. Cal. 2018) ........................................ 25, 26

*Communities for a Better Envt. v. Cenco Refining Co.*,
    179 F. Supp. 2d 1128 (C.D. Cal. 2001) .......................................... 25

*Doe v. San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021) .................................................. 9, 17, 23

*FTC v. Microsoft Corp.*,
    136 F.4th 954 (9th Cir. 2025) ...................................................... 15

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ........................................................ 23

*Gilder v. PGA Tour, Inc.*,
    936 F.2d 417 (9th Cir. 1991) ........................................................ 11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) .................................................... 11, 20

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
    242 F.3d 1163 (9th Cir. 2001) .................................................. 8, 10, 12

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

*Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange,*
 182 F. Supp. 3d 1065 (E.D. Cal. 2016)..................................................10

*Native Ecosystems Council v. Kimbell,*
 2005 WL 8167434 (D. Mont. Nov. 21, 2005).........................................11

*NetChoice v. Bonta,*
 761 F. Supp. 3d 1232 (N.D. Cal. 2025) .................................................12

*Protect Our Water v. Flowers,*
 377 F. Supp. 2d 882 (E.D. Cal. 2004)..............................................11, 12

*Rowe v. N.H. Motor Transp. Ass'n,*
 552 U.S. 364 (2008) ...............................................................................16

*S. Bay United Pentecostal Church v. Newsom,*
 959 F.3d 938 (9th Cir. 2020) ...................................................................9

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs,*
 472 F.3d 1097 (9th Cir. 2006) ..........................................................25, 26

*Sierra Forest Legacy v. Rey,*
 691 F. Supp. 2d 1204 (E.D. Cal. 2010)....................................................9

*Tandon v. Newsom,*
 992 F.3d 916 (9th Cir. 2021) ...............................................................8, 9

*United States v. California,*
 444 F. Supp. 3d 1181 (E.D. Cal. 2020)..................................................14

*Villanueva-Bustillos v. Marin,*
 370 F. Supp. 3d 1083 (C.D. Cal. 2018)..................................................24

*Winter v. Nat. Res. Def. Council, Inc.,*
 555 U.S. 7 (2008) ...................................................................................16

**RULES**

Fed. R. Civ. P. 62...........................................................................................9

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

## INTRODUCTION

Plaintiffs have not met the high bar for the extraordinary relief they seek. This Court thoroughly considered and rejected Plaintiffs' preemption arguments, correctly distinguishing the Ninth Circuit's narrow decision in *California Restaurant Association v. City of Berkeley,* 89 F.4th 1094 ("*CRA*"). That decision involved a building code that explicitly regulated the quantity of natural gas appliances could use. District Rule 1146.2 sets emission standards without saying a word about fuel quantities. As the Ninth Circuit observed in *CRA*, the Energy Policy and Conservation Act ("EPCA") does not preempt every regulation that might incidentally affect gas appliances. As a result, the Ninth Circuit is likely to uphold this Court's decision on appeal.

Plaintiffs' claims of irreparable harm crumble under scrutiny. During Plaintiffs' appeal, the District will only begin enforcing Phase I of the Rule and only as to appliances in new buildings. This represents a small fraction of the units affected by the Rule: all appliances installed in new buildings over the duration of the Rule represent just 10 percent of affected units, while Phase I appliances in new buildings represent an even smaller subset of affected units. The Rule's early impact during the pendency of Plaintiffs' appeal is thus hardly likely to cause the major market disruption Plaintiffs envision.

Moreover, Plaintiffs admit that the injunction they seek will not avoid any of the harms they fear. Builders are "eliminating gas service in anticipation of the rule's taking effect." Customers are "already changing purchase decisions." By their own account, the *anticipated* effects of the Rule—not its actual enforcement—are driving these shifts. And they will continue to do so in the face of an injunction that merely delays Phase I for an unknown period, but likely no longer than several months.

Plaintiffs' delay in seeking relief underscores the weakness of their alleged harm. Six months passed between the District's adoption of Rule 1146.2

6

and Plaintiffs' lawsuit. Six more weeks elapsed between this Court's ruling and this motion. If Plaintiffs truly faced urgent, irreparable harm from the Rule's first compliance deadline, they would not have waited so long to seek relief.

But the public does face genuine irreparable harm from delay. The Rule will prevent an average of 31 premature deaths per year, along with hundreds of cases of asthma and lung cancer. Every day of delay means continued exposure to toxic emissions in a region with some of the nation's worst air quality.

Finally, Plaintiffs' motion asks this Court to *change* the status quo, not preserve it. The Rule has been in place for over a year, shaping market expectations and behavior. This Court has already upheld its validity. Granting the requested injunction would undo that settled state of affairs—precisely what Rule 62(d) forbids.

Because Plaintiffs have failed to satisfy the standard for an injunction pending appeal, this Court should deny their Motion.

## BACKGROUND

The District adopted Rule 1146.2 on June 7, 2024. Dkt. 60 at 8, Additional Material Facts ("AMF") 65. The Rule applies to large water heaters, small boilers, and process heaters. *Id.* (AMF 67). It requires these appliances to meet a NOx emission limit of zero, subject to staggered future compliance deadlines. *Id.* (AMF 70).

