ADRIANO L. MARTINEZ (SBN 237152)
CANDICE L. YOUNGBLOOD (SBN 328843)
Earthjustice
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
amartinez@earthjustice.org
cyoungblood@earthjustice.org
Tel: (415) 217-2000 / Fax: (415) 217-2040

*Counsel for Defendant-Intervenors*
*People's Collective for Environmental Justice,*
*Sierra Club, and Industrious Labs*

(List of Counsel continued on next page)

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RINNAI AMERICA CORP., et al., <br> Plaintiff, <br><br> v. <br><br> SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, <br> Defendant, <br><br> and <br><br> PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, et al., <br> Defendant-Intervenors. | Civ. No. 2:24-cv-10482 PA (PDx) <br><br> **DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL** <br><br> Date: Sept. 29, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 9A <br><br> Honorable Percy Anderson <br> United States District Judge |

NIHAL SHRINATH (SBN 327921)
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
nihal.shrinath@sierraclub.org
Tel: (415) 977-5566

JAMES A. DENNISON (*Pro Hac Vice*)
Sierra Club
1650 38th St., Suite 103W
Boulder, CO 80301
jim.dennison@sierraclub.org
Tel: (435) 232-5784

*Counsel for Defendant-Intervenor
Sierra Club*

SEAN H. DONAHUE (SBN 264284)
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, DC 20003
sean@donahuegoldberg.com
Tel: (202) 277-7085

*Counsel for Defendant-Intervenor
Industrious Labs*

DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL (Civ. No. 2:24-cv-10482 PA (PDx))

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................6

BACKGROUND .........................................................................................8

I.    THE SOUTH COAST'S AIR QUALITY PROBLEM..................................8

II.   THE BOILER RULE & ADMINISTRATIVE PROCESS..........................9

III.  THIS LITIGATION.............................................................................11

STANDARD OF REVIEW ..........................................................................11

ARGUMENT ..........................................................................................12

I.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF
      THEIR APPEAL. ...........................................................................12

II.   THE BALANCE OF HARDSHIPS DOES NOT JUSTIFY AN
      INJUNCTION PENDING APPEAL......................................................15

III.  THE PUBLIC INTEREST DOES NOT FAVOR ENJOINING THE
      BOILER RULE. ............................................................................20

CONCLUSION ........................................................................................20

DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL (Civ. No. 2:24-cv-10482 PA (PDx))

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ............................................................12

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,
    2016 WL 9184999 (N.D. Cal. June 7, 2016)......................................13

*Ass'n of Contracting Plumbers of the City of New York v. City of New
    York*,
    2025 WL 843619 (S.D.N.Y. March 18, 2025)...............................7, 14

*Bankhurst v. Wolf Appliance, Inc.*,
    2024 WL 3273322, at *3 (W.D. Wisc. July 2, 2024).........................14

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985)...........................................................11

*Drake v. Haier US Appliance Solutions Inc.*,
    2024 WL 590597 (N.D. Cal. Feb. 13, 2024).....................................14

*Edmo v. Corazon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) .............................................................15

*Feldman v. Ariz. Sec'y of State's Off.*,
    843 F.3d 366 (9th Cir. 2016) .............................................................12

*Flores v. Barr*,
    977 F.3d 742 (9th Cir. 2020) .............................................................12

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) .............................................................12

*Hendrick v. BSH Home Appliances Corp.*,
    2024 WL 2190984 (C.D. Cal. May 14, 2024)...................................14

*League of Wilderness Def./Blue Mountains Biodiversity Project v.
    Connaughton*,
    752 F.3d 755 (9th Cir. 2014) .......................................................19, 20

4

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ..........................................................11, 13

*MediNatura, Inc. v. Food & Drug Admin.*,
  2021 WL 1025835 (D.D.C. Mar. 16, 2021) ......................................13

*NetChoice v. Bonta*,
  761 F. Supp. 3d 1232 (N.D. Cal. 2025)..................................13, 14, 15

*Nken v. Holder*,
  556 U.S. 418 (2009).............................................................................11

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,
  2021 WL 945237 (C.D. Cal. Feb. 22, 2021) ......................................13

**Statutes**

42 U.S.C. § 6297(c) ........................................................................................6

Cal. Health & Safety Code § 39002 ..............................................................9

Cal. Health & Safety Code § 40000 ..............................................................9

Cal. Health & Safety Code §40406 ...............................................................9

Cal. Health & Safety Code § 40460 ..............................................................9

Cal. Health & Safety Code § 40461 ..............................................................9

