1  Courtland L. Reichman (SBN 268873)
      creichman@reichmanjorgensen.com
2  Brian C. Baran (SBN 325939)
      bbaran@reichmanjorgensen.com
3  REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
4  100 Marine Parkway, Suite 300
   Redwood Shores, CA 94065
5  Tel.: (650) 623-1401; Fax: (650) 560-3501

6  *Attorneys for Plaintiffs Rinnai America Corp., Noritz*
7  *America Corp., National Association of Home*
   *Builders, California Manufacturers & Technology*
8  *Association, California Restaurant Association,*
   *California Hotel & Lodging Association, California*
9  *Apartment Association, and Plumbing-Heating-*
10 *Cooling Contractors of California*

11 ADDITIONAL COUNSEL ON FOLLOWING PAGE

12                    **UNITED STATES DISTRICT COURT**
13                    **CENTRAL DISTRICT OF CALIFORNIA**

14
   RINNAI AMERICA CORP., et al.          Civil Action No.
15
         Plaintiffs,                     2:24-cv-10482 PA(PDx)
16
         v.                              **PLAINTIFFS' REPLY IN**
17                                       **SUPPORT OF MOTION FOR**
   SOUTH COAST AIR QUALITY              **INJUNCTION PENDING**
18 MANAGEMENT DISTRICT,                  **APPEAL**

19         Defendant,                    Date:  Monday, Sept. 29, 2025
20  and                                  Time: 1:30 p.m.
                                         Courtroom: 9A
21 PEOPLE'S COLLECTIVE FOR
   ENVIRONMENTAL JUSTICE, SIERRA        Honorable Percy Anderson
22 CLUB, and INDUSTRIOUS LABS,          United States District Judge

23         Defendant-Intervenors.

24

25

26

27

28

1

2  ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)

3     sjorgensen@reichmanjorgensen.com

REICHMAN JORGENSEN

4     LEHMAN & FELDBERG LLP

1201 West Peachtree St., Suite 2300

5  Atlanta, GA 30309

Tel.: (650) 623-1403; Fax: (650) 560-3501

6

7  Sean Kneafsey (SBN 180863)

8     skneafsey@kneafseyfirm.com

THE KNEAFSEY FIRM, INC.

9  707 Wilshire Blvd., Suite 3700

10  Los Angeles, CA 90017

Tel.: (213) 892-1200; Fax: 213-892-1208

11

12  *Attorneys for Plaintiffs Rinnai America*
*Corp., Noritz America Corp., National*

13  *Association of Home Builders, California*
*Manufacturers & Technology Association,*

14  *California Restaurant Association,*

15  *California Hotel & Lodging Association,*

16  *California Apartment Association, and*
*Plumbing-Heating-Cooling Contractors of*

17  *California*

18

John J. Davis, Jr. (SBN 65594)

19     jjdavis@msh.law

Luke Dowling (SBN 328014)

20     ldowling@msh.law

21  MCCRACKEN, STEMERMAN

& HOLSBERRY LLP

22  475 – 14th Street, Suite 1200

23  Oakland, CA 94612

Tel.: (415) 597-7200; Fax: (415) 597-7201

24

25  *Attorneys for Plaintiff California State*
*Pipe Trades Council*

26

27

28

Matthew P. Gelfand (SBN 297910)
   matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-7724

*Attorney for Plaintiff Californians for*
*Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
   aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-2429

*Attorney for Plaintiff Restaurant Law Center*

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................................1

Argument ....................................................................................................2

   I.   The District's Suggestion That the Requested Injunction Would Alter the
Status Quo Is Legally and Factually Inaccurate. .............................................2

   II.  Plaintiffs Have Shown an Injunction Pending Appeal is Warranted................3

      A.   Plaintiffs have shown a likelihood of success on the merits....................3

      B.   Plaintiffs have provided specific evidence of concrete, irreparable
harm.........................................................................................................5

      C.   The District's argument that an injunction would not prevent
Plaintiffs' injuries misunderstands the record...........................................9

      D.   Plaintiffs did not delay; they sought interim relief only when needed.....9

      E.   The balance of equities and the public interest favor Plaintiffs..............10

Conclusion ...............................................................................................12

Attestation ...............................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ......................................................................... 8

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ......................................................................... 2

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019) ..................................................................................... 4