The Rule's first compliance deadline is January 1, 2026. Dkt. 50-2, Ex. 1 at 8. This deadline applies to appliances in "Phase I" that are installed in new buildings. *Id.* Appliances in Phase I include instantaneous water heaters with a rated heat input capacity less than or equal to 200,000 Btu per hour, and Type 1 units, which are water heaters, boilers, and process heaters with a rated heat input capacity less than or equal to 400,000 Btu per hour. Dkt. 50-2, Ex. 1 at 7-8. This category excludes water heaters that are subject to the District's Rule 1121, which are those with rated heat input capacities less than 75,000

7

Btu per hour. *Id.*; Dkt. 60 at 9 (AMF 73). Also excluded from this category subject to the first compliance deadline are pool heaters, high temperature units, and Type 2 Units, which are water heaters, boilers, and process heaters with a rated heat input capacity greater than 400,000 Btu per hour. *Id.*

A full six months after the District adopted its Rule in June 2024, Plaintiffs filed their complaint in this case on December 5, 2024. Dkt. 1. Plaintiffs never sought a preliminary injunction in this case. After full briefing, on July 18, 2025 this Court granted the District's cross-motion for summary judgment and denied Plaintiffs' motion for summary judgment, declaratory relief, and permanent injunction. Dkt. 79; Dkt. 81 at 10.

Three weeks after the Court's order, Plaintiffs filed their notice of appeal, on August 8, 2025. Dkt. 83. The Court of Appeals set a briefing schedule on August 13, 2025, in which Plaintiffs' Opening Brief is due September 22, 2025, and the District's and Defendant-Intervenors' Answering Briefs are due on October 22, 2025. Dkt. 84. As of the date of the filing of this opposition, Plaintiffs have not requested an expedited briefing or hearing schedule for the appeal.

Six weeks after the Court's order granting the District's motion for summary judgment, Plaintiffs filed this motion.

## LEGAL STANDARD

An injunction pending appeal under Federal Rule of Civil Procedure 62(d) is a "drastic and extraordinary remedy" requiring "a clear showing that the plaintiff is entitled to such relief." *Tandon v. Newsom*, 992 F.3d 916, 928 (9th Cir. 2021) (citations omitted). A district court's jurisdiction to issue such an injunction is limited to "preserv[ing] the status quo during the pendency of an appeal." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("*NRDC*"). Thus, it "may not materially alter the status of the

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

1  case on appeal." *Id.* Rule 62(d) "does not restore jurisdiction to the district court
2  to adjudicate anew the merits of the case."[1] *Id.*

3      When considering a motion for an injunction pending appeal, this Court
4  applies the test used for preliminary injunctions. *Tandon*, 992 F.3d at 919.
5  Plaintiffs must prove (1) they are likely to succeed on the merits, (2) they are
6  likely to suffer irreparable harm absent the injunction, (3) the balance of equi-
7  ties favors Plaintiffs, and (4) the injunction is in the public interest. *Id.*; *see*
8  *also S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir.
9  2020). If "the government is the non-moving party, the last two factors—the
10  balance of equities and public interest—merge." *Amazon.com Servs. LLC v.*
11  *NLRB*, No. 2:24-CV-09564-SPG-MAA, 2025 WL 1766349, at *2 (C.D. Cal. June
12  9, 2025). If Plaintiffs "fail[] to meet [their] burden on any of the four require-
13  ments for injunctive relief, [their] request must be denied." *Sierra Forest*
14  *Legacy v. Rey*, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010).

15      An injunction may also be appropriate if Plaintiffs can show "serious
16  questions going to the merits," *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th
17  1173, 1176–77 (9th Cir. 2021), but only if the balance of hardships "tips
18  sharply" in their favor. *Id.* Even if the moving party shows serious questions
19  on the merits, its "failure to establish a likelihood of irreparable harm warrants
20  denial of injunctive relief." *Amazon.com*, 2025 WL 1766349, at *2.

## ARGUMENT

### I.  Granting Plaintiffs' injunction would materially alter the status quo.

    As an initial matter, Plaintiffs improperly seek to change—rather than
preserve—the status quo. During an appeal, the district court retains jurisdic-
tion to issue an injunction only "to preserve the status quo"; it "may not

---

[1] *NRDC* refers to Rule 62(c), which is now codified in Rule 62(d) following a
2018 Rule revision. Fed. R. Civ. P. 62, Advisory Committee Notes.