Cal. Health & Safety Code § 40462 ..............................................................9

**Regulations**

40 C.F.R. § 81.305 .....................................................................................8, 9

69 Fed. Reg. 23,858 (April 30, 2004)........................................................8, 9

70 Fed. Reg. 65,984 (Nov. 1, 2005).............................................................9

85 Fed. Reg. 57,733 (Sep. 16, 2020) ...........................................................9

**Other Authorities**

https://www.ca9.uscourts.gov/general/faq/....................................................17

5

# INTRODUCTION

Plaintiffs Rinnai America Corp. *et. al* ("Plaintiffs") ask this Court to enjoin Rule 1146.2 ("Boiler Rule" or "Rule") pending appeal. ECF No. 85. The Court was definitive in its order granting Defendant South Coast Air Quality Management District's ("the District") cross-motion for summary judgment: Plaintiffs lost fully on the merits. ECF No. 81. Plaintiffs now request that this Court enjoin rule compliance, an extraordinary remedy, in spite of both their loss and their overall lack of haste throughout this litigation.

There is no likelihood that the Plaintiffs' claims will eventually succeed. As this Court determined, Plaintiffs' reading of the Energy Policy and Conservation Act ("EPCA") is fundamentally wrong as a matter of text, structure, and purpose. EPCA preempts state regulations "concerning the energy efficiency [or] energy use" of equipment covered by federal energy efficiency standards, 42 U.S.C. § 6297(c)—not state *emission* regulations like the Boiler Rule. There is no indication that Congress intended for EPCA to interfere with emissions control, let alone for a region with extreme air quality issues and for an air district facing severe sanctions for nonattainment of federal air quality standards. The regime Plaintiffs posit would extinguish regulation of local emissions based on energy regulators' setting an *efficiency* standard under a statutory process that makes no provision for pollution control or public health. Plaintiffs' problematic reading, if read to its logical ends, "would upset the historic and recognized powers of states and local governments to set emissions standards and implement other regulations designed to protect the health and safety of their citizens." ECF No. 81 at 9 (citations omitted).

Even if this Court can look beyond Plaintiffs' unlikelihood to succeed on the merits, Plaintiffs have also failed to show that the balance of equities and the public interest tip in their favor. Plaintiffs provide declarations that articulate vague and speculative harms related to a January 1, 2026 compliance deadline for certain equipment in new construction. In some instances, they claim harms that do not result

from the Boiler Rule's January 1, 2026 compliance deadline, calling into question the basis of their newfound haste. They also largely ignore myriad existing evidence in the docket regarding the Rule's emissions benefits to the Los Angeles region—the most ozone-choked region in the country.

Plaintiffs have also failed to explain why extraordinary relief is appropriate *now*. On the contrary, their late-breaking claims of urgent irreparable harm are irreconcilable with their conduct in this litigation. Plaintiffs' own declarations show that the supposed harms related to requirements covering a portion of equipment in new construction have existed for at least 7 months and as long as 16 months. Yet, Plaintiffs raised no concerns about the January 1, 2026 compliance deadline for equipment in new construction during the Boiler Rule's administrative process. Plaintiffs waited nearly six months to challenge the Rule in court, neglecting at that stage to file a motion for a preliminary injunction. This case's appeal has been open in the United States Court of Appeals for the Ninth Circuit for 27 days, and Plaintiffs have not sought expedited briefing or hearing.

Regarding the public interest, the equipment covered by this Rule is heavily polluting and causing immediate harm to millions of residents. Moreover, the 2026 compliance deadline covers *new* emissions to an already polluted region, potentially making air quality worse and attainment challenges even more daunting. Denying the Boiler Rule's benefits to the region is inherently inequitable.

Thus, this Court should deny Plaintiffs' motion for an injunction pending appeal.

DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL (Civ. No. 2:24-cv-10482 PA (PDx))

1

# BACKGROUND[1]

2

## I.    The South Coast's Air Quality Problem

3          More than 17 million people—roughly half of California's population—live

4    within the South Coast Air Basin, which consists of all of Orange County and the

5    urban portions of Los Angeles, Riverside, and San Bernardino counties. Decl. of

6    Adriano L. Martinez in Supp. of NGOs' Mot. to Intervene, ECF No. 27-2 at 33–35.

7    South Coast residents suffer from the worst smog in the country. *Id.* at 16, 117.

8    Moreover, the health harms from South Coast air pollution disproportionately fall on

9    low-income communities and communities of color. *See id.* at 36, 253, 255–56, 263.