*California Restaurant Ass'n v. City of Berkeley*,
   89 F.4th 1094 (9th Cir. 2024) .............................................................. 1, 3, 4, 5

*Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*,
   524 F. Supp. 3d 919 (N.D. Cal. 2021) ............................................................. 2

*Earth Island Inst. v. Carlton*,
   626 F.3d 462 (9th Cir. 2010) ......................................................................... 11

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ......................................................................... 2

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
   242 F.3d 1163 (9th Cir. 2001) ......................................................................... 3

*Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*,
   182 F. Supp. 3d 1065 (E.D. Cal. 2016) ........................................................... 2

*Sierra Forest Legacy v. Rey*,
   577 F.3d 1015 (9th Cir. 2009) ......................................................................... 3

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) ........................................................................................... 11

**Statutes**

42 U.S.C. § 6292 ................................................................................................... 4

42 U.S.C. § 6297(a)(2)(A) .................................................................................... 5

42 U.S.C. § 6297(c) ........................................................................................... 4, 5

42 U.S.C. § 6297(f)(3) .......................................................................................... 4

**Regulations**

S. Coast AQMD R. 1146.2 ............................................................................. 8, 12

**Other Authorities**

S. Rep. No. 100-6 (1987) .................................................................................... 12

ii

## INTRODUCTION

The District says that enjoining the effective date of its zero-NOx rule won't do anything anyway; the market will still anticipate the ban.  In that case, the District should agree to an injunction.  But what this really shows is that the District itself will bear little harm from a short extension of the effective date of the zero-NOx rule.  Not so for the Plaintiffs, who have provided sworn declarations on the concrete, serious, and irreversible harms they will suffer absent an injunction.

It is not speculative that Rinnai and Noritz, recognized leaders in this market, will have sales of their gas tankless water heaters and boilers for new construction eliminated as of January 1, 2026.  Those lost sales will have ripple effects on distributors, contractors, customers, and employees.  Small plumbing businesses will lose substantial work and struggle to reorganize.  And union workers will see work opportunities and training programs decline.  These serious harms cannot be unwound.

On the merits, the District, echoed by Intervenors, tries mainly to convince the Court that this case was easy.  After all, the Court need not conclude that it erred—only that this case presents a difficult legal issue on which the Ninth Circuit could disagree.  The Ninth Circuit's *California Restaurant Ass'n* decision suggests just that.

An injunction is appropriate here to maintain the status quo.  The District and Intervenors are wrong to suggest otherwise.  Whether the status quo is measured just before the dispute arose (as longstanding Ninth Circuit precedent explains) or at the time of appeal (as the District incorrectly contends) makes no difference.  Even today, the status quo is that the zero-NO$_x$ rule is not in effect; no covered products are yet banned.  This Court should preserve that status quo to avoid irreparable harm to Plaintiffs while the Ninth Circuit has time to decide this case.

1

## ARGUMENT

**I.    The District's Suggestion That the Requested Injunction Would Alter the Status Quo Is Legally and Factually Inaccurate.**

The District's lead argument—that the proposed injunction would alter the status quo—is wrong. *Contra* Dkt. 86 at 9-11. The District fundamentally misunderstands the law. As the Ninth Circuit has explained, "the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). It "refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (cleaned up). So the relevant status quo here is the situation before the District adopted the challenged zero-$NO_x$ rules. Before this controversy arose in June 2024, appliances were—and still are today—subject to the District's preexisting nonzero limits on $NO_x$ emissions. This is exactly what Plaintiffs said and exactly the status quo they seek to maintain. Dkt. 85-1 at 21.[1]

In the face of binding Ninth Circuit precedent, the District musters only a single district court case for the proposition that the status quo should be measured from the time an appeal is filed. Dkt. 86 at 10 (citing *Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1072 (E.D. Cal. 2016)). That case is about a different issue altogether: when does a district court have jurisdiction to modify an existing injunction while that injunction is on appeal. *See Nat'l Grange*, 182 F. Supp. 3d at 1072-74. Modifying an existing injunction while it is on appeal requires additional restraint to avoid mooting the controversy over "the original order" or presenting the appellate court "with a moving target." *Id.* at 1074 (cleaned up);

---

[1] Contrary to Intervenors' suggestion, Dkt. 87 at 12-13, because the requested injunction would not change the status quo, it is a prohibitory injunction (not a mandatory injunction) and thus not subject to a heightened standard. *Ariz. Dream*, 757 F.3d at 1061 (an injunction "[to] prohibit enforcement of a new law or policy ... is prohibitory"); *Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 951 (N.D. Cal. 2021) ("[T]he last uncontested status preceding the current controversy is the status quo that existed prior to the implementation of the Rule, and thus plaintiffs seek a prohibitory injunction.").