materially alter the status of the case on appeal." *NRDC,* 242 F.3d at 1166 (citations omitted). Courts measure the status quo "at the time the appeal is filed," not before the litigation is filed. *Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1072 (E.D. Cal. 2016). Here the status quo at the time of Plaintiffs' appeal reflects that the Rule, adopted in June 2024, had been in place for over a year and has been upheld by this Court. Dkt. 50-2, Ex. 2 at 28; Dkt. 81. As early of April 2025, Plaintiffs' declarations revealed that the market had already shifted in response to the Rule's existence. Dkt. 50-6 at ¶ 5 ("Already in the homebuilding market, . . . the industry is moving exclusively to electric heat pumps, in anticipation of the District's zero-NOx rule."); Dkt. 50-7 at ¶ 4 (same). Plaintiffs' declarations in support of the instant motion simply underscore that they and other market participants did not wait for the Rule's first compliance deadline, but rather have been changing their behavior for months in anticipation of its require-ments. *See, e.g.*, Mot. at 23-24; Dkt. 85-3 at 5-6; Dkt. 85-4, at 5 (construction projects "are now being designed and built without gas service or appliances, and often without gas infrastructure at all, in preparation for compliance with the District's zero-NOx rule"). This transition time for regulated entities is part of the Rule's design and operation. *See, e.g.*, Dkt. 50-2, Ex. 2 at 31 ("It is im-portant to adopt future effective zero-emission standards . . . [to] send[] a strong market signal and provide[] certainty to manufacturers . . ."). The period before the Phase I compliance deadline on January 2026 thus does not repre-sent a world *without* the challenged Rule. Enjoining enforcement of the Rule would thus "materially alter the status of the case on appeal." *NRDC*, 242 F.3d at 1166.

Plaintiffs mischaracterize the status quo as "the NOx rules in place for many years *before the District adopted the zero-NOx rule* and that are still in place today." Mot. at 28 (emphasis added). Their view of the status quo is a

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

hypothetical world in which the Rule was never adopted in June 2024. This squarely conflicts with the Ninth Circuit's holding in *NRDC*.

## II. Plaintiffs are not likely to succeed on the merits.

This Court has already firmly rejected Plaintiffs' claim on the merits. Plaintiffs thus try to avoid the well-established likelihood-of-success standard for injunctions, contending they have raised "serious questions" on the merits. Motion for Injunction Pending Appeal, Dkt. 85-1 ("Mot.") at 11, 13, 18 (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Trying to escape the frying pan, they fall into the fire. Even if they could show serious merits questions, they cannot make the requisite "stronger showing of irreparable harm" essential to this "sliding scale" test. *All. for Wild Rockies*, 632 F.3d at 1131; *see infra* Section III. Indeed, Plaintiffs' own cases are consistent in illustrating the high showing of irreparable harm that a party must make in order to use the "serious questions" test. *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1190 (9th Cir. 2022) (plaintiff entitled to preliminary injunction under "serious questions" test because the balance of the hardships tipped "sharply" in its favor where plaintiff would have "no products to sell" and its "entire business" was at risk without an injunction); *Native Ecosystems Council v. Kimbell*, 2005 WL 8167434, at *1-2 (D. Mont. Nov. 21, 2005) (granting injunction pending appeal where the logging project at issue could otherwise be "substantially completed" before the Ninth Circuit had considered the appeal, causing irreparable harm).

Regardless, Plaintiffs have failed to show a serious merits question—one that is "substantial, difficult, and doubtful." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). Plaintiffs' cited cases do not support their contention that this case raises difficult questions justifying an injunction. *See Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (*denying* an injunction pending appeal where plaintiffs had not pointed out any reason the district

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

court erred, and because "review of whether an agency decision violated environmental statutes does not present novel legal issues"). In many of Plaintiffs' cases finding a serious question justifying an injunction pending appeal, the courts' original decisions—notably, on preliminary injunction motions, rather than on fully-briefed dispositive motions—had noted the existence of a difficult merits question. *See, e.g.*, *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1236 (N.D. Cal. 2025) (granting injunction pending appeal where the court's order partially denying a preliminary injunction had "detailed" the "novel, difficult, and important" First Amendment issues raised in the case); *Am. Beverage Ass'n v. City & County of San Francisco*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016) (district court granted injunction pending appeal of its order denying preliminary injunction, but only after acknowledging in the original order that "there is at least a close question" on the merits). Here, by contrast, this Court's opinion on fully-briefed cross-motions for summary judgment reveals no such difficult issues. The Court's decision was well-reasoned, supported by the plain meaning of the statute, and consistent with the Ninth Circuit's decision in *CRA*. The Ninth Circuit is thus highly likely to uphold that decision.

### A. The Rule's incidental effect on gas appliances does not bring it within EPCA's preemptive scope.

Plaintiffs repeat the contention from their motion for summary judgment that the Rule is preempted because it effectively prevents the use of gas appliances. Mot. at 13; *see* Dkt. 50-1 at 24. Because this Court already decided this issue, it should not revisit it here. *See NRDC*, 242 F.3d at 1166 (Rule 62(d) does not restore jurisdiction to the district court to re-adjudicate the merits); *see also Protect Our Water*, 377 F. Supp. 2d at 884 (denying plaintiffs' motion for injunction pending appeal after denying their motion for summary judgment, explaining that plaintiffs had not specified any factual error or rationale for concluding that the court's determination was incorrect).