10          Boilers and water heaters are a significant source of smog-forming nitrogen

11   oxides ("NOx") emissions and deadly particulate matter ("PM2.5") in the region. *See*

12   Compl. Ex. 2, ECF No. 1-2 at 118, 121. These boilers and water heaters are used in a

13   variety of industrial processes and to heat swimming pools and spas. *See id.* at 119.

14   People living in the vicinity of facilities that operate boilers and water heaters are

15   subject to greater health risks from exposure to health-harming pollution, *see* ECF No.

16   27-2 at 88–90, 253, 258–59, 263, as are residents of inland communities such as San

17   Bernardino and Riverside, who, as a result of wind patterns, face the highest ozone

18   concentrations in the South Coast, *id.* at 58, 263.

19          The South Coast has been classified by the U.S. Environmental Protection

20   Agency as an "extreme" nonattainment area for all federal ozone pollution

21   standards—the highest level that federal law provides. 40 C.F.R. § 81.305. The region

22   is also in nonattainment of California's state-level ozone standards. ECF No. 27-2 at

23   243. Ground-level ozone, or smog, is formed by the reaction of volatile organic

24   compounds ("VOCs") and NOx in the atmosphere in the presence of sunlight. 69 Fed.

25   Reg. 23,858, 23,859 (April 30, 2004). Short- and long-term exposure to ozone is a

26

27   _____

28   [1] Because prior briefing included significant background sections related to this case,
     Defendant-Intervenors reiterate only those factual and procedural issues that are
     relevant to resolving this motion for injunction pending appeal.

significant health concern, particularly for children and people with asthma and other respiratory diseases, and it is associated with school and work absences, decreased productivity, and increased hospital and emergency room visits. *Id.*

The South Coast also violates federal and state air quality standards for fine particulate matter. 40 CFR § 81.305; 85 Fed. Reg. 57,733 (Sep. 16, 2020). These particles can be inhaled into the lungs and even pass into the bloodstream. ECF No. 27-2 at 3, ¶ 5. PM2.5 exposure can aggravate respiratory and cardiovascular disease and cause lung disease, asthma attacks, heart attacks, and premature death. *See* 70 Fed. Reg. 65,984, 65,988 (Nov. 1, 2005).

As of the filing of this brief, the South Coast Air Basin has violated the 8-hour ozone standard 101 times this calendar year. Decl. of Adriano L. Martinez in Supp. of NGOs' Opp. to Mot. for Injunction Pending Appeal at ¶ 3. No other region of California, and likely the country, has come close to having 100 8-hour ozone violation days this year. *Id.* at ¶ 4.

## II.    The Boiler Rule & Administrative Process

The District is responsible for improving air quality in the South Coast Air Basin, and its primary authority is over stationary sources. Cal. Health & Safety Code §§ 39002, 40000; ECF No. 27-2 at 31. By law, the District's air quality management plan ("AQMP") and its subsequent revisions serve as the federally required state implementation plan for the South Coast to improve air quality and meet federal and state standards. Cal. Health & Safety Code §§ 40460–40462; *id.* at §40406 (California Clean Air Act provision enhancing stringency requirements in plans for nonattainment areas). As the Court noted, "the District has regulated appliance emissions of nitrous oxides (NOx) – a leading cause of pollutants and smog in the Basin – since its inception" in the 1970s. ECF No. 81 at 2. It has made several emission standards, including Rule 1146.2, more stringent over the decades. ECF No. 1-1 at 2 (noting amendments in 2005, 2006, and 2018).

Defendant-Intervenors engaged in the three-year administrative process that culminated in the District adopting the AQMP in December 2022. ECF No. 27-2 at 276. The AQMP acknowledged that the South Coast must adopt zero-emission technologies across all emission sectors, including stationary sources, in order to meet federal and state clean air standards. *Id.* at 131, 137. The AQMP includes a control measure that seeks NOx emission reductions from the equipment covered by the Boiler Rule. *Id.* at 145.