1  *accord Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir.

2  2001) (general rule that "the district court is divested of jurisdiction over the matters

3  being appealed" is meant "to promote judicial economy and avoid the confusion that

4  would ensue from having the same issues before two courts simultaneously").

5      There is no such concern here.  Granting an injunction pending appeal of the

6  denial of prospective relief does not risk disrupting the appeal; it does "not materially

7  alter the status of the case on appeal," *id*. at 1166 (attribution omitted).  Rather, it serves

8  the ordinary purpose of interim relief: "to preserve the status quo ante litem pending a

9  determination of the action on the merits." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015,

10  1023 (9th Cir. 2009) (cleaned up).

11      In any event, the District is wrong on the facts.  Any way you slice it, the status

12  quo today—just as it was when the District adopted its rule, when Plaintiffs filed this

13  suit, when this Court issued its decision, and when Plaintiffs filed their appeal—is that

14  the preexisting nonzero limits are still in place, the zero-$NO_x$ rule is not yet effective,

15  and covered products are not yet banned.  The District tries to spin this by claiming

16  that because consumers and businesses are already acting in anticipation of the ban

17  (harming Plaintiffs now), nothing will change if the rule goes into effect.  Dkt. 86 at

18  22.  But for now, consumers and businesses still have a choice; they may, but need not,

19  act in anticipation.  Once the zero-$NO_x$ limits take effect, that choice will be gone.

20  Besides, if the District believes what it says—that delaying the effective date will make

21  no difference to the public's behavior—then it should agree to stay the effective date

22  and withdraw its opposition to the motion.

23  **II.    Plaintiffs Have Shown an Injunction Pending Appeal is Warranted.**

24      **A. Plaintiffs have shown a likelihood of success on the merits.**

25      Right from the start, the District doubles down on its mischaracterization of

26  *California Restaurant Ass'n v. City of Berkeley,* 89 F.4th 1094 (9th Cir. 2024).  The

27  District again says "[t]hat decision involved a building code that explicitly regulated

28  the quantity of natural gas appliances could use."  Dkt. 86 at 6.  That is just not true.

Berkeley's ban on gas piping did not "explicitly" regulate the quantity of gas that appliances could use—it did not even explicitly regulate appliances, and it said nothing at all about the quantity of gas. But it effectively prevented the appliances from using any gas, which is why the Ninth Circuit held that it was preempted. *Cal. Rest.*, 89 F.4th at 1107. That is exactly what the zero-$NO_x$ rule does, and that is why it is preempted.

The District's contention that the rule's effect on gas appliances is "incidental" likewise fails. *Contra* Dkt. 86 at 12-13. True, Judge Baker's *California Restaurant Ass'n* concurrence recognized that EPCA does not preempt local regulations that only "incidentally" impact the quantity of gas that covered products consume, such as carbon taxes, a utility's distribution of natural gas, and emergency limitations on water or electricity. 89 F.4th at 1117 & n.9 (Baker, J. concurring); *see also id.* at 1103 (panel opinion). But the District's zero-$NO_x$ limits are anything but incidental. The District admits that its rule "targets appliances," Dkt. 53 at 23—the core focus of EPCA's preemption provision. *See* 42 U.S.C. § 6297(c) (preempting regulations "concerning the … energy use … of [a] covered product"); *see also id.* § 6292 (listing covered consumer appliances). And this Court already found that the rule effectively bans covered gas appliances. Dkt. 81 at 6. EPCA "has little, if anything, to say" about carbon taxes and gas distribution, but it "has everything to say about" regulation of appliances' energy use, which therefore "fall[s] within the statute's preemptive scope," Dkt. 86 at 14 (quoting *Cal. Rest.*, 89 F.4th at 1119 (Baker, J., concurring)).