1    This Court correctly rejected Plaintiffs' argument, concluding that while
2    the Rule has the effect of preventing the use of some gas appliances, it never-
3    theless falls outside the scope of EPCA preemption. Dkt. 81 at 6. As the Court
4    correctly observed, *CRA* did not hold that EPCA preempts any regulation that
5    might have the incidental effect of preventing the use of covered gas appli-
6    ances. Dkt. 81 at 9. The *CRA* court expressly stated that a state or local
7    government decision not to extend gas utility service would preclude the use of
8    gas appliances, and yet such a decision would have only an "incidental" effect
9    on appliance energy use. 89 F.4th at 1103; *id.* at 1117 (Baker, J., concurring).
10   Consistent with *CRA*, this Court correctly held that EPCA would not preempt
11   a prohibition of gas appliances that does *not* concern the quantity of natural
12   gas an appliance uses. Dkt. 81 at 6.

### B.    This Court took *CRA* at its word.

14       As this Court correctly recognized, the Ninth Circuit repeatedly empha-
15   sized the limited reach of its decision in *CRA*. *See* Dkt. 81 at 8 (citing 89 F.4th
16   at 1106 (the Ninth Circuit "characterized its opinion as 'a narrow opinion about
17   Berkeley's building codes'")). Ignoring that expressly narrow scope, Plaintiffs
18   argue this Court erred in viewing *CRA* as limited to a building code that phys-
19   ically precluded the use of natural gas.[2] Mot. at 14 (citing Dkt. 81 at 8-9).
20   Because *CRA* states that EPCA's preemptive scope "at least" includes building
21   codes, Plaintiffs contend that *CRA* stands for the proposition that any "rules
22   that achieve the same prohibited result" are preempted. *Id*. at 14-15. The
23   court's single use of the phrase "at least" to imply circumstances beyond those
24   before the court hardly effects the dramatic expansion of the court's holding
25   that Plaintiffs propose. *Cf. United States v. California*, 444 F. Supp. 3d 1181,

---

[2] Plaintiffs have never offered their own theory for the Ninth Circuit's repeated emphasis on the limits of its decision.

1192 (E.D. Cal. 2020) ("stray comment" beyond the facts of the case was not an aspect of the holding).

*CRA* held that EPCA preempts a building code that regulates the quantity of energy available for use by appliances as surely as it preempts regulation of the design of appliances to achieve that result. It was "[o]f critical importance" to the Ninth Circuit that EPCA expressly includes building codes within its preemptive scope.[3] 89 F.4th at 1101. The court's holding was accordingly "limited" to "conclud[ing] only that EPCA applies to building codes and that Berkeley's Ordinance falls with[in] the Act's preemptive scope." *Id.* In particular, the court clarified that EPCA preemption will not extend to areas of regulation about which the statute "has little, if anything, to say," such as utility regulation of natural gas. *Id.* at 1119 (Baker, J., concurring); *id.* at 1103. By contrast, since EPCA "has everything to say about 'State or local building codes," those fall within the statute's preemptive scope. *Id.* at 1119 (Baker, J., concurring). Because EPCA says nothing about emission standards, this Court correctly followed the Ninth Circuit's reasoning in concluding that the statute's silence on these standards shows that Congress did not intend to preempt them. Dkt. 81 at 9 ("[W]hile the EPCA specifically preempts building codes concerning energy use . . . it fails to mention air pollution regulations . . . .").

## C. Plaintiffs cannot analogize the Rule to Berkeley's building code.

Plaintiffs contend that the Ninth Circuit rejected this Court's remaining reasons for distinguishing the Rule from Berkeley's ordinance. Mot. at 15. Not so. Plaintiffs' arguments boil down to an attempt to broaden the "narrow" *CRA*

---

[3] The court's recurring discussion of building codes was hardly incidental to its holding. In amending the opinion in response to the petition for rehearing, the court added 10 references to "building code(s)." *Compare* 65 F.4th 1045 (2023) *with* 89 F.4th 1094 (2024).

14

holding so that it applies to any regulation that incidentally affects the use of gas appliances. *See id.* at 15-16. As discussed above, the Ninth Circuit was careful to limit its decision and to ensure that EPCA preemption would not extend to regulations with only an incidental effect on appliance energy use. *See* 89 F.4th at 1103, 1117 (Baker, J., concurring).

Plaintiffs' facile comparisons disregard a fundamental difference between the two regulations. *See* Mot. at 15-17. The court in *CRA* held that the ordinance fell within EPCA's scope because, on its face, it regulated the quantity of natural gas appliances could use. 89 F.4th at 1101-02. By contrast, this Court correctly held that the Rule's NOx emission standard does not concern the "energy use" of appliances because it has nothing to do with the "quantity" of natural gas or any other fuel an appliance uses. Dkt. 81 at 8-9. The Rule "says nothing about the quantity of gas an appliance may use." *Id.* at 9.

### D.  The Court expressly did *not* apply a presumption against preemption.

Although recognizing that the Court "acknowledg[ed] that there is no presumption against preemption in express preemption cases," Plaintiffs refuse to take the Court at its word. Mot. at 17. This Court expressly stated that it was following the *CRA* court's directive *not* to apply a presumption against preemption and instead followed the Ninth Circuit's instruction to "look to the 'text, structure and context' of the EPCA" in applying its express preemption clause. Dkt. 81 at 7 (quoting *CRA*, 89 F.4th at 1101). That the Court did not repeat that injunction throughout its analysis, as Plaintiffs apparently desire, "does not mean that the district court thereby ignored" it.[4] *FTC v. Microsoft Corp.*, 136 F.4th 954, 966 (9th Cir. 2025).