In April of 2023, the District initiated rulemaking for the Boiler Rule. After over a year of thorough deliberation, the District amended the Boiler Rule on June 7, 2024, finding that stricter emission standards were technologically feasible and "needed . . . in order to meet the National Ambient Air Quality Standards for ozone." ECF No. 1-2 at 123. The Rule will gradually phase in zero-emission equipment compliance deadlines over nearly a decade, with compliance deadlines differing by equipment type and capacity and by whether the equipment will be installed in a new or existing building. *Id.* The first compliance deadline on January 1, 2026, covers certain equipment installed in new buildings. *Id.* Equipment installed in existing buildings need not comply until 2029 at the earliest, when there is a replacement. *Id.*

When fully implemented, the Rule is projected to reduce NOx emissions in Southern California by 5.6 tons per day—the equivalent of nearly half the combined NOx emissions from every car in the region. *Id.* at 118; ECF No. 27-2 at 3, ¶ 6. The Boiler Rule alone will reduce nearly 10 percent of the stationary and area source emissions regulated by the District and move the region closer to ozone attainment. ECF No. 1-2 at 292. These emission reductions translate to significant public health benefits for South Coast communities, including preventing "approximately 2,828 premature deaths, 192,754 lost school days, 120,986 work loss days, [and] 11,864 cases of newly-onset asthmas." ECF 56 at 6, ¶ 16. The monetary value of those health benefits is $95.19 billion. *Id.* at 6, ¶ 19. Although the Boiler Rule's gradual phase-in means that its full benefits will not be fully realized until 2057, its public health

DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL (Civ. No. 2:24-cv-10482 PA (PDx))

1 benefits will begin to accrue immediately as residents are relieved of burdens that new
2 emissions sources would have added for the entirety of their useful lives.

3 **III.    This Litigation**

4          The District amended the Boiler Rule on June 7, 2024. Plaintiffs filed the
5 instant lawsuit in this Court six months later, on December 5, 2024; their first
6 amended complaint was filed on December 17, 2024. ECF Nos. 1, 12. Plaintiffs never
7 sought a preliminary injunction.

8          Plaintiffs filed a motion for summary judgment requesting a permanent
9 injunction on April 14, 2025, over four months after filing their amended complaint.
10 ECF No. 50. This Court issued an order and entered judgment against Plaintiffs on
11 July 18, 2025. ECF Nos. 79, 80. On July 23, 2025, the Court issued modest
12 amendments to the order and judgment. ECF Nos. 81, 82.

13          Plaintiffs waited three weeks after the initial order was issued to file a notice of
14 appeal in the Ninth Circuit. ECF No. 83. The Court of Appeals issued a briefing
15 schedule on August 13, 2025.[2] ECF No. 84. As of the filing of this opposition,
16 Plaintiffs have not requested expedited briefing or hearing in the Court of Appeals.

17          On August 27, 2025, more than a month after this Court's initial and amended
18 orders were issued, Plaintiffs filed the instant motion for an injunction pending appeal.
19 ECF No. 85.

20                         **STANDARD OF REVIEW**

21          An injunction pending appeal, like a stay, is an "extraordinary remedy," *Cuomo*
22 *v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985), not issued as "a
23 matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Despite sharing "some
24 functional overlap" with a stay pending appeal, the showing for an injunction pending
25 appeal is distinctly more demanding because "stays are typically less coercive and less
26 disruptive than are injunctions." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir.

27
28 _____
   [2] Plaintiffs' Opening Brief is due on September 22, 2025. ECF No. 84. Defendant's
   and Defendant-Intervenors' Answering Briefs are due on October 22, 2025. *Id.*

2011) (citing *Nken*, 556 U.S. at 428–29). "The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). The Ninth Circuit uses a "sliding scale" approach to evaluate a motion for preliminary injunction, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). On one end of the scale is the traditional test, where Plaintiffs must show (1) they are "'likely to succeed on the merits,'" (2) they are "'likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [their] favor, and (4) an injunction is in the public interest.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citation omitted). At the other end of the scale, "'serious questions going to the merits' and a hardship balance that tips *sharply* toward the plaintiff can support issuance of an injunction, assuming the other two elements . . . are also met." *All. for the Wild Rockies*, 632 F.3d at 1132 (emphasis added).

## ARGUMENT

## I.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Appeal.

Plaintiffs have failed to show they are likely to succeed on the merits. *See* Mem. P. & A. Supp. Pls.' Mot. for Injunction Pending Appeal ("Pls.' Mem."), ECF No. 85-1 at 6–11. When considering a motion for an injunction pending appeal, this first factor requires Plaintiffs to at least demonstrate a "strong showing that [they are] likely to succeed on the merits of [their] appeal." *Flores v. Barr*, 977 F.3d 742, 746 (9th Cir. 2020). Indeed, as explained *infra* in Section IB, Plaintiffs must raise more than "serious questions on the merits" here, because they have failed to show that the balance of the hardships tips sharply in their favor. They cannot meet even the lower "serious question" standard, much less the higher standard that actually controls here.