The District next attempts to limit *California Restaurant Ass'n* to the Ninth Circuit's holding on the facts before it, ignoring the underlying reasoning. That is not how binding precedent works. "[J]ust as binding as [the Ninth Circuit's] holding is the reasoning underlying it." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019). The Ninth Circuit nowhere suggested that preemption is limited to building codes. To the contrary, it explained that the building code exception, § 6297(f)(3), evidenced Congress's intent for preemption to reach beyond direct regulations of covered products "at least" to building codes. *Cal. Rest.*, 89 F.4th at 1101-02. And the panel

1  opinion carefully analyzed the preemption provision's text and context to explain why

2  it read the preemption clause "expansively" and why it rejected the narrower readings

3  proposed by Berkeley and amici. *Id.* at 1100-05. The District's insistence on a

4  "narrow" reading, Dkt. 86 at 13, fails to give fair import to the Ninth Circuit's decision.

5       Next, in response to Plaintiffs' point that this Court effectively applied a

6  presumption against preemption, the District says the Court "expressly stated" that it

7  was not applying such a presumption. Dkt. 86 at 15. That is no answer at all. Plaintiffs

8  acknowledged that the Court set out the correct standard. Dkt. 85-1 at 10. But as

9  Plaintiffs explained, by reading § 6297(c) narrowly to avoid upsetting "the historic and

10  recognized powers of states and local governments," the Court in effect applied a

11  presumption against preemption. *Id.* at 10-11 (quoting Dkt. 81 at 9-10).

12      Finally, relying on Judge Baker's concurrence, the District asserts that the Ninth

13  Circuit "suggested that preemption did not extend to" any "regulatory fields"

14  "unmentioned" in the statute. Dkt. 86 at 16. The concurrence said no such thing. *See*

15  *Cal. Rest.*, 89 F.4th at 1117-18 (Baker, J., concurring). And the District's contention

16  is inconsistent with the panel's conclusion that § 6297(c) has "extensive scope." *Id*. at

17  1103. The District's view would effectively substitute the phrase "building code"

18  where Congress wrote "State regulation," a term Congress defined broadly as "a law,

19  regulation, or other requirement of a State or its political subdivisions," 42 U.S.C.

20  § 6297(a)(2)(A). As the Ninth Circuit recognized, § 6297(c) means what it says: "State

21  regulation[s] concerning" covered products' "energy use" are preempted, subject to

22  Congress's express exceptions to preemption—none of which are for "emissions

23  standards," Dkt. 86 at 16. *See Cal. Rest.*, 89 F.4th at 1101-02.

24      **B. Plaintiffs have provided specific evidence of concrete, irreparable harm.**

25      Plaintiffs provided detailed declarations explaining the myriad and specific

26  harms they will suffer if the zero-$NO_x$ rule takes effect during the appeal. The District

27  does not dispute that the kinds of harm Plaintiffs identify are irreparable, and for good

28  reason: established precedent says they are, *see* Dkt. 85-1 at 13-15. Instead, the District

plucks a few statements from the declarations, declares the harms speculative or "vague and exaggerated," and ignores the rest of the evidence of harm. Dkt. 86 at 17-21.

Plaintiffs in fact have provided evidence of concrete, specific harms that they will suffer after January 1, 2026 if the zero-$NO_x$ limits take effect, including lost sales and revenue numbers, intangible harms such as loss of reputation, loss of goodwill, and loss of relationships with customers and suppliers, and employee layoffs or lost work hours and opportunities. For example, Noritz identified the following concrete harms:

- Noritz "has significant sales of gas tankless water heaters in California, approximately $35 million. A majority of those sales are made to customers in the jurisdiction of" the District. Dkt. 85-3 ¶ 2.

- "The new-home market previously comprised up to about half of all sales for Noritz in the District territory." *Id.* ¶ 6.

- Noritz estimates $4 million in lost revenue in 2026. *Id.*

- "[S]ales that Noritz is losing now because of the zero-$NO_x$ rule also will translate to additional lost sales for replacement of those lost units in future decades." *Id.* ¶ 9.

- "Noritz … must consider closing its facilities and eliminating, or moving out of California all together, its approximately 120 employee positions, 50 of which are located in the District." *Id.* ¶ 10.

- "Many of the distributors have long-standing relationships with Noritz that were built over years, if not decades. Noritz spent millions of dollars to grow its brand and distributor relationships in the District." *Id.* ¶ 13.