---

[4] This is another instance of Plaintiffs' failure to credit clear statements in judicial decisions. Just as they ignore the repeated, explicit limitations in the
(footnote continued on next page)

### E.    This Court correctly held that Congress did not intend EPCA to preempt emissions regulations.

According to Plaintiffs, EPCA's silence on the topic of emissions regulations shows that Congress did not intend to create an exception for such regulations. Mot. at 18 (citing *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373-74 (2008)). This argument is another repeat from their briefing on their motion for summary judgment that this Court property rejected. Dkt. 81 at 9 (noting EPCA specifically preempts building codes concerning energy use but fails to mention air pollutant emission standards, "despite the fact that the [Clean Air Act] had been in place for many years at the time the EPCA was enacted and amended").

As noted above, this Court's opinion follows *CRA*, which explained that EPCA's silence on topics like regulation of utilities' natural gas distribution, unlike its express treatment of building codes, suggested that preemption did not extend to the unmentioned regulatory fields. 89 F.4th at 1117-18 (Baker, J., concurring). The same is true of its silence on emissions standards.

### III.    Plaintiffs have not shown that the balance of the equities leans sharply in their favor

Because Plaintiffs have not shown a likelihood of success, or even serious questions, on the merits, this Court may end its analysis there. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Regardless, Plaintiffs also fail to show irreparable harm or that the balance of equities *strongly* favors them.

### A.    Plaintiffs cannot show irreparable harm.

Plaintiffs have failed to show that enforcement of Phase I of the Rule will cause them irreparable harm during the short-lived appeal. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) (plaintiffs must demonstrate that the claimed harms are both "likely" to occur and are imminent). Without that,

---

*CRA* decision, they do not accept that this Court meant what it said in recognizing that no presumption against preemption applies here.

a court must deny injunctive relief. *Doe*, 19 F.4th at 1181; *see also All. for the Wild Rockies*, 632 F.3d at 1135.

### 1. Plaintiffs have not alleged concrete harm that enforcement of Phase I of the Rule is likely to cause during the appeal.

Plaintiffs' alleged harms from enforcement of Phase I of the Rule are too vague and speculative to establish irreparable harm. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009) (holding that harm that is "merely speculative . . . will not support injunctive relief"). Plaintiffs "must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *All. for Wild Rockies*, 632 F.3d at 1131.

Here, Plaintiffs make vague and exaggerated claims about the effects of Phase I enforcement, which are speculative at best. *See, e.g.*, Mot. at 20, 21, 23; Dkt. 85-3 at 7 (contending that Noritz's decision whether to move its headquarters out of California is tied to the Rule and that Noritz's business in "the California market" will be affected); Dkt. 85-5 at 4 (asserting that the Rule may lead to "all new constructions" being built "without any gas infrastructure at all"); Dkt. 85-7 at 5-6 (claiming that the Rule may force hotels to go "all electric," leading to financial tradeoffs "that may make all electric hotels less valued than multi-fuel hotels"). Because they have failed to establish *likely* harm stemming from Phase I of the Rule, they are not entitled to injunctive relief.

First, Plaintiffs fail to limit their sweeping claims about the impacts of the Rule's enforcement to Phase I, which they admit is the only aspect of the Rule that will be enforced pending appeal. Mot. at 19, 26. Plaintiffs repeatedly allege harms attributable to later stages of the Rule. *See, e.g.*, Mot. at 24 (claiming that the Rule "bans the sale or installation of gas tankless water heaters, boilers, and process heaters after January 1, 2026"); Dkt. 85-2 at 6 (asserting that Rinnai will be forced to "abandon" sales of "gas tankless and boiler

17

products" on January 1, 2026); Dkt. 85-3 at 4-5 (referring to the Rule as a "ban on [Noritz's] appliances").

These harms will not materialize during the few months of the appeal. Phase I of the Rule applies only to a limited subset of appliances and only if installed with the construction of new buildings. *See supra* Background. Of the appliances affected by the Rule over the coming decades, the District estimates only 10 percent will be first-time installations in new buildings rather than replacements of old appliances. Dkt. 50-2, Ex. 2 at 291. An even smaller subset of that 10 percent will be affected by this first phase of the Rule; other appliances installed in new buildings are only covered by subsequent phases. Dkt. 50-2, Ex. 1 at 8. And only a portion of that subset of the 10 percent could be expected to be installed during the several months while the appeal is likely to be pending.[5] *Id.*; *see also* Dkt. 50-2, Ex. 2 at 291. The limited reach of the Rule over the next year will hardly trigger the market shock Plaintiffs envision.