Plaintiffs point to several cases resolving various types of stays and applying different tests as smoke screens to obscure their failed showing on likelihood of

1    success. First, they rely on *Leiva-Perez*, 640 F.3d at 968, to claim they only need to

2    show they have "a substantial case on the merits." Pls.' Mem. at 6. But, that case—

3    which resolved a motion for a stay of removal pending determination of his case on its

4    merits—noted that "[s]uch pre-adjudication adjudication would defeat the purpose of

5    a stay, which is to give the reviewing court the time to 'act responsibly,' rather than

6    doling out 'justice on the fly.'" *Id.* at 967. Here, the Court had full briefing and issued

7    a carefully reasoned opinion determining that Plaintiffs' claims fail on the merits. This

8    is not an instance of "justice on the fly." *Id.*

9          Plaintiffs then cite cases deciding motions seeking a stay of proceedings of a

10    district court's order pending appeal, rather than cases addressing motions seeking

11    affirmative injunctions running against a defendant, to claim that their burden is

12    minimal. *See, e.g.*, *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,

13    No. CV 20-4085-DMG (KSX), 2021 WL 945237, at *2 (C.D. Cal. Feb. 22, 2021);

14    *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, No. 15-CV-03415-EMC, 2016

15    WL 9184999 (N.D. Cal. June 7, 2016). Those cases are inapplicable because

16    "[r]equests for injunctions pending appeal, as opposed to stays pending appeal, 'do[ ]

17    not simply suspend judicial alteration of the status quo but grant[ ] judicial

18    intervention that has been withheld by lower courts.'" *NetChoice v. Bonta*, 761 F.

19    Supp. 3d 1232, 1234 n.1 (N.D. Cal. 2025) (quoting *Ohio Citizens for Responsible*

20    *Energy, Inc. v. Nuclear Regul. Comm'n*, 479 U.S. 1312, 1313 (1986)). In fact,

21    "injunctions pending appeal 'demand[ ] a significantly higher justification.'" *Id.*;

22    *accord MediNatura, Inc. v. Food & Drug Admin.*, No. CV 20-2066 (RDM), 2021 WL

23    1025835, at *6 (D.D.C. Mar. 16, 2021) ("An affirmative injunction against a

24    defendant, even on a temporary basis pending appeal, is an extraordinary remedy,

25    which disrupts the legal status quo in a way that a stay pending appeal does not. In

26    considering a motion for an affirmative injunction pending appeal under Rule 62,

27    therefore, courts generally require "a strong showing that [the movant] is likely to

28    succeed on the merits.").

1       Plaintiffs also claim that an injunction pending appeal should be issued because
the Court ruled on difficult legal questions and "chart[ed] a new and unexplored
ground." Pls.' Mem. at 5–6. They rely on *NetChoice*, a First Amendment case where
the court issued an injunction pending appeal because it found the issues to be "novel,
difficult, and important." 761 F. Supp. 3d at 1236. But here, the Court faced no such
difficulty, and its ruling was clear that EPCA does not reach state emissions standards
like the Boiler Rule. ECF. No. 81 at 9–10. And to the extent Plaintiffs claim this
represents a novel issue, courts have consistently found that state law requirements
governing covered appliances' emissions fall outside the scope of EPCA preemption.
*See Bankhurst v. Wolf Appliance, Inc.*, 2024 WL 3273322, at *3 (W.D. Wisc. July 2,
2024) (finding that EPCA preemption did not apply where plaintiffs' claims did not
concern energy consumption, but instead "the unsafe levels of hazardous *pollutants*—
particularly nitrogen dioxide—that the products allegedly emit, as well as defendants'
alleged failure to warn consumers of the associated risks"); *Hendrick v. BSH Home
Appliances Corp.*, 2024 WL 2190984, at *8 (C.D. Cal. May 14, 2024) (concluding
that allegations relating to emissions and health impacts of gas stoves "do not concern
the EPCA and the effect that Plaintiffs' claims would have on energy use, if any, is
merely tangential and remote"); *Ass'n of Contracting Plumbers of the City of New
York v. City of New York*, 2025 WL 843619, at *7 (S.D.N.Y. March 18, 2025)
(concluding that law "generally prohibit[ing] the use of fossil fuels such as natural gas
and heating fuel in newly constructed residential buildings" to "improve air quality,"
amongst other goals); *see also Drake v. Haier US Appliance Solutions Inc.*, 2024 WL
590597, at *6 (N.D. Cal. Feb. 13, 2024) (finding that fraud claims relating to failure to
disclose emissions risks of gas appliances "do not regulate the amount of gas
accessible to appliances, nor do they necessarily impact the quantity of gas consumed
by gas appliances at the point of use").