- "[B]ecause Noritz has not previously offered electric heat pumps, … it would have to begin competing with established heat pump suppliers, who are much larger, have established reputations, and have economic advantages that Noritz could not overcome." *Id.*

6

1  And Rinnai declared:

2  - "Over decades, Rinnai has … invested in developing a robust ecosystem of
3    employees, distributors, contractors, and builders dedicated to gas tankless
4    water heating [in the District]. … If the District's zero-$NO_x$ rule takes effect
5    on January 1, 2026, … [i]t will dismantle the ecosystem we have spent
6    decades building—an ecosystem that cannot be easily rebuilt or converted."
7    Dkt. 85-2 ¶¶ 6-7; *see also id.* ¶¶ 10-11.

8  - It "faces approximately $8.5 million in lost direct sales" in 2026. *Id.* ¶ 7.

9  - It would have to lay off employees that "represent a highly specialized
10   workforce—engineers, manufacturing teams, and sales professionals—who
11   have devoted their careers to advancing tankless water heating technology"
12   and are not easily replaced. *Id.* ¶¶ 8-9.

13 - "Rinnai and Noritz, recognized leaders in gas tankless, hold no comparable
14   position in [gas tanks or electric heat pumps]. The outcome [of the zero-NOx
15   rule] is a forced reallocation of market share away from our core technology
16   into sectors where we do not hold a strong competitive position." *Id.* ¶ 12.

17  These injuries are not "vague and speculative," but rather represent concrete
18  numbers and harms. *Contra* Dkt. 86 at 17. The District attempts to downplay the
19  injuries because Rinnai and Noritz are large companies. *Id.* at 19-20. But that does
20  not make the injuries any less real or any more reparable. The financial losses are
21  substantial, even for companies like Rinnai and Noritz, and they cannot be recouped.
22  And the District ignores the many smaller businesses and individual workers also
23  facing irreparable harm from its rule, like Mr. Prencavage's plumbing business,
24  Dkt. 85-5; the countless individual plumbing contractors, Dkt. 85-6; and the union
25  members, Dkt. 85-4.

26  The harm goes well beyond lost sales and revenues. Noritz and Rinnai are both
27  leading sellers of gas tankless water heaters and boilers covered by Phase I, *see* Dkt.
28  50-3, Ex. 1 at 8 (Rule 1146.2, Tables 2 & 3); they will now see their sales and

7

1   operations in a significant market collapse, hurting their distribution networks, their

2   relationships with contractors and customers, their skilled employees, and their

3   reputations as market leaders.  The District suggests that any losses could be offset by

4   increased heat pump sales.  Dkt. 86 at 19-20.  But having to shift to a market in which

5   they are not leading sellers and compete against larger, established competitors cannot

6   be brushed off as inconsequential—at the least, it deprives them of hard-won customer

7   goodwill and reputations and causes business disruptions.

8        The District incorrectly states that the only lost sales at issue are those for new

9   construction in the District.  Dkt. 86 at 18.  Not so.  Actions taken now in 2026 will

10  harm Plaintiffs in the replacement market long after their appeal is decided.  *See, e.g.,*

11  Dkt. 85-5 ¶ 4.  Likewise, the District emphasizes that only some of the appliances are

12  covered by Phase I.  Dkt. 86 at 18.  But that does not mean Plaintiffs will not be harmed

13  during the appeal; as the declarations specifically show, they will be harmed by

14  Phase I's ban on the covered gas appliances in new construction in 2026.  Indeed, that

15  only part of the rule is scheduled to take effect during the appeal cuts in favor of interim

16  relief because it underscores how little harm the District would suffer from a short

17  delay; Phase I is a drop in the emissions-reduction bucket by the District's own math.

18  *Contra* Dkt. 86 at 24-25.

19       Finally, were the Ninth Circuit to reverse on preemption, Plaintiffs will have

20  been irreparably harmed by being forced to comply with a preempted law.  *Am.*

21  *Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009).

22  The District tries to distinguish *American Trucking* on the ground that there, the Ninth

23  Circuit found that plaintiffs were likely to succeed on the merits.  That is true but

24  irrelevant; the Ninth Circuit did not premise its irreparable injury reasoning on that fact.

25  This Court likewise should not blend these distinct questions in its analysis of

26  irreparable injury.