Indeed, because the Rule's compliance deadlines are staggered based on the type and capacity of appliances and whether they will be installed in new or existing buildings, Plaintiffs' appeal will have been resolved long before many Plaintiffs are even affected by the Rule. Appliances in existing buildings will not need to comply with the Rule until 2029 at the earliest and in many cases not until a decade or more thereafter. Dkt. 60 at 9 (AMF 74, 75). The Rule also includes alternative compliance options to delay the replacement deadline for existing appliances, including extensions of up to five years if utility upgrades are needed to operate zero-emission units. Dkt. 60 at 10 (AMF 78). Whatever the consequences of the Rule's gradual roll-out may be in the

---

[5] Plaintiffs admit that any injunction would likely only be in effect for "a few months to a year," Mot. at 8, and therefore would impact only Phase I. *See id.* at 26, 19 ("The delay would affect only Phase I . . . Phase II does not start until January 1, 2028.").

18

coming decades, they cannot justify an injunction that will only be in place for "a few months to a year." Mot. at 8.

Second, some of Plaintiffs assert harms will not be caused even by later phases of the Rule. For example, Plaintiffs allege harms related to gas stoves and piping, despite the fact that the Rule does not apply to either gas stoves or gas piping. *See* Dkt. 85-4 at 4 (claiming the Rule will cause pipefitters to lose work); *id.* at 5 (attributing the fact that a U.C. Riverside construction project called for electric stoves to the Rule); Dkt. 85-7 at 6 (claiming the Rule will impact hotels' "ability to offer amenities, because without gas piping, it becomes difficult to operate heated pools and spas and to have fireplaces or firepits"). Similarly, Plaintiffs allege that the Rule will "create difficult financial tradeoffs [that] may make all electric hotels less valued than multi-fuel hotels," Dkt. 85-7 at 6, despite the fact that the Rule does not require hotels to be built all-electric. Plaintiffs do not explain or substantiate these inapt assertions of harm. *See* Mot. at 24. Accordingly, none of these claims explain how the limited Phase I requirements could cause such deep disruptions, and thus none "establish that irreparable harm is *likely*, not just possible." *All. for Wild Rockies*, 632 F.3d at 1131.

Nor have Plaintiffs shown that the Rule will cause significant harm to market share or consumer goodwill for the short duration of the appeal. Although they insist they will lose significant market share, *see* Mot. at 20, Plaintiffs Rinnai and Noritz are major industry players nationwide and sell a variety of products unaffected by Phase I—including heat pumps, which comply with the Rule and thus may see an uptick in sales when the Rule is implemented. Dkt. 85-2 at 4; Dkt. 85-3 at 4.

The scale of Rinnai's and Noritz's enterprises—including outside the District—undermines their claims that implementation of Phase I for a matter of months would materially damage their overall market share. Rinnai sells

19

approximately 35 percent of all gas tankless water heaters in the United States, while Noritz is "a leading manufacturer and seller" that sells some 10 percent of all gas tankless water heaters in the United States. Dkt. 12 at ¶¶ 10, 12. Rinnai and Noritz show only that the Rule may temporarily affect the sales of some of their products within the District. Notably, they do not disclose what portion of their sales are units that will be installed in new construction within the District—the only portion of sales that could be affected during the appeal. *See* Dkts. 85-2, 85-3. Plaintiffs also fail to mention the extent to which their sales of electric heat pumps might offset any alleged injury, further undermining their claim of irreparable harm. The uncertain and likely minimal harm that Plaintiffs allege falls far short of the serious irreparable harm that courts find sufficient to justify an injunction pending appeal. *See, e.g.*, *hiQ Labs, Inc.*, 31 F.4th at 1189 (hiQ established that the balance of hardships tipped decidedly in its favor where its "entire business" was at risk and it would have "no products to sell" absent the injunction).

Plaintiffs repeatedly insist that the Rule will cause them to lose customer goodwill. Mot. at 20, 22; Dkt. 85-2 at 7; Dkt. 85-3 at 7. But Phase I will equally affect *all* sellers of covered products; if Phase I goes into effect, *no* covered appliances will be sold for installation in new construction. Rather than Plaintiffs in particular losing goodwill—presumably to competing suppliers—all equally situated market participants will be affected in the same way. *See, e.g.*, Dkt. 85-3 at 5 (explaining that the entire homebuilding industry is responding to the Rule's requirements).

Finally, given Plaintiffs' repeated emphasis on the substantial lead time necessary for construction projects, their claims that the Rule would disrupt business by forcing builders to "change plans midstream" ring hollow. Dkt. 85-7 at 5; Mot. at 21, 25. They assert homebuilding projects have lead-times ranging from six months to a year, Dkt. 85-3 at 5, and that it can take between

seven and 13 months to complete a single-family home. Dkt. 85-8 at 5. For that reason, they acknowledge that builders are *already* complying with the Rule's requirements "in preparation for compliance with the District's zero-NOx rule." Dkt. 85-4 at 5, 6; Dkt. 85-8 at 5.