       Plaintiffs also fail to acknowledge that the case they rely on for a lower
standard noted "the fact that a court previously found that a preliminary

DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL (Civ. No. 2:24-cv-10482 PA (PDx))

injunction was not warranted should carry significant weight, so the circumstances must be of unusual magnitude to justify a district court granting an injunction pending appeal after denying a preliminary injunction." *NetChoice*, 761 F. Supp. 3d at 1236. Surely, if a previous denial of a preliminary injunction requires a plaintiff to show circumstances of an unusual magnitude, then a previous denial of a permanent injunction requires an even higher showing.

Plaintiffs have failed to show that they are likely to succeed on the merits of their appeal, and their attempt to relitigate the issues through this motion does not justify such an extraordinary remedy. Accordingly, the motion should be denied.

## II.    The Balance of Hardships Does Not Justify An Injunction Pending Appeal.

Plaintiffs have not established "that the balance of hardships justify a remedy in equity." *Edmo v. Corazon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019). In fact, Plaintiffs assert that an injunction maintains the "status quo," Pls.' Mem. at 3, but their own declarations indicate that for many months the status quo has been preparing to comply with the Boiler Rule's requirements for certain equipment in new construction completed after January 1, 2026—undermining their newfound claims of imminent harm.

Plaintiffs have long known that the initial compliance deadline was approaching. In April 2025, Plaintiffs Rinnai America Corp. and Noritz America Corp. both stated in their declarations before this Court:

> Already in the homebuilding market, where gas heaters and boilers have traditionally been installed in up to 80% of new construction, the industry is moving exclusively to electric heat pumps, in anticipation of the District's zero-NOx rule.

ECF 50-6 ¶ 5 (Rinnai Declarant); ECF 50-7 ¶ 4 (exact same language in declaration from Noritz President). According to Plaintiffs, new construction had already moved to electric heat pumps as of April of this year. Similarly, Plaintiff National Association of Homebuilders (NAHB) stated:

> NAHB estimates that it takes between 7 and 13 months to build a single-family home. In the Pacific Region, the average time to complete a new single-family home is approximately 11.9 months after authorization. Multifamily projects take longer to build. NAHB estimates that a 20-unit project takes 19.9 months to build after obtaining authorization.

ECF 85-8 ¶ 7. The NAHB declarant further noted the following:

> Due to lead times and because certain aspects of the zero NOx rule take effect in January 2026, builders must already comply with the rule's requirements. This compels builders to now make irrevocable decisions on which appliances and HVAC equipment to install.

*Id.* at ¶ 8.

These declarants show that Plaintiffs' members have been anticipating compliance with the Boiler Rule's January 2026 deadline for new construction for a minimum of 7 months and in some cases nearly 16 months. Moreover, Plaintiffs do not and cannot reconcile their late-breaking claims that they "will be gravely harmed if the law goes into effect during the pendency of the appeal," Pls.' Mem. at 12, with their torpid pace in litigating these issues. Plaintiffs fail to explain why they waited so long to challenge the Rule. In addition, they fail to explain their decision not to seek a preliminary injunction.

Plaintiffs also complain about outcomes that do not stem from the Boiler Rule. For example, Plaintiff California's Hotel and Lodging Association claims the Boiler Rule "will also affect the hotel's ability to offer amenities, because without gas piping, it becomes difficult to operate heated pools and spas and to have fireplaces or firepits." ECF 85-7 ¶ 6. Plaintiffs ignore that the Boiler Rule does not preclude gas piping in any way. In fact, fireplaces and firepits are not covered by the Boiler Rule at all, but rather South Coast AQMD Rule 445. And, pool and spa heaters in new buildings will not be affected by the January 1, 2026, compliance deadline; they will only be required to comply with the Rule after January 1, 2028, for new construction,

well after the time the appeal will likely be decided.[3] ECF No. 1-1 at 6. Similarly, Plaintiff Plumbing-Heating-Cooling Contractors Association of California states that "[i]f the rule goes into effect on January 1, 2026, it will bar the sale or installation of *any* gas tankless water heaters and gas boilers or process heaters less than 400,000 Btu/hr." ECF No. 85-6 ¶ 5 (emphasis added). This is wrong. On January 1, 2026, only equipment in new buildings are covered; requirements for existing buildings are not implemented until January 1, 2029. ECF No. 1-1 at 6. The declaration then proceeds to say, "when the impending zero-NOx rule goes into effect on January 1, 2026, all new constructions will be built without the covered gas appliances, or even without any gas infrastructure at all." ECF No. 85-6 ¶ 6. This is also incorrect, as only a subset of equipment is covered by the January 1, 2026, compliance deadline. The declaration also fails to explain how the Rule prohibits "any gas infrastructure at all" when there are myriad equipment not covered by this Rule. In sum, these clear factual errors undermine Plaintiffs' showing of irreparable harm.