27

28

8

**C. The District's argument that an injunction would not prevent Plaintiffs' injuries misunderstands the record.**

The District argues that anticipation of the rule, rather than the rule itself, is driving compliance and will continue to drive compliance no matter whether the zero-$NO_x$ limits are enjoined pending appeal. Dkt. 86 at 21-23; *see also* Dkt. 87 at 15-16. That is an argument in favor of interim relief; if the District is right, it has no reason to oppose an injunction that will not affect its goals.

But in any event, the District's logic is faulty. It is entirely possible for the rule to have both anticipatory effects in the market in the form of lost sales (to which Plaintiffs have attested), as well as further effects when it is actually implemented (to which Plaintiffs have also attested). And that, as Plaintiffs have proved, is the reality here. That some harms have already happened is no reason to allow further irreversible harms to happen. Basic economic logic suggests that the closer in time to enforcement, the greater the magnitude of the anticipatory effects. And of course, once the ban goes into effect, the harm will become a matter of compulsion, not anticipation. Construction projects "are now being designed and built without gas service or appliances … in *preparation* for compliance" on the existing schedule; delaying the effective date would reduce or delay the need for projects to comply in advance, reducing or avoiding harm to Plaintiffs. Dkt. 85-4 ¶ 6 (emphasis added); *see* Dkt. 85-3 ¶ 7.

**D. Plaintiffs did not delay; they sought interim relief only when needed.**

Plaintiffs appealed on August 8, 2025, weeks before the deadline to do so. Dkt. 83. Plaintiffs initiated the meet-and-confer process the same day, met with the District and Intervenors the next week, and filed this motion on August 27, Dkt. 85, less than three weeks after the notice of appeal—and just nine days after the District and Intervenors confirmed their position and offered to agree to an expedited appeal in exchange for Plaintiffs forgoing this motion. And most importantly, Plaintiffs' motion came four months before the zero-$NO_x$ rule's effective date, giving both this Court

9

1   (and, if necessary, the Ninth Circuit) ample time to resolve the motion before the rule

2   takes effect.  Nothing about that timeline undercuts Plaintiffs' harm allegations.

3        The District also faults Plaintiffs for not seeking a preliminary injunction earlier

4   in this case.  Dkt. 86 at 23.  Plaintiffs did not seek a preliminary injunction because

5   they did not need one.  All a preliminary injunction could have done was maintain the

6   status quo (*i.e.*, the absence of the zero-$NO_x$ limits) while this Court was deciding the

7   case.  But with the zero-$NO_x$ rule's effective date more than a year away at the time

8   Plaintiffs filed their complaint in December 2024, Dkt. 1, and a schedule that would

9   have resolved this case by September 2025 even if a trial were needed, Dkt. 40 at 2—

10  and that in fact brought the case to judgment by August 2025, Dkt. 82—there was no

11  point wasting the Court's and parties' time seeking interim relief from a rule that would

12  not take effect until 2026.  Had Plaintiffs prevailed, their requested permanent

13  injunction would have come well ahead of the effective date.  The District's suggestion

14  that seeking interim relief pending trial court proceedings is a prerequisite to interim

15  relief pending appeal would encourage unnecessary and premature motions practice.

16  There is no reason to force parties to declare emergencies that do not exist just in case

17  they need interim relief in the future.  Plaintiffs sought interim relief when—and only

18  when—it became necessary.  This motion's timing provides no basis to deny relief.

19       **E. The balance of equities and the public interest favor Plaintiffs.**

20       When addressing Plaintiffs' harms, the District takes pains to minimize Phase I's

21  impact: It "applies only to a limited subset of appliances and only if installed with the

22  construction of new buildings," "only 10 percent [of covered appliances] will be first-

23  time installations in new buildings," only a subset of those "will be affected by this first

24  phase," and only a smaller subset "could be expected to be installed during the several

25  months while the appeal is likely to be pending."  Dkt. 86 at 18; *see also* Dkt. 87 at 16-

26  17.  And the District asserts that market restructuring "will continue in anticipation of

27  the Rule's enforcement … whether or not enforcement is enjoined for some part of a

28  year."  Dkt. 86 at 22.