Unable otherwise to show non-speculative harm caused by the Rule, Plaintiffs insist that they will be irreparably harmed by being "forced to comply" with a Rule that they believe is preempted. *Id.* at 22 (citing *Am. Trucking*, 559 F.3d at 1058-59). But *American Trucking* is distinguishable. In that case, both the District Court and Ninth Circuit found that plaintiffs were highly likely to succeed on the merits, because the challenged provisions were clearly preempted. *Am. Trucking*, 559 F.3d at 1053. Here, however, there is no reason to believe that plaintiffs are likely to succeed in their claim on appeal that EPCA preempts the Rule. On the contrary, this Court has already determined that the Rule is not preempted. Absent a strong likelihood that the Rule will be found unconstitutional, Plaintiffs will not be irreparably harmed by being forced to comply. *Id*. at 1052 (holding that irreparable harm must be *likely*, rather than merely possible).

### 2. Temporarily enjoining enforcement of the Rule would not prevent Plaintiffs' alleged harms.

Even if the harms Plaintiffs allege could materialize, enjoining enforcement of the Rule for the next several months to a year would not prevent them. Plaintiffs admit that developers are already "eliminating gas service in anticipation of the rule's taking effect." Mot. at 23-24. Plaintiff Noritz claims, for instance, that it is "*already* suffering several distinct types of harm from the zero-NOx rule," including lost sales, because "the industry is moving exclusively to electric heat pumps, in anticipation of the District's zero-NOx rule." Dkt. 85-3 at 5 (emphasis added). Indeed, "over the past year or so developers have started specifying electric heat pumps . . . instead of the traditional gas-

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

1    fired units." Dkt. 85-4 at 5. Because of the substantial lead-times required,

2    Dkt. 85-3 at 5, residential construction projects "are now being designed and

3    built without gas service or appliances, and often without gas infrastructure

4    at all, in *preparation* for compliance" with the Rule. Dkt. 85-4 at 5 (emphasis

5    added). Customers, too, "are already changing purchase decisions for the water

6    heaters they plan to install," behaviors that "can be explained only by the im-

7    pact of the impending zero-NOX rule." Dkt. 85-3 at 6.

8         By Plaintiffs' own admission, *anticipation* of the Rule's enforcement—not

9    the actual implementation of Phase I in 2026—is already triggering the market

10   changes that Plaintiffs complain of. The cause of Plaintiffs' supposed injury is

11   not the Rule's compliance deadline on January 1, 2026, but the prospect that

12   the District may enforce the Rule at all, even if it is temporarily paused in

13   litigation. The market restructuring Plaintiffs claim has already begun will

14   continue in anticipation of the Rule's enforcement. Mot. at 23-24. That reality

15   will not change, whether or not enforcement is enjoined for some part of a year.

16   Plaintiffs' assertion that this situation will "deteriorate" once Phase I is imple-

17   mented is pure speculation. *Id.* at 24; Dkt. 85-4 at 5.

18        Likewise, temporarily enjoining Phase I's enforcement is unlikely to in-

19   fluence the "irrevocable decisions" builders are making about which appliances

20   to install, given that they already anticipate the Rule's eventual enforcement.

21   As Plaintiffs note, "[d]ue to lead times . . . builders must already comply with

22   the rule's requirements." Dkt. 85-8 at 5. Thus builders are already "mak[ing]

23   irrevocable decisions on which appliances and HVAC equipment to install." *Id.*

24        Plaintiffs complain that if the Rule is found preempted, "it will not be

25   easy to pivot back to gas appliances or infrastructure." Dkt. 85-7 at 6. But nor

26   will it be easy for landowners to replace noncompliant appliances with compli-

27   ant ones as required by later phases of the Rule if the Rule is ultimately upheld

28   on appeal. Despite Plaintiffs' unfounded hope that an injunction will lead

22

builders to resume purchasing noncompliant appliances over the next several
months, Dkt. 85-3 at 5, builders are unlikely to move forward with such units
in reliance on an injunction that could be dissolved within the next year.

### 3. Plaintiffs' delay in bringing this motion undercuts their claims of irreparable harm.

Plaintiffs' delay in both filing this lawsuit and bringing this motion fur-
ther undermines their claims of irreparable harm. Plaintiffs waited six months
after the Rule was adopted to file their suit, Dkt. 1, waited another two weeks
to serve the District, Dkt. 20, and then after judgment, waited nearly six more
weeks to file this motion. Such delay shows a lack of urgency, undercutting the
claim of irreparable harm. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th
Cir. 2015). Moreover, unlike the vast majority of cases involving motions for
injunctions pending appeal, Plaintiffs never sought a preliminary injunction
from this Court.

Had the need for injunctive relief truly been urgent, Plaintiffs would
surely have filed suit and sought an injunction much sooner. Having dragged
their feet so far in this litigation, they cannot now claim harm from enforce-
ment of the Rule for a few months to a year pending resolution of their appeal.

\*  \*  \*

Plaintiffs' "failure to demonstrate a likelihood of irreparable harm fore-
closes their requested injunctive relief." *Amazon.com*, 2025 WL 1766349, at \*3.
As such, the Court may deny Plaintiffs' injunction on this basis alone.