Plaintiffs also make little attempt to actually evaluate the balance of hardships. *See* Pls.' Mem. at 18–20. Instead, they boldly claim that there is "no appreciable harm to the District." *Id.* at 18. Plaintiffs contend that the District cannot "be harmed by a temporary delay in enforcing a potentially preempted rule," *id.* at 20, despite this Court's ruling that the Boiler Rule is not preempted by EPCA, ECF No. 81 at 9–10. Their argument is based on the false assertion that the Boiler Rule solely benefits the District in 2037 when the District must attain the current ozone standard. Pls.' Mem. at 19–20. Plaintiffs ignore that as polluting equipment is phased out and replaced with those that meet the zero-NOx standard, emission reductions will occur immediately. As a corollary, health benefits will also accrue immediately. In fact, Plaintiffs

---

[3] *Frequently Asked Questions*, Office of the Clerk of the United States Court of Appeals for the Ninth Circuit (last updated Dec. 2023), https://www.ca9.uscourts.gov/general/faq/ (stating that oral argument is typically held 6 to 12 months from the notice of appeal date or 4 months from completion of briefing, and "most cases are decided within 3 months to a year after submission.").

conveniently ignore myriad record evidence showing benefits accrued to South Coast residents between now and that date—and the harms that the District and Defendant-Intervenors face each day they cannot access the benefits of emissions reductions due to the Boiler Rule. *See* ECF No. 1-2 at 225 ("We should also recognize the health benefit to the communities."); *id.* at 121 (The Boiler Rule "will also be considered as a control strategy for the South Coast AQMD to attain the 2012 annual PM 2.5 national ambient air quality standard by 2030."). From 2026 to 2037, the Boiler Rule "is estimated to prevent approximately 374 premature deaths, 23,629 lost school days, 16,549 work loss days, 1,519 cases of newly onset asthma, and other health consequences." ECF No. 56 at 5, ¶ 15. The health benefits from emission reductions by 2037 are estimated to be $5.48 billion. *Id.* at 6, ¶ 18. Plaintiffs' attempt to oversimplify the air quality impacts of such a delay overlooks the role of a carefully developed implementation timeline in ensuring the Rule achieves its broader air quality benefits. And because each polluting equipment that is installed could lock in emissions for the duration of its lifetime, the harms from delayed implementation will continue to be felt for well over a decade.

Plaintiffs seek to dismiss the District's interest in protecting health and air quality for the South Coast's more than 17 million residents, *see* ECF No. 1-2 at 123, as well as the hardships that an injunction would inflict on Defendant-Intervenors and their members. Defendant-Intervenors collectively represent over 36,000 members who live, work, and recreate in the South Coast, and whose ability to access the benefits of better air quality is jeopardized if the Boiler Rule is enjoined. Mem. P. & A. Supp. Def.-Intervenors' Mot. to Intervene, ECF No. 27-1 at 15–16. Without air quality improvements from the Boiler Rule, members will face serious pollution-related health harms, *see* Decl. of Andrea Vidaurre in Supp. of Mot. to Intervene, ECF No. 27-3 ¶¶ 7, 10; Decl. of Gem M. Montes in Supp. of Mot. to Intervene, ECF No. 27-4 ¶ 15; Decl. of Kimberly R. Orbe in Supp. of Mot. to Intervene, ECF No. 27-5 ¶¶ 8–9, 12; Decl. of Rodney P. Boone in Supp. of Mot. to Intervene, ECF No. 27-6 ¶ 19,