1    But when it comes to balancing the equities, the District does an about-face and

2    claims that it (and the public) will be severely damaged by any delay. The District

3    focuses on claimed harms from the entire rule's decades-long impact. Dkt. 86 at 24-

4    25 ("*The Rule* is projected to prevent premature deaths." (emphasis added)). And it

5    brushes off the actual (very small) emissions numbers associated with Phase I, insisting

6    that any emissions, no matter how slight, cause irreparable harm. *Id.* at 25; *see also*

7    Dkt. 87 at 17-19. That misses the point. The question is not whether any harm the

8    District would suffer during the appeal is irreparable—of course environmental harm

9    can be—but how it weighs against the irreparable harm to Plaintiffs. *See, e.g., Earth*

10    *Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (affirming the district court's

11    finding that countervailing interests outweighed asserted environmental injuries); *see*

12    *also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) ("[C]ourts must balance

13    the competing claims of injury and must consider the effect on each party of the

14    granting or withholding of the requested relief." (cleaned up)). The District makes no

15    argument that its rule will prevent any substantial amount of $NO_x$ emissions while the

16    appeal is pending, much less does it link that amount to concrete health effects. The

17    rule's own timeline underscores that the District did not view its effective date  as an

18    emergency; when it adopted the rule in June 2024, it built in a year-and-a-half delay

19    for the start of Phase I and longer for the rest. That belies any claim that an additional

20    short extension will cause severe harm.

21    The reality is that Phase I would have a minimal effect on the District during

22    Plaintiffs' appeal. But for the individual participants in that market, such as companies,

23    employers, and employees, the effect will be devastating. Loss of revenues, loss of

24    livelihood, forced reorganization, and damage to relationships with customers,

25    employees, and suppliers, distributors or contractors cannot be readily repaired. And

26    unlike the District, Plaintiffs have provided uncontroverted evidence that these grave

27    injuries are likely to occur in 2026 as a result of Phase I of the Rule.

28

Lastly, the District has no response to the fact that Congress already had its word on the public interest when it adopted a uniform national energy policy to end "a growing patchwork of differing State regulations."  S. Rep. No. 100-6, at 4 (1987).  The balance of equities and the public interest support preserving the status quo pending appeal.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court enjoin enforcement of Rule 1146.2's zero-$NO_x$ limits during the pendency of appeal.

1    Dated: September 15, 2025

Respectfully submitted,

2    /s/ John J. Davis, Jr.

3    John J. Davis, Jr. (SBN 65594)
      jjdavis@msh.law

4    Luke Dowling (SBN 328014)
      ldowling@msh.law

5    McCracken, Stemerman
      & Holsberry LLP

6    475 – 14th Street, Suite 1200

7    Oakland, CA 94612
      Tel.: (415) 597-7200; Fax: (415) 597-7201

8

9    Attorneys for Plaintiff California State
      Pipe Trades Council

10

/s/ Courtland L. Reichman

Courtland L. Reichman (SBN 268873)
  creichman@reichmanjorgensen.com
Brian C. Baran (SBN 325939)
  bbaran@reichmanjorgensen.com
Reichman Jorgensen
  Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

Sarah O. Jorgensen (pro hac vice)
  sjorgensen@reichmanjorgensen.com
Reichman Jorgensen

11    /s/ Matthew P. Gelfand

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org

12    Californians for Homeownership, Inc.

13    525 S. Virgil Ave.
      Los Angeles, California 90020

14    Tel.: (213) 739-8206; Fax: (213) 480-7724

15    Attorney for Californians for
      Homeownership, Inc.

16

  Lehman & Feldberg LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (404) 609-1040; Fax: (650) 560-3501

/s/ Sean M. Kneafsey

Sean M. Kneafsey (SBN 180863)
  skneafsey@kneafseyfirm.com
The Kneafsey Firm, Inc.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: (213) 892-1208

17    /s/ Angelo I. Amador

Angelo I. Amador (pro hac vice)
  aamador@restaurant.org

18    Restaurant Law Center

19    2055 L Street, NW, Suite 700
      Washington, DC 20036

20    Tel.: (202) 331-5913 Fax: (202) 331-2429

21    Attorneys for Plaintiff Restaurant Law
      Center

22

23

Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California

24                        **ATTESTATION**

25         In accordance with Civil Local Rule 5-4.3.4(a)(2)(i), I attest that each of the

26    signatories have concurred in this filing's content and have authorized its filing.

27    Dated: September 15, 2025              By: /s/ Courtland L. Reichman
                                                 Courtland L. Reichman

28