### B. The balance of the equities and public interest weigh against granting an injunction.

Even if Plaintiffs could show irreparable harm, an injunction cannot is-
sue unless the balance of equities "tips sharply" in their favor. *Doe*, 19 F.4th at
1176–77. Where the opposing party is the government, this question merges
with the question of whether granting the injunction is in the public interest.
*Amazon.com*, 2025 WL 1766349, at \*2. Here, granting an injunction would

1    unequivocally harm the public interest, while Plaintiffs have failed to establish

2    that they will be irreparably harmed without such an injunction. Accordingly,

3    the balance of the equities strongly favors the District.

4         The public faces imminent and irreparable harm from the injunction

5    Plaintiffs seek. Plaintiffs blithely assert that the District will suffer "no appre-

6    ciable harm" from the injunction because a delay would not economically

7    burden the District or constrain consumer choice. Mot. at 19, 25. They entirely

8    neglect the harm to public health from enjoining enforcement of the Rule.

9         An injunction would cause irreparable injury to the environment and to

10   public health in the Basin, harming the Basin's air quality and contributing to

11   the Basin's nonattainment with federal ozone standards. NOx are toxic, reac-

12   tive gases that directly endanger human health and the environment. Dkt. 60

13   at 3 (AMF 41); Dkt. 81 at 2. They can also react with volatile organic com-

14   pounds in the presence of sunlight to form ozone. Dkt. 60 at 3 (AMF 40).

15   Appliances covered by the Rule currently collectively generate approximately

16   5.6 tons of NOx per day in the Basin. *Id.* at 5 (AMF 47-48). The Basin continues

17   to suffer from some of the worst air quality in the nation, *id.* at 4 (AMF 42), is

18   in "extreme" nonattainment for several federal ozone standards, and has the

19   highest ozone levels nationwide. *Id.*

20        The Rule's emission reductions are essential to the District's attainment

21   of ozone standards, and to avoiding premature deaths and other adverse health

22   impacts. The Rule is projected to prevent premature deaths. Dkt. 56-1 at 5.

23   Death is clearly irreparable harm. *Villanueva-Bustillos v. Marin*, 370 F. Supp.

24   3d 1083, 1090 (C.D. Cal. 2018). The Rule will also prevent new onset cases of

25   asthma and lung cancer, and will reduce asthma symptoms, cardiac and res-

26   piratory illness symptoms, and emergency room visits due to respiratory

27   illness, among various other health impacts. Dkt. 56-1 at 5. The public interest

28

DEF.'S OPP. TO MOTION FOR INJUNCTION PENDING APPEAL
Case No. 2:24-cv-10482 PA (PDx)

clearly favors preventing such premature death and health impacts, not accelerating them.

Plaintiffs attempt to downplay the Rule's benefits as "minimal," characterizing the NOx reductions from Phase I as "insignificant" because "only 0.39 tons per day" in NOx emission reductions by 2037 would be attributable to Phase I appliances. Mot. at 26. But this argument ignores that air pollution is "incremental in nature," and once "such pollutants are emitted, they cannot be removed." *California v. BLM*, 286 F. Supp. 3d 1054, 1074 (N.D. Cal. 2018). Indeed, several courts "have found that increased air pollution can constitute irreparable harm," *id.*, even for a short period of time, *see, e.g.*, *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313–14 (1977) (finding that air pollution during a two-month period caused a concrete harm). Plaintiffs do not acknowledge that the Rule's first compliance deadline will prevent *new* emission sources from being added to the Basin, which is already over-burdened, bringing the Basin even further out of attainment. *See* Dkt. 50-2, Ex. 2 at 28-29. By contrast, allowing the District to enforce its Rule will prevent these new sources of emissions from being installed, thereby avoiding decades of pollution and health impacts they would otherwise cause.

Plaintiffs also ignore the Rule's salutary impact on air quality, despite the fact that harm to the environment constitutes irreparable harm. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). Here, the public interest clearly lies in avoiding that irreparable harm. *See also All. for the Wild Rockies*, 632 F.3d at 1138 (recognizing the "well-established 'public interest in . . . avoiding irreparable environmental injury'"). Environmental injuries are typically irreparable, because they cannot be adequately remedied by money damages and are often permanent. *Communities for a Better Envt. v. Cenco Refining Co.*, 179 F. Supp. 2d 1128, 1148 (C.D. Cal. 2001) (discussing harm from emission of air pollutants), *aff'd* 35 Fed.

Appx. 508 (9th Cir. 2002). Thus, "the public interest strongly favors preventing environmental harm." *Se. Alaska Conservation Council*, 472 F.3d at 1101.

If Plaintiffs' injunction is granted, irreparable harm to the environment and public health is certain. *See California v. BLM*, 286 F. Supp. 3d at 1076 (noting that unlike economic loss, detrimental effects on public health "cannot be recovered"). If it is denied, Plaintiffs will suffer only temporary and modest economic harm. The balance of the equities clearly favors the District. The Court should therefore deny Plaintiffs' injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion.

DATED:  Sept. 8, 2025          SHUTE, MIHALY & WEINBERGER LLP

By: _____ /s/Matthew D. Zinn _____
MATTHEW D. ZINN
LAUREN M. TARPEY
RYAN K. GALLAGHER

Attorneys for Defendant South Coast Air Quality Management District