and will be unable to spend time outdoors without fearing these health harms, *see* ECF
No. 27-3 ¶¶ 10–11; ECF No. 27-4 ¶¶ 10–14; ECF No. 27-5 ¶ 10; ECF No. 27-6 ¶ 15.
An injunction would especially harm Defendant-Intervenors' members who live in the
areas hardest hit by pollution from the covered equipment, such as the Inland Empire.
ECF No. 27-4 ¶ 17; ECF No. 27-5 ¶ 5. Plaintiffs do not dispute the air quality related
harms that are mitigated by the Boiler Rule—including emission reductions from
covered equipment in new construction that must comply after January 1, 2026. If the
relief Plaintiffs request is granted, polluting equipment that would otherwise be
prohibited could instead be installed and allowed to pollute for decades. Plaintiffs
cannot brush these harms aside by simply noting the full benefits of the Rule will not
be achieved until 2037 and beyond. There are important incremental benefits to
breathers in the South Coast that accrue with each and every compliance deadline. The
Court must weigh these environmental and health interests in determining whether to
grant an injunction. *League of Wilderness Def./Blue Mountains Biodiversity Project v.
Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014).

Meanwhile, Plaintiffs' asserted business interests have only a speculative,
attenuated connection to the compliance deadline for new construction. *See* Pls.'
Mem. at 13–18. Importantly, many of the declarations submitted in support of the
instant motion parrot declarations Plaintiffs submitted in April that explain their
claimed harm from the entire regulation. A motion for injunction pending appeal is
not a motion for reconsideration. Thus, only Plaintiffs' alleged harms from complying
with the Boiler Rule while the Court of Appeals decides the case are relevant. The
interest in improved air quality and public health shared by the District and
Defendant-Intervenors' tens of thousands of members across the South Coast
outweighs Plaintiffs' speculative interests in avoiding regulation.

Plaintiffs also argue that the District Governing Board's recent action on zero-
emission rules for other types of stationary sources somehow invalidates the District's
need for this Rule's health benefits. Pls.' Mem. at 19–20. Plaintiffs fail to articulate

how an agency carefully crafting and spending more time on a regulatory approach for appliances not covered in the instant lawsuit has any bearing here. If anything, this action by the District Governing Board undercuts Plaintiffs' claims that the District does not need zero-NOx rules to meet its attainment goals; the District is considering several types of rules that will achieve the AQMP's goal of getting various stationary sources to increase the use of zero-emissions equipment.

Because Plaintiffs have failed to show that the balance of the hardships is in their favor, their motion should be denied.

### III.   The Public Interest Does Not Favor Enjoining the Boiler Rule.

Finally, the public interest does not favor enjoining the Boiler Rule. The Court's evaluation of the public interest must include environmental and health interests. *See League of Wilderness Def.*, 752 F.3d at 765. As explained *supra* in Section II, the Boiler Rule significantly advances the public interest in air quality and public health without detracting from any interest implicated by EPCA; indeed, Plaintiffs point to no way in which implementing the Boiler Rule would impede effective implementation of federal efficiency standards.

Accordingly, the Court must deny Plaintiffs' request for injunctive relief.

**CONCLUSION**

For the reasons explained above, Plaintiffs' motion for injunction pending appeal should be denied.

1                                Respectfully submitted,

2    Dated: September 8, 2025         /s/ Adriano L. Martinez

3                                ADRIANO L. MARTINEZ (SBN 237152)
                                CANDICE L. YOUNGBLOOD (SBN 328843)
4                                Earthjustice
5                                707 Wilshire Blvd., Suite 4300
                                Los Angeles, CA 90017
6                                amartinez@earthjustice.org
7                                cyoungblood@earthjustice.org
                                Tel: (415) 217-2000 / Fax: (415) 217-2040
8

9                                *Counsel for Defendant-Intervenors*
                                *People's Collective for Environmental Justice,*
10                                *Sierra Club, and Industrious Labs*

11                                NIHAL SHRINATH (SBN 327921)
12                                Sierra Club
                                2101 Webster St., Suite 1300
13                                Oakland, CA 94612
14                                nihal.shrinath@sierraclub.org
15                                Tel: (415) 977-5566

16                                JAMES A. DENNISON (*Pro Hac Vice*)
17                                Sierra Club
                                1650 38th St., Suite 103W
18                                Boulder, CO 80301
19                                jim.dennison@sierraclub.org
                                Tel: (435) 232-5784
20

21                                *Counsel for Defendant-Intervenor*
                                *Sierra Club*
22

23                                SEAN H. DONAHUE (SBN 264284)
                                Donahue, Goldberg & Herzog
24                                1008 Pennsylvania Ave., SE
25                                Washington, DC 20003
                                sean@donahuegoldberg.com
26                                Tel: (202) 277-7085

27                                *Counsel for Defendant-Intervenor*
28                                *Industrious Labs*

DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL (Civ. No. 2:24-cv-10482 PA (PDx))